**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CLINTON NURSERIES, INC., | : | Case No. 17-31897(JJT) |
| CLINTON NURSERIES OF MARYLAND, INC., | : | Case No. 17-31898(JJT) |
| CLINTON NURSERIES OF FLORIDA, INC., and | : | Case No. 17-31899(JJT) |
| TRIEM LLC, | : | Case No. 17-31900(JJT) |
| | : | (Jointly Administered Under |
| Debtors. | : | Case No. 17-31897(JJT)) |
| CLINTON NURSERIES, INC., | : | |
| CLINTON NURSERIES OF MARYLAND, INC., | : | |
| CLINTON NURSERIES OF FLORIDA, INC., and | : | |
| TRIEM LLC, | : | |
| Movants, | : | |
| | : | |
| v. | : | |
| | : | |
| BANK OF THE WEST, | : | |
| WARREN RICHARDS, JR. and ANN | : | |
| RICHARDS, VARILEASE FINANCE, INC., | : And | |
| SPRING MEADOW NURSERY, INC., | : | |
| Respondents. | : | |
| | : | |

**ORDER AND STIPULATION AUTHORIZING SECOND INTERIM USE OF CASH**
**COLLATERAL AND GRANTING ADEQUATE PROTECTION**

Upon the Motion For Interim And Final Orders Authorizing The Debtors To Use Cash
Collateral And Granting Adequate Protection (ECF No. 3, the "Motion"), filed by Clinton
Nurseries, Inc. ("CNI"), Clinton Nurseries of Maryland, Inc. ("CMI"), Clinton Nurseries of
Florida, Inc. ("CFI"), and Triem LLC ("Triem"; together with CNI, CMI and CFI, the "Debtors"),
seeking, among other things, entry of this order authorizing the Debtors to use cash collateral in
accordance with the budget annexed hereto as Exhibit A (the "Budget") and granting adequate
protection; and

1

The Debtors having requested in the Motion that a final hearing (the "Final Hearing") be scheduled on the Motion to consider entry of this order (the "Final Order") authorizing and approving, on a final basis, the Debtors' use of Cash Collateral (as defined below); and

Notice of the Final Hearing having been given in accordance with the Federal Rules of Bankruptcy Procedure and that certain Final Order Authorizing Use Of Cash Collateral And Granting Adequate Protection (ECF No. 28, the "Interim Order"), entered by the Court on December 21, 2017; and

The Debtors having served the proposed Final Order pursuant to the procedure provide for in the Interim Order; and

Upon discussion and agreement of the parties hereto as well as the Official Committee of Unsecured Creditors (the "Committee") that a continued interim order for use of cash collateral may enter upon the terms and conditions set forth herein; and

It appearing that on the record made in the Cases (as defined below) and after considering the Debtors' immediate need for use of Cash Collateral, no other or further notice need be given; and the Lender (as defined below) having consented to the Debtors' use of Cash Collateral in accordance with this order (the "Second Interim Order");

NOW, THEREFORE, upon the Motion and the record held before the Court on January 19, 2018; and after due deliberation and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law:

A.    Filing. On December 18, 2017, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, thereby commencing the above-captioned Chapter 11 cases (collectively, the "Cases"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors have thereafter remained in possession of their assets and operated as Debtors in possession. Contemporaneously with filing the Motion, the Debtors

filed motions with the above-captioned Bankruptcy Court (the "Court") seeking certain first day relief to permit Debtors to continue in operation as going concerns.

       B.      Jurisdiction. The Court's consideration of the Motion and this Second Interim Order is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (M). The statutory predicates for the relief sought herein are Sections 361, 362 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b).

       C.      The Debtors' Stipulations. Without prejudice to the rights of any party other than the Debtors, the Debtors admit, stipulate and agree that:

       a.      The Operating Line. Bank of the West ("Lender") and Debtors are parties to that certain "Loan And Security Agreement" dated as of August 18, 2013; as modified by those certain "Modification Agreement(s)" dated as of January 10, 2014, April 4, 2014, June 5, 2014, September 23, 2014, December 15, 2014, March 25, 2015, January 27, 2016, March 16, 2016 and July 29, 2016; and as further modified and amended by that certain "Amendment To Loan And Security Agreement, Line Of Credit Note, And Equipment Purchase Line Of Credit Note" dated as of December 29, 2016 (collectively, the "Operating Agreement"). Pursuant to the Operating Agreement, Lender made available to Debtors a revolving line of credit, subject to all terms and conditions contained in the Operating Agreement (the "Operating Line"). The Operating Line is also evidenced by that certain "Line Of Credit Note" dated as of August 18, 2013, in the original principal amount of $18,000,000.00, and payable from Debtors to the order of Lender (as supplemented by that certain "Interest Rate Election Rider", and as otherwise supplemented, amended and modified from time to time, the "Operating Note"), and all other documents, instruments and agreements executed in connection with the Operating Line (collectively with the Operating Agreement and the Operating Note, the "Loan Documents").

       b.      The Prepetition Personal Property Collateral. In order to secure the payment and performance of the Operating Line (but not the "Real Estate Loan", as defined in Recital "d" below): (i) Section 2.1 of the Operating Agreement contains a grant by Debtors to Lender of a security interest in, a lien on and pledge and assignment of substantially all present and future

personal property of the Debtors including, without limitation, all of the Debtors' farm products, accounts, contracts, leases, payment intangibles, general intangibles, patents, licenses, copyrights, trademarks, goodwill, deposit accounts, goods, inventory, equipment, equipment, fixtures, inventory, proceeds and other personal property described in the Operating Agreement (collectively, the "Prepetition Personal Property Collateral"); and (ii) Debtors made, executed and delivered to Lender that certain "Security Agreement" dated as of October 29, 2012, wherein Debtors granted to Lender a security interest in the Prepetition Personal Property Collateral. Lender perfected its security interest in the Prepetition Personal Property Collateral by duly recording UCC-1 Financing Statements with the offices of the Connecticut and Florida Secretaries of State (collectively, and as amended and/or continued from time to time the "Financing Statements").

