UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

|   |   |   |
|---|---|---|
| In re | : | Chapter 11 |
|  | : | Jointly Administered |
| CLINTON NURSERIES, INC. ET AL.[1] | : | Case No. 17-31897 (JJT) (Lead) |
|  | : |  |
| Debtors | : | January 25, 2018 |

**MOTION FOR ORDER PURSUANT TO FED. R. BANKR. P. 2004 AUTHORIZING THE EXAMINATION OF BANK OF THE WEST**

Pursuant to Fed. R. Bankr. P. 2004(a), the Official Committee of Unsecured Creditors (the "Committee") hereby moves this Court (the "Motion") for an order approving the examination of Bank of the West (the "Bank"). In support hereof, the Committee respectfully represents that:

**INTRODUCTION AND BACKGROUND**

1. On December 18, 2017 (the "Petition Date"), Debtors[2] filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*[3] (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut. Since the Petition Date, Debtors have continued in possession and management of their businesses and property as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

2. On December 18, 2017, Debtors filed their *Motion for Interim and Final Orders Authorizing Debtors to Use Cash Collateral and Granting Adequate Protection* (the "Cash Collateral Motion"; ECF No. 3).

---

[1] The Chapter 11 cases of Clinton Nurseries, Inc., Case No. Case No. 17-31897, Clinton Nurseries of Maryland, Inc., Case No. 17-31898, Clinton Nurseries of Florida, Inc., Case No. 17-31899, and Triem LLC, Case No. 17-31900 are jointly administered under Case No. 17-31897.

[2] The term "Debtors" means Clinton Nurseries, Inc., Clinton Nurseries of Maryland, Inc., Clinton Nurseries of Florida, Inc., and Triem, LLC.

[3] Unless set forth herein, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

{00055191.2}                                    1

3. On January 4, 2018, the United States Trustee appointed the Committee pursuant to § 1102 (ECF No. 50).

4. A hearing on Debtors' interim use of cash collateral was held on December 21, 2017 and an order providing for interim use of cash collateral was granted (the "Interim Order"; ECF No. 28).

5. Debtors filed their respective schedules on January 16, 2018.

6. On January 19, 2018, a further hearing on Debtors' use of cash collateral was held, and the Court entered an *Order and Stipulation Authorizing Second Interim Use of Cash Collateral and Granting Adequate Protection* (the "Second Interim Order"; ECF No. 111).

7. The Second Interim Order provides Debtors with authority to use cash collateral through and including March 2, 2018. A hearing to consider the further continued use of cash collateral is scheduled for February 23, 2018 at 10:00 AM, with objections to the continued use of cash collateral due on or before 4:00 PM on Tuesday, February 20, 2018 (the "Objection Deadline").

8. The Second Interim Order further provides that the period in which the Committee has to commence an adversary proceeding either (a) challenging the validity, enforceability, priority, perfection, characterization or amount of Debtors' prepetition obligations and/or liens or (b) asserting any claims or causes of action against Debtors' main secured creditor, the Bank, expires ninety (90) days from January 4, 2018 (i.e. April 4, 2018) (the "Investigation Period"). As such, the Committee is under pressure to undertake its financial investigation quickly and desires to substantially complete its analysis by March 2, 2018.

## **RELIEF REQUESTED**

9. Fed. R. Bankr. P. 2004(a) permits the Court, on "motion of any party in interest," to "order the examination of any entity." The scope of the examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Additionally, in a Chapter 11 case, the examination may relate to "any… matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b).

10. The scope of a Rule 2004 examination is exceedingly broad, such that it is commonly likened to a "fishing expedition." *In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002). Moreover, Rule 2004 motions may be, and often are, considered *ex parte*. *In re Sheetz*, 452 B.R. 746, 748-749 (Bankr. N.D. Ind. 2011).

11. Also, it is appropriate to use Rule 2004 as a pre-litigation discovery device, in order to ascertain whether there might be any viable causes of action on behalf of the estate. *In re Washington Mutual, Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009) (noting that "[o]ne of the primary purposes of a Rule 2004 examination is as a pre-litigation device").

12. Accordingly, in light of both the short time period in which the Committee will have to review any documents produced by the Bank prior to expiration of the Objection Deadline and the Investigation Period, the Committee seeks a formal order authorizing the Committee to conduct an examination pursuant to Fed. R. Bankr. P. 2004 in order to determine whether Debtors have a viable business plan, the value of Debtors' assets, the nature and validity of the claims of secured creditors including the Bank, and other matters critical to the case.

WHEREFORE, the Committee respectfully requests that this Court issue an order for the examination of the pursuant to Fed. R. Bankr. P. 2004(a).

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By: /s/ Jeffrey M. Sklarz
Jeffrey M. Sklarz (ct20938)
Lauren McNair (ct30167)
Green & Sklarz LLC
700 State Street, Suite 100
New Haven, CT 06511
(203) 285-8545
Fax: (203) 823-4546
jsklarz@gs-lawfirm.com
lmcnair@gs-lawfirm.com
