**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

_____

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : | Jointly Administered |
| CLINTON NURSERIES, INC. ET AL.[1] | : | Case No. 17-31897 (JJT) (Lead) |
|  | : |  |
| Debtors | : | January 26, 2018 |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**PARTIAL OBJECTION AND RESERVATION OF RIGHTS RE: APPLICATION TO**
**EMPLOY TRUENORTH CAPITAL PARTNERS LLC AS INVESTMENT BANKER**

The Official Committee of Unsecured Creditors (the "Committee") of Clinton Nurseries, Inc. *et al.*, respectfully submits this partial objection and reservation of rights to the *Application Pursuant to Bankruptcy Code Sections 327 and 328 and Federal Rules of Bankruptcy Procedure 2014 and 2016 Requesting Entry of an Order Authorizing Debtors to Retain TrueNorth Capital Partners, LLC as Investment Banker for Debtors Nunc Pro Tunc to Petition Date* (the "TrueNorth Retention Application"; ECF No. 67), filed by Debtors[2]. In support hereof the Committee states as follows:

**INTRODUCTION**

1. The Committee believes Debtors should retain an investment banker to aid with recapitalizing, refinancing, and/or selling the assets of Debtor. However, before TrueNorth Capital Partners, LLC ("TrueNorth") is retained: (a) certain clarifications in the TrueNorth Retention Application are required and (b) Debtors must provide minimum financial disclosure for the Committee to understand whether TrueNorth is capable of accomplishing the goals set

---

[1] The chapter 11 cases of Clinton Nurseries, Inc., Case No. Case No. 17-31897, Clinton Nurseries of Maryland, Inc., Case No. 17-31898, Clinton Nurseries of Florida, Inc., Case No. 17-31899, and Triem LLC, Case No. 17-31900 are jointly administered under Case No. 17-31897.

[2] The term "Debtors" means Clinton Nurseries, Inc., Clinton Nurseries of Maryland, Inc., Clinton Nurseries of Florida, Inc., and Triem LLC.

forth in its retention agreement.  Once these easy, but significant, changes and disclosures are made, the Committee believes it will be able to support TrueNorth's retention.

## PROCEDURAL BACKGROUND AND HISTORY

2.      On December 18, 2017 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut, New Haven Division.  Since the Petition Date, Debtors have continued in possession and management of their businesses and property as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

3.      On January 4, 2018, the United States Trustee, pursuant to Bankruptcy Code § 1102, appointed the Committee.  ECF No. 50.

4.      The following information has been gleaned from information provided by Debtors or their agents: CNI acts as an operating wholesale plant nursery, as well as a holding company for its wholly owned affiliates, CNM and CNF.  Both CNM and CNF are also wholesale plant nurseries. The additional debtor, Triem LLC, owns a single-family residence in Connecticut, and real estate in Maryland, from which CNM operates, in part.  Collectively, Debtors claim CNI, CNM, and CNF employ over 200 people.  Because of consolidation in the landscaping supply and gardening industry, Debtors' customer base has been significantly reduced and currently consists of two major customers, accounting for more than ninety (90%) percent of their business.

5.      Debtors' primary allegedly secured lender is Bank of the West (the "Bank"), which claims to hold a blanket security interest in Debtors' operating assets, including Debtors'

cash collateral, as well as mortgages on real estate owned by Debtors. In the Cash Collateral Motion, Debtors state that the Bank is owed approximately $28 million.

6.  On January 9, 2018, Debtors filed the TrueNorth Retention Application. As alleged therein, Debtors seek to retain TrueNorth to raise funds by way of debt or equity, with the apparent purpose of refinancing the Bank's debt, provide working capital, and for other business purposes.

7.  TrueNorth was first retained on November 8, 2017, prior to the Petition Date, and has received approximately $36,000 in compensation to date.