       c.    The Real Estate Loan. Separate and distinct from the Operating Line, Debtors made, executed and delivered to Lender that certain "Term Note" dated as of July 12, 2012, in the original principal amount of $4,935,000.00 (as amended and modified from time to time, the "Real Estate Note"). The Real Estate Note evidences a term loan by Lender to Debtors in the original principal amount of $4,935,000.00 (the "Real Estate Loan").

       d.    The Real Estate Note is secured by the following mortgages and deeds of trust (collectively, the "Deeds of Trust"):

- That certain "Commercial Mortgage, Security Agreement And Assignment Of Leases And Rents" dated as of July 12, 2012, made by Triem, as mortgagor, in favor of Lender (as modified from time to time, the "Connecticut Deed of Trust"). The Connecticut Deed of Trust encumbers all of Triem's right, title and interest in certain real property located at 53 Chapman Avenue, Westbrook, Connecticut 06498, as more fully described in the Connecticut Deed of Trust. Lender perfected its security interest in the Connecticut Property by duly recording the Connecticut Deed of Trust in the Official Records of Middlesex County, Connecticut, on November 14, 2012, as Instrument No. 319-612-623.

- That certain "Deed Of Trust, Security Agreement And Assignment Of Leases And Rents" dated as of July 12, 2012, made by Triem, as trustor, First American Title Company, as trustee, and Lender, as beneficiary (as modified from time to time, the "Maryland Deed of Trust"). The Maryland

4

Deed of Trust encumbers all of Triem's right, title and interest in certain real property located at 613 Hayden Road, Centerville, Maryland 21617, as more fully described in the Maryland Deed of Trust. Lender perfected its security interest in the Maryland Property by duly recording the Maryland Deed of Trust in the Official Records of Queen Anne's County, Maryland, on November 14, 2012, as Instrument No. Liber 2147, Folio 033.

- That certain "Commercial Mortgage, Security Agreement And Assignment Of Leases And Rents" dated as of July 12, 2012, made by CNFI, as mortgagor, in favor of Lender (as modified from time to time, the "<u>Florida Deed of Trust</u>"). The Florida Deed of Trust encumbers all of CNFI's right, title and interest in certain real property located at 737 Salem Road, Havana, Florida 32333, as more fully described in the Florida Deed of Trust. Lender perfected its security interest in the Florida Property by duly recording the Florida Deed of Trust in Book 767, Page 162, of the Official Records of Gadsden County, Florida, on November 1, 2012 (the "<u>Florida Property</u>" and, collectively with the Connecticut Property and the Maryland Property, the "<u>Prepetition Real Property Collateral</u>").

e.  <u>The Prepetition Real Property Collateral</u>. The Prepetition Personal Property Collateral and the Prepetition Real Property Collateral collectively comprise the "<u>Prepetition Collateral</u>."

f.  <u>Prepetition Loan Obligations</u>. As of the Petition Date, the Debtors were indebted and liable to the Lender without objection, defense, counterclaim or offset of any kind: (a) under the Operating Agreement and the Loan Documents, the principal amount of $27,708,046.36, plus accrued and unpaid interest thereon; (b) under the Real Estate Note, the principal amount of $2,426,375.00, plus accrued and unpaid interest thereon; and (c) all other fees, costs and additional charges due under the Operating Agreement, the Real Estate Note and the other Loan Documents, including but not limited to the Lender's costs and attorneys' fees, including any attorneys', accountants', consultants', appraisers', financial advisors' and other professionals' fees that are chargeable or reimbursable under the Loan Documents, as the case may be (clauses (a), (b) and (c) herein are hereinafter referred to collectively as the "<u>Prepetition Obligations</u>").

g.  <u>Enforceability of Prepetition Obligations</u>. The Prepetition Obligations constitute legal, valid, binding and enforceable obligations of the Debtors, enforceable against the Debtors in accordance with the terms of the Operating Agreement, the Real Estate Note and the other Loan

Documents, as the case may be (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code with respect to the Debtors).

h.    <u>Enforceability of Prepetition Liens</u>. The Lender holds legal, valid, binding, enforceable, and non-avoidable first-priority liens on and security interests in all of the Prepetition Collateral (the "<u>Prepetition Liens</u>") perfected by, <u>inter alia</u>, the Deeds of Trust and the Financing Statements. The respective Prepetition Liens were granted by the Debtors to the Lender for fair consideration and reasonably equivalent value, including the contemporaneous making of loans and/or commitments secured thereby.

i.    <u>The Deposit Accounts</u>. The Prepetition Collateral includes, without limitation, cash proceeds of the Prepetition Collateral located in deposit accounts at Webster Bank and other financial institutions (collectively, the "<u>Deposit Accounts</u>"), whether existing before or after the commencement of the Chapter 11 Case, which items constitute cash collateral of the Lender within the meaning of Section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

j.    <u>Cash Generated from Operations</u>. Any and all cash produced by or resulting from Debtors' operations—wherever located-- constitutes Cash Collateral of the Lender, and any and all such Cash Collateral is subject to the Prepetition Liens or Adequate Protection Liens (as defined herein) of the Lender.  No portion of the Debtors' growing plant inventory in which C-P has rights or an interest shall be sold or otherwise conveyed or disposed of during the term of this Second Interim Order without the consent of The Conard-Pyle Company, d/b/a "Star Roses and Plants" ("C-P"); nor shall any of the Debtors propagate or attempt to propagate new growing plant inventory using any of C-P's intellectual property during such term.

k.    <u>No Offsets, Challenges, etc</u>. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Obligations or the Prepetition Liens exist, and no portion of the Prepetition Obligations or the Prepetition Liens is subject to any contest, attack, obligation, recoupment, defense, counterclaim, offset, subordination, recharacterization, avoidance or any other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. Debtors do not

have, hereby forever release, and are forever barred from bringing any claims (including, without limitation, claims for subordination, recharacterization, avoidance or other similar claims), counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Obligations, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, against Lender and their respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys.