## RELIEF REQUESTED

8.  Debtors should be able to retain TrueNorth, once the terms of its retention are clarified and certain basic financial data, including information already provided to TrueNorth or produced by TrueNorth is provided to the Committee (this information would likely include: inventory accounts and reports, tax returns, an accrual basis balance sheet and profit and loss account for 2017, future looking *pro forma* financial statements for 2018 and beyond, and any updated week liquidity forecast) ("Basic Financial Information").

9.  By way of clarification of the terms of TrueNorth's retention,[3] the order approving TrueNorth's employment should specify that:

   a.  TrueNorth should not be compensated on account of any amount David Richards, or other insiders, loan to, or make as equity investments in, Debtors. Insiders are already highly motivated to invest in Debtors, given their desire to keep the businesses, and TrueNorth would not be providing material assistance in obtaining such funds.

---

[3] Based on conversations with Attorney Henzy, the undersigned believes that the changes outlined herein will be included in a revised proposed order approving the TrueNorth Retention Application.

   b. Payment under the 1/3/5 formula should apply to the *sources* of the funds received, not their uses. Thus, if TrueNorth obtains a $5 million senior loan and $5 million mezzanine loan, TrueNorth would be compensated $50,000 for the senior loan and $150,000 for the mezzanine loan.[4] TrueNorth would not be compensated based on how new debt or equity was used to pay off existing debt.

   c. TrueNorth would be paid a 1% fee on new funds raised to retire the Bank's debt through a plan of reorganization. However, no payment would be due for restructuring of subordinated debts. For example, because it appears that the debt held by Warren and Ann Richards should be recharacterized as unsecured (and likely subordinated), TrueNorth should not be compensated for that result or a refinance of that debt.

  10. TrueNorth's retention should also be conditioned on the Committee's receiving the Basic Financial Information. Since its retention, the Committee has requested, but not been provided with, any financial information concerning Debtors, other than schedules and the December monthly operating reports. The Committee recently filed requests to take Rule 2004 examinations to obtain such information as well (but hopes that the materials will be provided voluntarily, as they should be).

  11. The schedules and the December monthly operating reports do not have any detail concerning Debtors' key assets – its inventory. Inventory was not listed as a balance sheet asset on the operating reports. No independent inventory accounting was provided either.

  12. Further, despite having retained a CRO prepetition, and TrueNorth in November, Debtors have been unable to provide the Committee with access to a data room or documents that TrueNorth would have needed to perform any work over the past 3 months, any of

---

[4] The Committee notes that it is not clear why TrueNorth is being encouraged to raise subordinated debt, but can address that issue if and when it arises in the future.

TrueNorth's work product (i.e a teaser and confidential information memorandum), or the Basic Financial Information.

13. Providing this information should not be particularly burdensome as it would require sending a data room link or email to the undersigned. The Committee has been willing to sign a nondisclosure agreement or enter into a protective order from the time of its formation and will keep any information confidential in any event.

14. However, because the Committee has not received requested financial information, it is impossible for the Committee to make a reasoned determination about TrueNorth's retention.

15. In sum, the Court should not approve TrueNorth's retention until the above clarifications to its retention are made and Debtors provide the basic financial information the Committee needs to evaluate whether TrueNorth is capable of accomplishing the goals set forth in its engagement letter and the Retention Application.

## **RESERVATION OF RIGHTS**

16. The Committee reserves the right to supplement this Objection as additional information becomes available.

## CONCLUSION

17. For these reasons, the Court should condition the granting of the TrueNorth Retention Application on the terms set forth above and grant such other relief as is just and proper.

>                           OFFICIAL COMMITTEE OF
>                           UNSECURED CREDITORS
>
> By:      /s/ Jeffrey M. Sklarz
>          Jeffrey M. Sklarz (ct20938)
>          Lauren McNair (ct30167)
>          Green & Sklarz LLC
>          700 State Street, Suite 100
>          New Haven, CT 06511
>          (203) 285-8545
>          Fax: (203) 823-4546
>          jsklarz@gs-lawfirm.com
>          lmcnair@gs-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below a copy of the foregoing was served by CM/ECF and/or mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Date: January 26, 2018                              /s/ Jeffrey M. Sklarz