D.    <u>Necessity for and Limitations on Use of Cash Collateral.</u> The Debtors have an immediate need to obtain authorization to use cash collateral. The availability to the Debtors of sufficient working capital, liquidity and other financial accommodations is vital to their ability to continue their operations so that they may pursue and effectuate a plan of reorganization. The Debtors require use of their cash (which is generated primarily from operations), including all Cash Collateral, to carry on the operation of their businesses and to administer and preserve the value of their assets, including the Prepetition Collateral. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of the Cash Collateral. No portion of the Debtors' growing plant inventory in which C-P has rights or an interest shall be sold or otherwise conveyed or disposed of during the term of this Second Interim Order to create Cash Collateral without the consent of C-P.; nor shall any of the Debtors propagate or attempt to propagate new growing plant inventory using any of C- P's intellectual property during such term.

E.    The preservation and maintenance of the Debtors' businesses and their assets is necessary to maximize returns for all creditors and effectuate a plan of reorganization with respect to their remaining assets. Absent the Debtors' ability to use Cash Collateral in accordance with the terms hereof, the continued operation of their businesses would not be possible, and serious and irreparable harm to the Debtors, and their estates and creditors would occur.

F.     The Debtors' use of the Cash Collateral under the terms set forth herein is in the best interests of the Debtors, their creditors and their estates, and was negotiated at arms-length, in good faith and pursuant to the Debtors' sound business judgment.

G.     The Lender is willing to permit the Debtors to use Cash Collateral, subject to the terms of this Second Interim Order. As such, the Lender is entitled, pursuant to sections 361, 362 and 363 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, for and to the extent of any diminution in value of the Prepetition Collateral, resulting from the use of the Cash Collateral, the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) and the imposition of the automatic stay.

H.     <u>Notice</u>. The Motion, a proposed order and notice of the Final Hearing was served by the Debtors on each of the Debtors' twenty largest unsecured creditors, counsel for the Lender, Ann and Warren Richards, and Varilease Finance, Inc., all parties requesting notice in these cases, Spring Meadow Nursery, Inc., and the Office of the United States Trustee. The notice provided of the Motion and the Final Hearing is sufficient and adequate notice and no further notice of the relief sought at the Final Hearing is necessary or required.

I.     <u>Record</u>. Based on the record, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b), notice of the Final Hearing was adequate as set forth herein and on the record.

Based upon the foregoing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.     <u>Motion Granted</u>. The Motion is granted as to the Debtors' request with respect to the use of cash collateral to the extent provided herein. Any objections to the relief sought in the

Motion with respect to the entry of this Second Interim Order that have not been previously withdrawn, waived or settled, are hereby denied and overruled.

2.    <u>Authorization</u>. Subject to the terms and conditions of this Second Interim Order, the Debtors may use their cash, including any Cash Collateral, in accordance with the Budget, commencing from the date this Second Interim Order is entered through and including (but not beyond) the earlier of March 2, 2018; or (ii) the date of termination of the use of Cash Collateral due to an Event of Default under Section 13 below. The Debtors authority to use Cash Collateral pursuant to this Second Interim Order is limited as provided in the Budget and subject to the permitted variances set forth below.

3.    <u>Hearing to Consider Further Use of cash Collateral</u>. A hearing to consider further continued use of Cash Collateral shall be held Friday, February 23, 2018 at 10:00 AM (the "Continued Cash Collateral Motion"). Any objection to the Continued Cash Collateral Motion shall be filed on or before 4:00 PM on Tuesday, February 20, 2018 and served on: (a) all parties with an interest in cash collateral and their respective counsel; (b) the Debtor and its counsel; (c) the Committee and its counsel; (d) the Office of the United States Trustee; and (e) all parties that have appears in the Bankruptcy Cases (collectively the "Notice Parties"). The Debtor shall docket and serve on the notice Parties a proposed order for further use of cash collateral (which may be either a final or further interim order) on or before February 19, 2018. <u>The Cash Collateral Budget</u>. The "<u>Budget</u>" shall mean that certain "Post Petition Operating Budget" attached hereto as <u>Exhibit A</u>, and incorporated herein, as such Budget may be amended or supplemented in accordance with the terms hereof.   Compliance with the Budget, subject to permitted variances set forth below, shall be determined based upon the reporting of the Debtors and monitoring by Lender. The Budget may be amended or supplemented only with the written consent of the Debtors and the Lender; <u>provided, however</u>,   that if the Lender does not consent to any such proposed changes to the

Budget, then the existing Budget (without giving effect to any proposed revisions, amendments or supplements) shall remain in full force and effect; provided further, that the Debtors may, upon notice, seek non-consensual use of Cash Collateral

on an emergency basis, and the Lender hereby reserves all of its rights to contest any such further use of Cash Collateral.

4.      Use of Cash Collateral.  Except as otherwise expressly provided in this Second Interim Order or with the written consent of Lender, Cash Collateral may be used by the Debtors subject to and in accordance with the Budget, until such authority is terminated pursuant to Section 13, provided that: (a) Debtors' actual collections (as indicated on the "Total Cash Receipts" line of the Budget) are within at least ninety percent (90%) of Debtors' projected collections, as measured on a rolling four (4) week basis; (b) any amount (or portion thereof) set forth for any disbursement line item in the Budget that is not used during the applicable period may be carried forward to the same Budget line item for future use; and (c) without counting the use of any amounts carried forward under 4(b) above, the Debtors' actual, aggregate, disbursements (as indicated on the "Total Disbursements" line of the Budget), other than the line item for "Executive Payroll", exceed Debtors' projected, aggregate, disbursements by no more than ten percent (10%), as measured: (i) cumulatively for the first four (4) weeks of the Budget; and (ii) on a rolling four (4) week basis thereafter. No portion of the Debtors' growing plant inventory in which C-P has rights or an interest shall be sold or otherwise conveyed or disposed of during the term of this Second Interim Order without the consent of C-P; nor shall any of the Debtors propagate or attempt

to propagate new growing plant inventory using any of C-P's intellectual property during such term.

5.      Carve Out. Notwithstanding any provision of the Operating Agreement, the Real Estate Note, the Loan Documents, this Second Interim Order, or any other agreement, the Prepetition Liens, Adequate Protection Liens and Superpriority Claim (each as defined herein) shall be subject and subordinate in all respects to a carve-out for the following costs, fees and expenses (collectively, the "Carve-Out"): (i) the unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; and (ii) the unpaid fees, costs and expenses incurred by counsel retained by any official committee pursuant to Bankruptcy Code section 327 or 1103 up to a maximum of $35,000, and only to the extent the fees, costs, and expenses of such professionals are allowed by the Court, during the Cash Collateral Period, and any prior cash collateral periods. Nothing herein shall be construed to impair any rights of a party to object to the fees, costs, or expenses described in this section.  Neither Lender's Cash Collateral nor the Carve-Out may be used, either directly or indirectly, for any services or expenses arising from or relating to the investigation, initiation or prosecution of any action: (i) contesting the validity, priority or extent of the prepetition or postpetition claims or liens asserted by Lender, (ii) asserting claims or causes of action of any sort whatsoever (including, without limitation, avoidance claims) against Lender or any person or entity affiliated with Lender, (iii) preventing, hindering or delaying Lender from enforcing any of its rights or remedies or realizing upon the Collateral; or (iv) seeking to modify any of the rights of Lender provided for in this Second Interim Order; provided however, notwithstanding anything in this paragraph to the contrary, the Committee may use Lender's Cash Collateral or its Carve Out to investigate, but not

prosecute, the nature, validity, priority, and/or extent of Lender's prepetition or postpetition liens or claims.

6.    <u>Adequate Protection</u>. The Lender has negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estate and continued operation of the Debtors' business, as set forth in the Budget. The Lender has agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, during the term of this Second Interim Order, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 363(m) of the Bankruptcy Code. Pursuant and subject to sections 361, 362 and 363 of the Bankruptcy Code, as adequate protection for any diminution in value of the Prepetition Collateral in which the Debtors have an interest, resulting from the use of Cash Collateral, the Carve-Out, the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code:

a.    The Debtor shall pay to the Lender interest at the contractual, non-default, rate of interest set forth in the Operating Agreement and the Real Estate Note (collectively the "<u>Adequate Protection Payments</u>"), all such amounts to be paid in accordance with the Budget, not to exceed $85,000.00; <u>provided, however</u>, that the Lender: (i) asserts that all obligations and indebtedness owed by the Debtors to the Lender are legally accruing at the contractual "default rate" set forth in the Operating Agreement, the Real Estate Note and the other Loan Documents, and the Debtors reserve the right to contest same; and (ii) intends to seek reimbursement for Lender's reasonable and actual professional fees, including attorneys' fees, advisor fees, appraisal fees and other actual fees and costs incurred by the Lender and permitted under the Loan Documents.

b.       To the extent of any diminution in value of the Prepetition Collateral in which the Debtors have an interest resulting from any use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, the Lender, for the benefit of the Lender, is hereby granted valid, binding, enforceable and perfected senior replacement liens on and security interests in (the "Adequate Protection Liens") all property and assets of any kind and nature in which a Debtors have an interest, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, investment property, letters of credit rights, vehicles, goods, accounts receivable, inventory, cash-in-advance deposits, real estate, machinery, intellectual property (including trademarks and trade names), licenses, causes of action, rights to payment, including tax refund claims, insurance proceeds and tort claims, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing together with the Prepetition Collateral, the "Postpetition Collateral"); provided, however, that the Postpetition Collateral shall not include any claims or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar state law ("Avoidance Actions"), as well as any property of a type that would not be subject to any of Lender's prepetition liens against any of the Debtors' real or personal property, or any proceeds thereof.  The Adequate Protection Liens shall have the following priorities:

(i)       First Priority On Unencumbered Property. Subject to the Carve Out, a valid, binding, continuing, enforceable, fully perfected, non-voidable first priority lien on, and security interest in, all Postpetition Collateral of the type and kind that constitutes the Lender's Prepetition Collateral, in addition to all Postpetition Collateral that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date.

13

(ii)    <u>Liens Junior To Certain Existing Liens</u>. Subject to the Carve-Out, a valid, binding, continuing, enforceable, fully perfected non-voidable junior lien on, and security interest in, all Postpetition Collateral, that is subject to (x) valid, perfected and unavoidable senior liens in existence immediately prior to the Petition Date or (y) valid and unavoidable senior liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which prepetition security interests and liens in favor of the Lender is junior to such valid, perfected and unavoidable liens.

(iii)    <u>Liens Senior To Certain Other Liens</u>. The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and its estate under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

c.    <u>Superpriority Claims</u>. To the extent of any diminution in value of the Prepetition Collateral in which the Debtors have an interest resulting from any use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Lender, for the benefit of the Lender, is granted allowed superpriority claims senior to all other administrative expense claims and to all other claims, including administrative claims, arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except as set forth below in the immediately succeeding section (the "<u>Superpriority Claims</u>"), which Superpriority Claims shall be

14

payable from, and have recourse to, all of the Postpetition Collateral and proceeds thereof; provided, however, that such Superpriority Claims shall be subject to the Carve-Out.

d.      The Adequate Protection Liens and Superpriority Claims shall, in each case, (i) be senior and prior, and prime, the Prepetition Liens and the Prepetition Obligations, but junior and subject only to (x) the Carve-Out and (y) all other valid, enforceable, perfected and unavoidable liens on all of the Debtors' assets and property in existence as of the Petition Date, or duly perfected thereafter, under section 546(b) of the Bankruptcy Code and (ii) be effective as of the date of the entry of the Second Interim Order without any further action by the Debtors, the Lender or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, lien applications or other documents.

e.      All of the Lender' Cash Collateral shall be deposited and maintained at all times in accounts in the name of the Debtors at Webster Bank, and not commingled with any funds which do not constitute the Lender's Cash Collateral. The Debtors shall maintain its current cash management system, subject to any changes reasonably acceptable to the Lender.

f.      During the term of this Second Interim Order, Debtors shall comply with all of the pre-petition reporting requirements set forth in the Operating Agreement, the Loan Documents and developed as a course of dealing with the Lender including, but not limited to, providing the Lender with: (i) a weekly report showing comparison of Debtors' actual collections and disbursements, as measured against Debtors' projected collections and disbursements in the Budget, as measured on a weekly basis; (ii) a weekly accounts receivable aging and accounts payable aging; and (iii) a weekly report showing all deposits, disbursements and other activity in the Deposit Accounts.  The Debtors also shall cooperate with all reasonable audit and appraisal requests of the Lender and its representatives and agents.

g.     Notwithstanding anything in this Second Interim Order to the contrary, no Adequate Protection Lien or Superpriority Claim, or other encumbrance shall attach to any property that was not the type of property subject to any prepetition lien of the Lender against any of the Debtors' real or personal property.

7.     No Prejudice. Nothing contained herein shall be construed as preventing or prejudicing the Lender from pursuing any rights and remedies provided by the Bankruptcy Code and any other applicable law.

8.     Limitation on Use of Cash Collateral. No proceeds of the Carve-Out, the Prepetition Collateral, the Postpetition Collateral or the Cash Collateral shall be used by Debtors for the purpose of: (a) investigating, objecting to, challenging or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority or enforceability of the Prepetition Obligations or the Prepetition Liens (but not including any investigation related thereto which shall be subject to the limitations set forth below), or any other rights or interests of the Lender or the Lender, including with respect to the Adequate Protection Liens, or in asserting any claims or causes of action against the Lender or the Lender, including, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, 551, 552 or 553 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) seeking to modify any of the rights granted to the Lender or the Lender hereunder; or (c) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court and are permitted pursuant to the Budget. Nothing in this paragraph shall impair the Committee from using proceeds of the Carve-Out from undertaking investigation (but not prosecution of claims) of the acts set forth in subparagraphs (a) or (b) during the Investigation Period (as that term is defined below).

9.     Limitation on Additional Liens. The Debtors shall not be permitted to grant any new liens (including, without limitation, liens with a priority to or pari passu with the Prepetition Liens, the Adequate Protection Liens, or any other liens granted to the Lender under this Second Interim Order) or to provide any party with an administrative expense claim having a priority over

16

or being pari passu with the Superpriority Claims, except as otherwise provided in this Second Interim Order or other order of the Court.

10.     <u>Good Faith</u>. The Lender shall be entitled to the full protections provided pursuant to Bankruptcy Code sections 105(a), 361 and 363(m) as to the use, sale or lease of Prepetition Collateral, including use of Cash Collateral, permitted pursuant to this Second Interim Order, with respect to the claims and obligations arising under this Second Interim Order, in the event that this Second Interim Order or any authorization or provision contained in this Second Interim Order is stayed, vacated, reversed or modified on appeal or otherwise.

11.     <u>Stay, Vacation, Reversal, etc</u>. Any stay, vacation, reversal or modification of this Second Interim Order or any provision hereof shall not affect the Adequate Protection Liens or the Superpriority Claims, or the validity of any obligations to, or rights of, the Lender or the Lender incurred or granted pursuant to this Second Interim Order with respect to the use of Cash Collateral and any other Prepetition Collateral prior to such stay, vacation, reversal or modification. Notwithstanding any such stay, vacation, reversal or modification, all uses of Cash Collateral and obligations incurred and rights granted pursuant hereto prior to the effective date of such stay, vacation, reversal or modification shall be governed in all respects by the original provisions hereof and the Lender shall be entitled to all the rights, privileges, benefits and remedies, including, without limitation, the security interests and priorities, granted herein with respect to such obligations and use of Cash Collateral. No waiver, modification, or amendment of any of the provisions of this Second Interim Order shall be effective as between the parties unless it is set forth in writing, signed by the Debtors and the Lender, and approved by the Court.

12.     <u>Binding Effect</u>. The stipulations, releases and admissions contained in this Second Interim Order (including, but not limited to those contained in Recital C above), shall be binding upon the Debtors, and their respective successors and assigns (including any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the estate of the Debtors).  The stipulations, releases and admissions contained in Recital C above shall be binding upon all other parties-in-interest, including any committee, unless any committee or any other party-in-interest (other than the

17

Debtors), duly commences an adversary proceeding no later than ninety (90) days following the January 4, 2018 date on which such committee is first appointed (hereinafter referred to as the "<u>Investigation Period</u>"), (x) challenging the validity, enforceability, priority, perfection, characterization or amount of the Debtors' Prepetition Obligations or Prepetition Liens or (y) asserting any claims or causes of action against any of the Lender or Lender in their capacities as such. The Committee appointed in this case, if any, is hereby granted standing to commence such an adversary proceeding, without the necessity of making demand on the Debtors to do so or demonstrating the futility of such a demand. If no such adversary proceeding is duly commenced during the Investigation Period, (i) the claims of the Lender arising from the Debtors' Prepetition Obligations and the Prepetition Liens shall constitute allowed claims against the Debtors and shall not be subject to any contest, objection, recoupment, counterclaim, defense, offset, subordination, recharacterization, avoidance, or other claim, challenge, or cause of action under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise and the Prepetition Liens shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to any objection, counterclaim, setoff, offset of any kind, subordination, or defense, and such liens are otherwise unavoidable; and (ii) the Lender shall not be subject to any other or further claims, counterclaims, causes of action or lawsuits by any representative of the estate with respect to acts or omissions occurring prior to the Petition Date. If any such adversary proceeding is duly commenced during the Investigation Period, the stipulations, releases and admissions set forth in Recital C shall nevertheless remain binding and preclusive on the Committee and on any other person or entity with the exception of those stipulations, releases or admissions that have been expressly challenged in an adversary proceeding duly commenced within the Investigation Period (the "<u>Challenged Provisions</u>"). The Challenged Provisions shall be binding and preclusive only upon the entry of a final, non-appealable order denying the challenge thereto. The stipulations, releases and admissions contained in this Second Interim Order, including those set forth in Recital C, shall inure to the benefit of the Lender, the Debtors and their respective successors and assigns. Notwithstanding

anything herein to the contrary, the Lender, in its sole discretion, may extend the Investigation Period from time to time without further order of this Court.

13.     <u>Events of Default; Remedies</u>. The occurrence of any of the following shall constitute an event of default (each, an "<u>Event of Default</u>"):

a.      An order of this Court shall be entered dismissing the Chapter 11 Case, converting the Chapter 11 Case to one under Chapter 7 of the Bankruptcy Code, appointing a Chapter 11 trustee in the Chapter 11 Case, or appointing an examiner with expanded powers, or the Debtors shall file a motion or other pleading seeking the dismissal of its Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise;

b.      An order of this Court shall be entered granting relief from the automatic stay under section 362 of the Bankruptcy Code that would permit a party in interest other than the Lender to immediately exercise any rights or remedies or consummate a foreclosure or foreclosures upon any material portion of the Prepetition Collateral or Postpetition Collateral;

c.      An order of this Court or any other court having jurisdiction to do so shall be entered amending, supplementing, staying, vacating, reversing, revoking, rescinding or otherwise modifying any material provision of this Second Interim Order without the express written consent of the Lender;

d.      An order of this Court (or any other court having jurisdiction to do so) shall be entered (x) granting any lien on or security interest (i) on property of the Debtors that is not permitted under the terms of the Loan Documents and this Second Interim Order, or (ii) in any property of the Debtors in favor of any party other than the Lender (acting for the benefit of the Lender), or (y) granting a Bankruptcy Code section 364 superpriority administrative claim against the Debtors that is senior or pari passu to the Superpriority Claims granted to the Lender hereunder, to any party in interest other than the Lender, in each case without the express written consent of the Lender;

e.       An order of this Court or any other court having jurisdiction to do so shall be entered that approves any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation or disposition of any Prepetition Collateral or Postpetition Collateral, provided that (i) payments and deposits for the preservation of Prepetition Collateral or Postpetition Collateral made pursuant to customary first day motions concerning employee payroll and benefits, critical vendors, utilities and the like and (ii) payments and deposits made in respect of postpetition preservation of the Prepetition Collateral or Postpetition Collateral made in accordance with the Budget shall not result in the occurrence of an Event of Default hereunder;

f.       The Second Interim Order shall cease to be in full force and effect;

g.       Three (3) Business Days following delivery to counsel to the Debtors, any committee and the United States Trustee of written notice from the Lender of the Debtors' failure to comply with any material term or terms of this Second Interim Order, unless such failure to comply is cured within such three (3) Business Days following delivery of such notice;

h.       The cash collections of the Debtors are less than projected by the Budget (subject to the permitted variances) or this Second Interim Order without prior written consent of the Lender;

i.       The cash expenditures of the Debtors exceed those permitted by the Budget (subject to the permitted expenditure variances) or this Second Interim Order without prior written consent of the Lender or are made at any time that an approved Budget is not in effect;

j.       The Debtors shall file or join in any motion or pleading in support of a motion by any other party in interest to disallow or subordinate in whole or in part the Lender's claim in respect of the Prepetition Obligations or Superpriority Claims, or to challenge the validity, enforceability, perfection or priority of the liens in favor of the Lender or the Lender (including, without limitation, any Prepetition Liens);

k.        The Debtors shall file any motion seeking to obtain secured credit from any party other than the Lender unless, in connection therewith, the Lender has consented in writing to the filing of such motion or all of the Prepetition Obligations and the Superpriority Claims shall have first been paid indefeasibly in full in cash;

l.        (i) Five (5) Business Days following delivery to counsel to the Debtors, any committee and the United States Trustee of written notice from the Lender that the Debtors have filed a motion, pleading or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Lender or the Lender or (ii) on the later of (a) the date upon which there is an order entered by a court with respect to a motion, pleading or proceeding brought by another party which results in such a material impairment, or (b) the date that is five (5) Business Days following delivery to the Debtors, any committee and the United States Trustee of written notice from the Lender that the such an order will be or has been entered;

m.        The board of directors of the Debtors authorizes a liquidation of the Debtors' business that is not reasonably expected to result in the payment in full of all of the Prepetition Obligations and the Superpriority Claims or that the Lender has not provided advance consent to such liquidation;

n.        The Debtors shall file any pleadings seeking approval of a KERP, KEIP, or any other employee incentive or retention plan, or file any other pleading seeking to increase employee benefits or compensation without the written consent of the Lender;

o.        The Debtors shall file any pleading seeking, or otherwise consenting to, or shall otherwise affirmatively support or affirmatively take any action to acquiesce in, any other person's motion as to, any of the matters prohibited in this Section 13; provided that in no event shall the Debtors' cooperation with formal or informal discovery requests, due diligence requests or other information requests constitute a default under this Second Interim Order; or

p.      Prior to March 2, 2018 at 11:59 p.m., the term of the Cash Collateral Orders has

not been extended by written agreement between the parties and approved by the Court.

Upon the occurrence of an Event of Default and five (5) business Days written notice to Debtors

and Debtors' counsel thereof, the Debtors' consensual rights to use Cash Collateral pursuant to the

Budget shall terminate provided, however, any rights of the Debtors to seek the non-consensual

use of Cash Collateral will be reserved. Termination of the use of the Prepetition Collateral,

including Cash Collateral, pursuant to the Budget, as authorized in this Section 13, shall not impair

the continuing effectiveness and enforceability of any other provisions in this Second Interim

Order. The Debtors may make payments and other distributions to the Lender in connection with

and as otherwise allowed by this Second Interim Order, and all of the indemnifications and similar

provisions in favor of the Lender set forth in the Loan Documents shall continue in full force and

effect in respect of any actions taken by the Lender in connection with or as otherwise allowed by

this Second Interim Order.

14.     Perfection of Security Interests. The Lender is hereby authorized, but not required,

to file or record financing statements, trademark filings, copyright filings, mortgages, notices of

lien, or similar instruments in any jurisdiction, or take other action in order to validate and perfect

the liens and security interests granted to it hereunder. Whether the Lender shall, in its sole

discretion, choose to file such financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the liens and

security interests granted to it hereunder, such liens and security interests shall be deemed valid,

perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or

subordination, at the time and on the date of entry of the Second Interim Order. A certified copy

of this Second Interim Order may, in the discretion of the Lender, be filed with or recorded in

filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices

of lien or similar instruments, and all filing offices are hereby authorized to accept such certified

copy of this Second Interim Order for filing and recording.

15.    <u>Limitation on Charging Expenses Against Collateral</u>.  Except as set forth in this paragraph: (a) No expenses of administration (whether incurred during the Chapter 11 Case or any subsequent case) incurred for the preservation or protection of the Prepetition Collateral or the Postpetition Collateral incurred while the Debtors are authorized to use such collateral under the Final Order shall be charged against or recovered from the Prepetition Collateral or the Postpetition Collateral pursuant to Bankruptcy Code section 506(c) or any similar principal of law or equity without the express prior written consent of the Lender ("Surcharge Rights"). (b) Notwithstanding anything in this Second Interim Order to the contrary, and for the duration of this Second Interim Order only, subparagraph (a) and/or any other similar provision shall not apply to the Committee and the Committee appointed in this case is hereby granted standing to commence a proceeding concerning Surcharge Rights on behalf of the Estates, without the necessity of making demand on the Debtors to do so or demonstrating the futility of such a demand.  Any such action to enforce Surcharge Rights for expenses covered by the Second Interim Order shall be filed on or before April 5, 2018, unless otherwise extended by the bank and Committee.

16.    <u>Adequate Protection for Other Lien Holders</u>. Warren Richards, Jr. and Ann Richards, Varilease Finance, Inc., and Spring Meadow Nursery, Inc. (together, the "Other Lien Holders"), may assert interests in some portion of the Cash Collateral. To the extent that any of the Other Lien Holders hold an interest in the Cash Collateral, as adequate protection for the Debtors' use of Cash Collateral pursuant to this Second Interim Order, each such Other Lien Holder is hereby granted (a) a replacement lien on all of the Prepetition Collateral and the Postpetition Collateral and (b) a Superpriority Claim; provided, however, that such replacement liens and Superpriority Claims shall be only for the amount of any diminution in value (if any) of such Other Lien Holder's interest (if any) in the Cash Collateral and that such replacement liens or Superpriority Claim shall be only to the same validity, priority and extent of any pre-petition interest in the Cash Collateral held by such Other Lien Holder. The Other Lien Holders shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in

23

any jurisdiction or filing office, or to take any other action in order to validate or perfect the

replacement liens granted herein. So long as this case remains pending, the Other Lien Holders

shall have no right to exercise any rights or remedies in respect of the replacement liens granted

herein unless the Lender has consented thereto, except to the extent that this Court, by subsequent

order upon notice to the Debtors and the Lender, authorized such exercise. Any replacement lien

or Super Priority Claim granted by this paragraph is subject and subordinate to the Carve Out.

17.    <u>Additional Reporting</u>. The Debtors shall provide to the Lender, Varilease Finance,

Inc. and the Committee the following, upon execution of an appropriate non-disclosure agreement:

(a)  Any projections prepared by the Debtors and/or True North, when finalized;

(b)  The CIM (Confidential Information Memorandum) being drafted by True North, when

completed;

(c)  All final expressions of interest and letters of intent received by the Debtors, when

received;

(d)  Any financial information provided to BOTW, when provided to BOTW;

(e)  Any notification received by the Debtors that any customer comprising more than 10% of

their annual business is terminating their relationship with one or more of the Debtors, when

received; and

(f)  A copy of any written agreement with Spring Meadow Nursery in settlement of the

Debtors' dispute with it, prior to its execution.

18.    <u>No Release of Non-Debtors</u>. Nothing contained in this Second Interim Order shall

be deemed to terminate, modify or release any obligations of any non-Debtor third party liable to

the Lender with respect to any Prepetition Obligations or otherwise.

19.    <u>No Third-Party Beneficiaries</u>. No rights are intended to be created hereunder for

the benefit of any third party or creditor or any direct or indirect incidental beneficiary except with

respect to the Carve-Out and as otherwise specifically provided herein.

20.    <u>Notices</u>. All notices required to or permitted to be given to Debtors under this Second Interim Order shall be addressed as follows:

| | |
|---|---|
| DEBTORS: | CLINTON NURSERIES, INC.; CLINTON NURSERIES OF FLORIDA, INC.; CLINTON NURSERIES OF MARYLAND, INC.; TRIEM LLC<br>c/o Clinton Nurseries, Inc.<br>517 Pond Meadow Road<br>Westbrook, CT 06498<br>Attn: David Richards, President |
| With a copy to: | Eric Henzy, Esq.<br>Zeisler & Zeisler, P.C.<br>10 Middle St, 15th Floor<br>Bridgeport, CT 06604 |
| LENDER: | BANK OF THE WEST<br>James Salisbury, Vice President<br>Bank of the West SAD<br>500 Capitol Mall, Suite 1200<br>Sacramento, CA 95814 |
| With a copy to: | Dennis Boesen<br>Senior Vice President, Managed Assets<br>Bank of the West<br>13220 California Street<br>Omaha, NE 68154 |
| With a copy to: | William B. Freeman, Esq.<br>Katten Muchin Rosenman, LLP<br>515 S. Flower St., Suite 1000<br>Los Angeles, CA.  90071-2212 |
| With a copy to: | Irve J. Goldman, Esq.<br>Pullman & Comley LLC<br>850 Main Street P.O. Box 7006<br>Bridgeport, CT 06601-7006 |
| COMMITTEE | Kenneth Hebert, Chair |
| With a copy to: | Jeffrey M. Sklarz, Esq.<br>Green & Sklarz LLC<br>700 State Street, Suite 100<br>New Haven, CT 06511 |

VARILEASE          Jay L. Welford

FINANCE, INC. Jaffe Raitt Heuer & Weiss
                   27777 Franklin Road, Suite 2500
                   Southfield, MI  48034

                   Douglas S. Skalka
                   Neubert, Pepe & Monteith, P.C.
                   195 Church Street, 13th Floor
                   New Haven, CT  06510

The above addresses for any party may be changed effective upon receipt of a new address by each of the other parties. Any notice required herein or permitted to be given shall be in writing and be personally served or sent by facsimile, email, or certified mail or courier, and shall be deemed given, in the case of facsimile, upon confirmation of receipt, in the case of email, the next business day if given after 5:00 p.m. prevailing local time of the recipient on a business day or on a non-business day with deemed non-receipt if an auto-response of unavailability is received by the sender, and in the case of certified mail or courier, when delivered to the addressee. All notices and reports required hereunder shall also be sent to counsel for any official committee.

21.     Retention of Jurisdiction. The Court shall retain exclusive jurisdiction over the subject matter of this Second Interim Order in order to resolve any dispute in connection with the rights and duties specified hereunder.

22.     Headings. Headings have been inserted in this Second Interim Order as a matter of convenience for reference only and it is agreed that such headings are not a part of this Second Interim Order and shall not be used in interpreting any provision of this Second Interim Order.

23.     Further Assurances.   The Debtors and the Lender shall execute all further documents and perform such further acts as may reasonably be required to effectuate the purpose and intent of this Second Interim Order.

Dated at Hartford, Connecticut this 19th day of January, 2018.

_James J. Tancredi_
United States Bankruptcy Judge
District of Connecticut

26

## EXHIBIT "A"
## BUDGET

**Clinton Nurseries, Inc.**
**Post Petition Operating Budget**
**For the period January 21, 2018 through March 3, 2018**

| | Estimate | Estimate | Estimate | Estimate |
|---|---|---|---|---|
| | Sunday | Sunday | Sunday | Sunday |
| | to Saturday | to Saturday | to Saturday | to Saturday |
| | 1/21 to 1/27/2018 | 1/28 to 2/3/2018 | 2/4 to 2/10/2018 | 2/11 to 2/17/2018 |
| Opening Cash Balances | $ 2,546,879 | $ 2,263,479 | $ 2,102,079 | $ 1,565,179 |
| Voided Checks Post Petition | $ - | $ - | $ - | $ - |
| Estimated Receivables Collections (prepetition) | $ - | $ 237,000 | $ - | $ - |
| Estimated Receivables Collections (post petition) | $ - | $ - | $ - | $ - |
| Total Cash Receipts | $ - | $ 237,000 | $ - | $ - |
| Total Cash Available | $ 2,546,879 | $ 2,500,479 | $ 2,102,079 | $ 1,565,179 |
| Disbursements | | | | |
| Executive Payroll | $ (12,400) | $ (12,400) | $ (12,400) | $ (12,400) |
| Payroll | $ (148,000) | $ (148,000) | $ (148,000) | $ (148,000) |
| Health Insurance Premiums | $ - | $ - | $ (60,000) | $ - |
| 401(k) contributions | $ - | $ - | $ - | $ - |
| Bank of the West - adequate protection | $ - | $ - | $ (85,000) | $ - |
| Creditors Committee | $ - | $ - | $ (35,000) | $ - |
| Richards Farm Rent (Maryland Properties) | $ - | $ - | $ (19,500) | $ - |
| Quincy Florida (Imperial Nursery) Rent | $ - | $ - | $ (34,000) | $ - |
| Utilities (Gas, Electric, Water) | $ (22,000) | $ - | $ (22,000) | $ - |
| Oil to heat Greenhouses | $ (11,000) | $ (11,000) | $ (11,000) | $ (11,000) |
| Farm Insurance | $ - | $ (40,000) | $ - | $ - |

\[

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Telephone & Internet | $ | (5,000) | $ | - | $ | - | $ | - |
| Miscellaneous Operating (equip rental, auto, repairs) | $ | (40,000) | $ | (40,000) | $ | (40,000) | $ | (40,000) |
| Contracted Services ( computer, payroll, true north) | $ | (15,000) | $ | (17,000) | $ | - | $ | (15,000) |
| | | | | | | | | |
| Ongoing Operations ( Post Petition -Spring Sales) | | | | | | | | |
| Racks | $ | - | $ | - | | (40,000) | $ | - |
| Trucking | $ | (30,000) | $ | (30,000) | $ | (30,000) | $ | (30,000) |
| Pots, Fertilizer, Supplies, Soil | $ | - | $ | - | $ | - | $ | - |
| Product Buy In | $ | - | $ | (100,000) | $ | - | $ | - |
| | | | | | | | | |
| Total Disbursements (NOT including executive payroll) | $ | (271,000) | $ | (386,000) | $ | (524,500) | $ | (244,000) |
| Total All Disbursements | $ | (283,400) | $ | (398,400) | $ | (536,900) | $ | (256,400) |
| | | | | | | | | |
| Ending Cash Balance | $ | 2,263,479 | $ | 2,102,079 | $ | 1,565,179 | $ | 1,308,779 |

| Estimate | Estimate |
|---|---|
| Sunday | Sunday |
| to Saturday | to Saturday |
| 2/18 to 2/24/2018 | 2/25 to 3/3/2018 |

| | |
|---|---|
| $ 1,308,779 | $ 968,879 |
| $ - | $ - |
| $ - | $ - |
| $ - | $ - |
| $ - | $ - |
| $ 1,308,779 | $ 968,879 |

| | |
|---|---|
| $ (12,400) | $ (12,400) |
| $ (148,000) | $ (188,000) |
| $ - | $ - |
| $ - | $ - |
| $ - | $ - |
| $ - | $ - |
| $ - | $ - |
| $ - | $ - |
| $ (22,000) | $ - |
| $ (11,000) | $ (11,000) |
| $ - | $ (40,000) |

| | |
|---|---|
| $ (4,000) | $ - |
| $ (40,000) | $ (40,000) |
| $ (12,500) | $ - |
| | |
| $ (90,000) | $ - |
| $ - | $ - |
| $ - | $ (50,000) |
| $ - | $ (26,000) |
| $ (327,500) | $ (355,000) |
| $ (339,900) | $ (367,400) |
| | |
| $ 968,879 | $ 601,479 |