**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CLINTON NURSERIES, INC., | : | Case No. 17-31897(JJT) |
| CLINTON NURSERIES OF MARYLAND, INC., | : | Case No. 17-31898(JJT) |
| CLINTON NURSERIES OF FLORIDA, INC., and | : | Case No. 17-31899(JJT) |
| TRIEM LLC, | : | Case No. 17-31900(JJT) |
| | : | (Jointly Administered Under |
| Debtors. | : | Case No. 17-31897(JJT)) |

**DEBTORS' MOTION TO DETERMINE AMOUNT OF UNITED**
**STATES TRUSTEE FEES PURSUANT TO 28 U.S.C. § 1930(a)(6)**

Clinton Nurseries, Inc. ("CNI"), Clinton Nurseries of Maryland, Inc. ("CMI"), Clinton Nurseries of Florida, Inc. ("CNF"), and Triem LLC ("Triem; together with CNI, CNM and CNF, the "Debtors"), for their motion to determine the amount of United States Trustee (the "US Trustee") fees they owe pursuant to 28 U.S.C. § 1930(a)(6), respectfully state:

**INTRODUCTION**

1.      Pursuant to 28 U.S.C. § 1930(a)(6), Chapter 11 debtors such as the Debtors are required to pay a "user fee" to the US Trustee based on the total amount of a debtor's "disbursements" within the preceding quarterly period.  In 2017, Congress amended the US Trustee fee structure.  The pre-amendment fee structure provided for a flat-fee, tiered structure with a $30,000 quarterly fee cap.  The amended fee structure taxes total disbursements at the rate of 1% for debtors with over $1 million in disbursements per quarter with a $250,000 cap, an increase of up to ***1,150%***.

2.      Based on their disbursements, under the pre-amendment fee structure, the Debtors would have paid the US Trustee $106,925.00 for the periods through the fourth quarter of 2018. Under the amended fee structure, the Debtors paid the US Trustee $301,370.26 for the periods through the fourth quarter of 2018, an increase of 182%.  The increase for any quarters that the

1

Debtors cases are open in 2019 will be similar.  Assuming the Debtors are able to exit Chapter 11 prior to the commencement of the fourth quarter of 2019, as they hope and believe they will, the Debtors estimate that US Trustee fees for their cases would total approximately $560,000.00 under the amended fee structure, as opposed to $186,550.00 under the pre-amendment fee structure, an increase of $373,450, or 200%.

3.      As this Court is aware based on the proceedings in these cases, while the Debtors operations have stabilized and improved, due to financial constraints at various points in time the Debtors have struggled to maintain their operations, deliver products to their customers, and preserve value for their estates.  The increased US Trustee fees have significantly exacerbated the Debtors' financial situation and negatively impacted the Debtors' ability to reorganize in these cases.

4.      The Debtors do not in any way intend to disparage or minimize the work of the US Trustee in these or any Chapter 11 cases.  However, fees of $560,000.00 cannot be a fair approximation of the actual time spent by the US Trustee in these cases.

5.      The Debtors are requesting that the Court find that the Debtors are not required to pay the US Trustee fees based on the amended schedule because, for among other reasons, the fee increase violates the United States Constitution for cases filed prior to October 1, 2018. [1]  The Debtors are requesting that the Court order that the Debtors were and are obligated to pay US Trustee fees, from the inception through the conclusion of these cases, under the pre-amendment fee structure, and that the US Trustee refund to the Debtors the difference in the fees paid under

_____

[1]  The Debtors have not filed a notice of constitutional question, see Federal Rule of Civil Procedure 5.1, made applicable by Federal Rule of Bankruptcy Procedure 9005.1, and 28 U.S.C. § 2403, as cases have held and the US Trustee has taken the position elsewhere that because the US Trustee is actively involved in these cases the United States is already a party.  See, e.g., In re Perry Hollow Mgmt. Co., Inc., 297 F.3d 34, 38 (1st Cir. 2002); United States Trustee's Response to This Court's Notice and Certification of Constitutional Question Under 28 U.S.C. § 2403 and Fed.R.Civ.P. 5.1, In re Buffets, LLC, Case No. 16-50557-RBK, Doc. No. 3969.

the post-amendment fee structure and the fees that should have been paid under the pre-amendment fee structure.

## JURISDICTION AND BACKGROUND OF THE DEBTORS' CASES

6.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of referral entered by the United States District Court for the District of Connecticut on September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court for these cases and this motion pursuant to 28 U.S.C. §§ 1408 and 1409, respectively.

7.     On December 18, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtors continue to operate their businesses and manage their properties, affairs, and assets as debtors-in-possession.  On December 22, 2017, the Court entered an order directing that the Debtors' cases be jointly administered.  No trustee or examiner has been appointed in these cases.

8.     CNI is a Connecticut corporation that owns and operates a wholesale plant nursery, growing trees, flowering shrubs, roses, ornamental grasses and ground covers.  CNI operates on land located in Westbrook, Connecticut, a portion of which is owned by an affiliate of CNI.  As of the Petition Date, CNI employed approximately eighty-four people.

9.     CMI is a Connecticut corporation that is wholly owned by CNI.  CMI owns and operates a wholesale plant nursery, growing trees, flowering shrubs, roses, ornamental grasses and ground covers, on land located in Centreville, Maryland, and other locations in Maryland, a portion of which is owned by Triem LLC and a portion of which is owned by an affiliate of CNI.  As of the Petition Date, CMI employed approximately fifty-two people.

10.     CFI is a Florida corporation that is wholly owned by CNI.  CFI owns and operates a wholesale plant nursery, growing trees, flowering shrubs, roses, ornamental grasses and ground

covers, on land it owns located in Havana, Florida. CFI has access to an additional land located in Quincy, Florida. As of the Petition Date, CFI employed approximately eighty-six people.

11.     Triem is Connecticut limited liability company that is an affiliate of CNI. Triem owns a house located in Westbrook, Connecticut, and the land located in Centreville, Maryland on which CMI operates its business.

12.     The Debtors' combined annual revenue was in the range of approximately $45 million prior to the Petition Date. The Debtors historically have sold their products to a relatively small number of very large retail seller customers, and at this point the Debtors have two such very large customers. The Debtors are one of a small handful of vendors with the production capacity to serve the majority of the East Coast for these large customers. The quantity of the Debtors' inventory reflects grow times (in some cases years) necessary to fulfill order requests across the spectrum of grow times for one "trade" gallon pots to twenty-five "trade" gallon pots. All inventory is potted to meet customers' requirements of no "bound and bagged" plants.

13.     The Debtors enjoyed profitable operations for the majority of the ninety-six years they or their predecessors have been in business. Several years ago, one large former customer instituted a new business model that resulted in dramatically eroding margins for suppliers such as the Debtors. At the same time, the Debtors were in the midst of an expansion effort and had invested substantial capital in growing inventory to support its large customers at the time. The Debtors' expansion followed by the decline in business with and eventual loss of the former customer left the Debtors overleveraged. Since the Petition Date, the Debtors have been able to stabilize and "right size" their operations, which are now profitable.

### U.S. TRUSTEE FEES

14.     The US Trustees are officials of the United States Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases. 28 U.S.C. §§ 581-

89. "The U.S. Trustee Program was initiated with the enactment of the Bankruptcy Code in 1978 as a Pilot Program in the Department of Justice and was designed to relieve the bankruptcy judges of certain administrative matters." United States Trustee v. Columbia Gas Sys. (In re Columbia Gas Sys.), 33 F.3d 294, 295-96 (3rd Cir. 1994). See also H.R. Rep No. 95-595, 95th Cong., 1st Sess., at 4 (1977) (reprinted at Collier's on Bankruptcy Vol. C, App. Pt. 4(d)(i), at App. Pt. 4-1055 (16th ed. 2018)) ("The bill removes many of the supervisory functions from the judge in the first instance, transfers most of them to the trustee and the United States trustee, and involves the judge only when a dispute arises."). Congress intended that the US Trustee "act as bankruptcy watchdogs, overseeing the qualifications and appointments of private trustees in bankruptcy cases supervising their performance, monitoring their fees, and serving as trustees in cases where a private trustee cannot be found to serve." Id. US Trustees have a variety of enforcement, administrative and regulatory duties in bankruptcy cases, including the appointment and supervision of Chapter 7 trustees and the supervision of bankruptcy cases under Chapters 7, 11, 12 and 13, by, among other things, reviewing and commenting on employment and compensation of professionals, monitoring and commenting upon plans under Chapters 11, 12 and 13 plans, and establishing and monitoring creditors' committees. 28 U.S.C. § 586(a)(1) & (a)(3)(A), (B), (C), (E) & (I).

15. Pursuant to 28 U.S.C. § 1930, debtors under the Bankruptcy Code are required to pay fees into the US Trustee System Fund (the "Fund"). "Historically, § 1930(a)(6) set forth a scheme to impose the costs of the United States Trustee on its users." US Trustee v. Gryphon at the Stone Mansion, 166 F.3d 552, 554 (3rd Cir. 1999) (citing H.R. Rep. No. 764, 99th Cong., 2nd Sess., at 22, reprinted in U.S.C.C.A.N. 5227, 5234). "[T]he Congressional intent behind 28 U.S.C. § 1930 . . . was to create a self-funding United States' Trustee's Office, not a profit-making arm of the government." Michel v. HSSI, Inc. (In re HSSI, Inc.), 193 B.R. 851, 854 (N.D. Ill. 1996)

(citing H.R. Rep. No. 764, 99th Cong., 2nd Sess., at 22, reprinted in U.S.C.C.A.N. 5227, 5234-35). Pursuant to 28 U.S.C. § 589a(b), varying percentages of fees paid pursuant to 28 U.S.C. § 1930(a)(1)-(5) are paid into the Fund, and 100 percent of fees paid pursuant to 28 U.S.C. § 1930(a)(6) are paid into the Fund. The Fund may only be used for the specific purposes set forth in 28 U.S.C. § 589a(a) (setting forth nine such purposes).

16.      Prior to October 26, 2017, 28 U.S.C. § 1930(a)(6) provided:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $325 for each quarter in which disbursements total less than $15,000; $650 for each quarter in which disbursements total $15,000 or more but less than $75,000; $975 for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,625 for each quarter in which disbursements total $150,000 or more but less than $225,000; $1,950 for each quarter in which disbursements total $225,000 or more but less than $300,000; $4,875 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $6,500 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $9,750 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $10,400 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $13,000 for each quarter in which disbursements total $5,000,000 or more but less than $15,000,000; $20,000 for each quarter in which disbursements total $15,000,000 or more but less than $30,000,000; $30,000 for each quarter in which disbursements total more than $30,000,000. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

As of 2017, prior to the amendment to 28 U.S.C. § 1930(a)(6) discussed below, approximately thirty-eight percent of the US Trustee's revenue was derived from filing fees paid in Chapters 7, 11, 12 and 13 cases pursuant to 28 U.S.C. § 1930(a)(1)-(5) and approximately sixty-one percent came from quarterly fees paid in Chapter 11 cases pursuant to 28 U.S.C. § 1930(a)(6). H.R. Rep. No. 115-130, 115th Cong., 1st Sess., at 7 n.26, annexed hereto as Exhibit A.

17.      When Congress created the US Trustee program, it excluded the six judicial districts in North Carolina and Alabama. Instead, Alabama and North Carolina use the Bankruptcy

Administrator ("BA") program, which reports to the Administrative Office of the United States Courts.  The BA program is part of the judicial branch, while the US Trustee program is part of the executive branch.  UST quarterly fees do not apply to Chapter 11 cases filed in Alabama and North Carolina.

In 1994, the Ninth Circuit issued an opinion in *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994), holding that excluding the BA districts from the fees charged in USTP districts was unconstitutional under the Uniformity Clause of the Constitution. The Ninth Circuit found that the chapter 11 quarterly fees required in courts served by the USTP but not assessed in BA districts resulted in a non-uniform application of bankruptcy law and unequal treatment of creditors. As a result, in March 1996, the Judicial Conference adopted a recommendation from the Committee to seek legislation providing authority to collect chapter 11 quarterly fees in BA districts. JCUS-MAR 96, p. 10. On November 13, 2000, the Federal Courts Improvement Act of 2000, Pub. L. No. 105-518, § 105, 114 Stat. 2410, 2412, was signed into law, and 28 U.S.C. § 1930 was amended to add subsection (a)(7), [2] permitting the Judicial Conference to impose fees in BA districts in amounts equal to those listed in 28 U.S.C. § 1930(a)(6). Subsection (a)(7) further requires the judiciary to deposit all chapter 11 quarterly fees collected in BA districts as offsetting receipts to the fund established under 28 U.S.C. § 1931.[3]

In September 2001, the Judicial Conference approved the Committee's recommendation that quarterly fees for chapter 11 cases in BA districts be imposed "in the amounts specified in 28 U.S.C. § 1930, as those amounts may be amended from time to time." JCUS-SEP/OCT 01, pp. 45-46.

---

[2] 28 U.S.C. § 1930(a)(7) provides:

In districts that are not part of a United States trustee region as defined in section 581 of this title, the Judicial Conference of the United States may require the debtor in a case under chapter 11 of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection. Such fees shall be deposited as offsetting receipts to the fund established under section 1931 of this title and shall remain available until expended.

[3] 28 U.S.C. § 1931 provides:

(a)    Of the amounts paid to the clerk of court as a fee under section 1914(a) or as part of a judgment for costs under section 2412(a)(2) of this title, $190 shall be deposited into a special fund of the Treasury to be available to offset funds appropriated for the operation and maintenance of the courts of the United States.

(b)    If the court authorizes a fee under section 1914(a) or an amount included in a judgment for costs under section 2412(a)(2) of this title of less than $250, the entire fee or amount, up to $190, shall be deposited into the special fund provided in this section.

Report of the Judicial Conference Committee on the Administration of the Bankruptcy System (September 2018), at 18, annexed hereto as Exhibit B.

18.     Congress amended 28 U.S.C. § 1930(a)(6) effective October 26, 2017, to add the following new subsection (B) (the existing provision was designated as subsection (A)):

> During each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000.

While Congress seemed to believe that the amendment provided "for an increase in the U.S. Trustee fees for the largest chapter 11 debtors (i.e., excluding small businesses)," H.R. Rep. No. 115-130, at 7, a belief shared by at least one leading commentator, 1 Collier on Bankruptcy ¶ 9.06[2], at 9-44 (16th ed. 2018) ("[T]his change will only affect mega cases. . . ."), "[t]his [was] . . . a substantial increase over the fees [then] . . . charged, which range[d] from $6,500 to $30,000 for disbursements exceeding $1 million." Report of the Judicial Conference Committee on the Administration of the Bankruptcy System (September 2018), at 19. The following table is a comparison of the pre-amendment vs. post-amendment US Trustee fees:

| Quarterly disbursements | Old Fee | New Fee | Percent Change |
|---|---|---|---|
| $300,000-$999,999 | $4,875 | $4,875 | 0% |
| $1,000,000-$1,999,999 | $6,500 | $10,000-$19,999 | 54-208% |
| $2,000,000-$2,999,999 | $9,750 | $20,000-$29,999 | 105-208% |
| $3,000,000-$4,999,999 | $10,400 | $30,000-$49,999 | 188-381% |
| $5,000,000-$14,999,999 | $13,000 | $50,000-$149,999 | 285-1,054% |
| $15,000,000-$29,999,999 | $20,000 | $150,000-$250,000 | 650-1,150% |

| $30,000,000 and up | $30,000 | $250,000 capped | 733% |
|---|---|---|---|

It was estimated that total receipts under 28 U.S.C. § 1930(a) following the amendment of 28 U.S.C. § 1930(a)(6) would be $289 million in 2018, an almost 100 percent increase from actual receipts of 148 million in 2016 and 135% increase from estimated receipts of $123 million in 2017. Office of Management and Budget, Appendix—Budget of the U.S. Government Fiscal Year 2018, at 697-98, annexed hereto as Exhibit C. Thus, assuming that filing fees under 28 U.S.C. § 1930(a)(1)-(5) stayed relatively constant from 2016 through 2018, it appears that after the amendment more than eighty percent of Fund receipts will be from Chapter 11 quarterly fees paid under 28 U.S.C. § 1930(a)(6).

19.     As noted above, "[t]he Fund is used for the operation of the USTP, and it does not apply to the BA districts." Id.

> *To ensure nationwide uniformity*, the BAs requested that the [Judicial Conference] Committee [on the Administration of the Bankruptcy System] recommend that the Conference approve similar fees in BA districts. The Committee noted the following issues with the quarterly fees generally, and the possibility that increasing the fees would exacerbate such problems: (1) whether imposing the quarterly fee has had a chilling effect on large chapter 11 case filings and (2) whether imposing the quarterly fee has precluded certain large chapter 11 debtors from successfully reorganizing (and compelling those debtors to instead dismiss or convert to chapter 7). The Committee will further consider these issues and consider whether the Conference should make a recommendation to Congress regarding whether to reenact revised subsection (a)(6)(B).
>
> Notwithstanding the concerns outlined above, the Committee agreed that the quarterly fee calculation changes in 28 U.S.C. § 1930(a)(6)(B) should apply in BA districts beginning in the first quarter of fiscal year 2019 (that is, for any chapter 11 case filed on or after October 1, 2018, and not for cases then pending).

Id. at 19-20 (emphasis added). At a meeting on September 13, 2018, among other things the Executive Committee of the Judicial Conference of the United States approved, on behalf of the Judicial conference on an expedited basis, imposing quarterly fees in chapter 11 cases filed in bankruptcy administrator districts in the amounts specified in 28 U.S.C. § 1930(a)(6)(B) for cases

filed on or after October 1, 2018 for any fiscal year in which the U.S. Trustee Program exercises its authority under that statute, and pursuant to any future extensions of that or similar authority.

Report of the Proceedings of the Judicial Conference of the United States (September 13, 2018), at 11, annexed hereto as Exhibit D.

20.    Since the Petition Date, the Debtors have timely filed all of their operating reports. Based on those operating reports, the Debtors would have owed US Trustee fees under the pre-amendment fee structure as follows:

|  | CNI | CNF | CNM | Triem |
|---|---|---|---|---|
| 4th Q '17 | $1,625 | $975 | $650 | $325 |
| 1st Q '18 | $6,500 | $6,500 | $4,875 | $325 |
| 2nd Q '18 | $13,000 | $9,750 | $10,400 | $325 |
| 3rd Q '18 | $10,400 | $9,750 | $9,750 | $325 |
| 4th Q '18 | $9,750 | $6,500 | $4,875 | $325 |

The Debtors have timely paid fees to the US Trustee based on invoices received from the US Trustee under the amended fee structure as follows:

|  | CNI | CNF | CNM | Triem |
|---|---|---|---|---|
| 4th Q '17 | $1,625 | $975 | $650 | $325 |
| 1st Q '18 | $15,205 | $12,316 | $4,875 | $325 |
| 2nd Q '18 | $85,623 | $21,012 | $39,286 | $325 |

| | | | |
|---|---|---|---|
| 3rd Q '18 | $40,253.43 | $16,611.06 | $22,230.99 | $325 |
| 4th Q '18 | $22,883.78 | $11,324 | $4,875 | $325 |

## **ARGUMENT**

A.  <u>Non-uniform bankruptcy law</u>

21.    Article 1, § 8, cl. 4 of the United States Constitution vests Congress with the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States."  The Supreme Court has "defined 'bankruptcy' as the 'subject of the relations between an insolvent or nonpaying or fraudulent debtor and his creditors, extending to his and their relief.'"  <u>Railway Labor Executives' Ass'n v. Gibbons</u>, 455 U.S. 457, 466 (1982) (quoting <u>Wright v. Union Central Life Ins. Co.</u>, 304 U.S. 502, 513-14 (1938)).  The bankruptcy "power 'extends to all cases where the law causes to be distributed, the property of the debtor among his creditors.'"  <u>Id</u>. (quoting <u>Hanover Nat'l Bank v. Moyses</u>, 186 U.S. 181, 186 (1902)).  <u>See also</u> <u>Nelson v. Carland</u>, 42 U.S. 265, 280-81 (1843) ("In considering the question before me, I have not pretended to give a definition; (but purposely avoided any attempt to define) the mere word, BANKRUPTCY.  It is employed in the Constitution in the plural, and as part of an expression; 'the subject of bankruptcies.'  The ideas attached to the word in this connection, are numerous and complicated; they form a subject, of extensive and complicated legislation; of this subject, Congress has general jurisdiction; and the true inquiry is—To what limits is that jurisdiction restricted?  I hold, it extends to all cases where law causes to be distributed, the property of the debtor among his creditors: this is the least of its limit.  Its greatest, is a discharge of the debtor from his contracts.  And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the competency and discretion of Congress.").

22.     28 U.S.C. § 1930(a)

clearly governs the relationship between creditor and debtor and, accordingly, falls within the scope of the Uniformity Clause.  The U.S. Trustees have assumed the supervisory roles of the bankruptcy judges.  Indeed, the statute entrusts U.S. Trustees with extensive discretion to appoint interim and successor trustees, monitor and supervise bankruptcy proceedings, examine debtors, advise the bankruptcy courts, and even, in some circumstances, to seek dismissal of cases. . . . Thus, the U.S. Trustees' activities have a direct effect upon the rights and liabilities of both debtors and creditors.

The U.S. Trustee program is not only intimately connected to the government's regulation of the *relationship* between creditor and debtor, it also has a concrete effect upon the *relief* available to creditors.  Because debtors in states other than North Carolina and Alabama must pay higher fees for the supervision of bankruptcy proceedings, the current system reduces the amount of funds that the debtor can ultimately pay to his creditors in the other 48 states.

St. Angelo v. Victoria Farms, 38 F.3d 1525, 1530-31 (9th Cir. 1994) (emphasis in original).

23.     "The Constitutional requirement of uniformity is a requirement of geographic uniformity.  It is wholly satisfied when existing obligations of a debtor are treated alike throughout the country, regardless of the State in which the bankruptcy court sits."  Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 172 (1946) (Frankfurter, J., concurring).  See also Railway Labor Executives' Ass'n, 455 U.S. at 468-473 ("[T]he Bankruptcy Clause itself contains an affirmative limitation or restriction upon Congress' power: bankruptcy laws must be uniform throughout the United States. . . . To survive scrutiny under the Bankruptcy Clause, a law must at least apply uniformly to a defined class of debtors."); Hanover Nat'l Bank v. Moyses, 186 U.S. at 188 ("The laws passed on the subject [of bankruptcies] must . . . be uniform throughout the United States, but that uniformity is geographical and not personal . . . . ."); In re New York, N.H. & H.R. Co., 16 F.Supp. 504, (D. Conn. 1936) (Uniformity Clause requires geographical uniformity).

24.     "A bankruptcy law may have different effects in various states due to dissimilarities in state law as long as the federal law itself treats creditors and debtors alike.  As the Supreme Court noted in *Green*, the effect of a law may differ due to variations in state law as long as the

'existing obligations of a debtor are treated alike by the bankruptcy administration throughout the country, regardless of the State in which the bankruptcy court sits.'" St. Angelo, 38 F.3d at 1531 (quoting Vanston Bondholders Protective Comm., 329 U.S. at 172). See also Railway Labor Executives' Ass'n, 455 U.S. at 469-71; Hanover Nat'l Bank, 186 U.S. at 190 ("[T]he system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each State whatever would have been available to the creditors if the bankruptcy law had not been passed."); Schultz v. United States, 529 F.3d 343, 351 (6th Cir. 2008) (uniformity "allows different effects in various states due to dissimilarities in state law, so long as the federal law applies uniformly among classes of debtors."). Further, "Congress may enact non-uniform laws to deal with geographically isolated problems as long as the law operates uniformly upon a given class of creditors and debtors." St. Angelo, 38 F.3d at 1531. See also Schultz, 529 F.3d at 351 (same).

25.     Under the foregoing standards, the different fee structures applicable to debtors in non-BA districts and debtors in BA districts for cases filed from the effective date of the amendment through September 30, 2018, renders the amendment to 28 U.S.C. § 1930(a)(6) a non-uniform bankruptcy law and therefore unconstitutional as applied to debtors who filed cases in non-BA districts prior to October 1, 2018. See St. Angelo, 38 F.3d at 1530-33; In re Buffets, LLC, 2019 Bankr.LEXIS 396, [*12] (Bankr. W.D.Tex. 2019) ("The Bankruptcy Judgeship Act of 2017 violated the Constitution when it increased fees only in the UST program."). As acknowledged by the Judicial Conference Committee on the Administration of the Bankruptcy System in the emphasized quote above, see ¶ 19, it is clear that the amendment to 28 U.S.C. § 1930(a)(6) is not geographically uniform. Fees in cases filed in non-BA districts prior to October 1, 2018, go up substantially, fees in BA districts do not.

26.     It is also clear that the amendment is not uniform in its application to members of the class of debtors filing Chapter 11 cases prior to October 1, 2018. Had the Debtors filed their

cases in Alabama or North Carolina up until September 30, 2018, they would have paid BA fees at the pre-amendment rates under 28U.S.C. § 1930(a)(6) *until their cases were closed*, i.e., they never would have been subject to the fee increase. Because Judicial Conference implemented a fee increase prospectively, the only way fee increases can be applied uniformly to all cases is to only apply it to cases filed on or after October 1, 2018.

27.     The amendment to 28 U.S.C. is not a provision which has different effects within North Carolina and Alabama due to differences in the laws of those states from the laws of the other forty-eight states. It is federal law, rather than state law, that causes debtors to be treated differently in Alabama and North Carolina. See St. Angelo, 38 F.3d at 1531; In re Buffets, LLC, 2019 Bankr.LEXIS 396 at [*10-11]

28.     As in *St. Angelo*, nowhere in the legislative history of the 2017 amendment did Congress give any indication that the fee increase was based on an isolated problem in Alabama and/or North Carolina, and there is no such problem. See Schultz, 529 F.3d at 353 ("[I]n *St. Angelo* there was no indication that Congress intended for the exemption to deal with a problem specific to North Carolina and Alabama . . . "); St. Angelo, 38 F.3d at 1531; In re Buffets, LLC, 2019 Bankr.LEXIS 396 at [*11]

29.     The amendment to 28 U.S.C. § 1930(a)(6) as applied to any debtor filing a case prior to September 30, 2018, created a non-uniform bankruptcy law and is unconstitutional. US Trustee fees in these cases should be calculated at rates set forth in pre-amendment 28 U.S.C. § 1930(a)(6).

B.     Unconstitutional user fee

30.     The United States Supreme Court has expressly made a distinction between "taxes" and "fees." It has held that

taxation is a legislative function, and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income.  A fee, however, is incident to a voluntary act, *e.g.*, a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station.  The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.

Nat'l Cable Televison Ass'n v. U.S., 415 U.S. 336, 340-41 (1974).  See also Commonwealth Edison Co. v. Montana, 453 U.S. 609, 622 (1981) (government has considerable latitude in imposing general revenue taxes); In re Jenny Lynn Mining Co., 780 F.2d 780, 789 (6th Cir. 1986) ("One of the characteristics of a tax as opposed to a fee is that a tax is an exaction for public purposes rather than a voluntary payment for a private benefit.").  Thus, a "user fee" is "a charge designed as compensation for government-supplied services, facilities, or benefits."  United States v. United States Shoe Corp., 523 U.S. 360, 362 (1998).

31.     "[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services."  U.S. v. Sperry, 493 U.S. 52, 63 (1989) (analyzing whether fee imposed to cover cost of Iran-United States Claims Tribunal a violation of the Takings Clause). Fees must reflect a "fair, if imperfect, approximation of the use" or privilege of use.  Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc., 405 U.S. 707, 717 (1972).  Thus, while a fee need not "be precisely calibrated to the use that a party makes of Government services . . . [, n]or does the Government need to record invoices and billable hours to justify the cost of its services," in order to pass Constitutional muster the Supreme Court has "required . . . that the user fee be a 'fair approximation of the cost of the benefit supplied.'"  Sperry, 493 U.S. at 60 (quoting Massachusetts v. U.S., 435 U.S. 444, 463 n.19 (1978)).  See also Bridgeport & Jefferson Steamboat Co. v. Bridgeport Port Authority, 567 F.3d 79, 86-87 (2nd Cir. 2009) ("[T]here need not be a perfect fit between the use of the facilities and the support of the facilities by the fee, but the discrepancy

here exceeds permissible bounds.").  Where fees are "designed and defended as a specific charge imposed by the State for the use of state-owned or state-provided transportation or other facilities . . ., [b]ecause such charges are purportedly assessed to reimburse the State for costs incurred in providing specific quantifiable services, we have required a showing, based on factual evidence in the record, that 'the fees charged do not appear to be manifestly disproportionate to the services rendered. . . . .'" Commonwealth Edison Co., 453 U.S. at 622 & 622 n.12 (quoting Clark v. Paul Gray, Inc., 306 U.S. 583, 599 (1939)).  See also United States Shoe Corp., 523 U.S. at 461-62 ("[A] fee must fairly match the . . . use of . . . services and facilities."); Webb's Fabulous Pharmacies v. Beckwith, 449 U.S. 155, 163 (1980) (declaring unconstitutional as violation of Takings Clause "exaction" of interest earned on interpleader fund unrelated to services provided as a "forced contribution to general government revenues . . . not reasonably related to the costs of using courts."); Nat'l Cable Televison Ass'n v. U.S., 415 U.S. at 342-43 ("The phrase 'value to the recipient' is, we believe, the measure of the authorized fee."); Edmonson v. Fremgen, 590 Fed.Appx. 613, 615 (7th Cir. 2014) ("[The plaintiff] does not dispute that the filing fee is reasonable.  '[A] reasonable user fee is not a taking if is imposed for the reimbursement of the cost of government services.'" (quoting Sperry, 493 U.S. at 63)).

32.     Courts have found and the Office of the United States Trustee has taken the position that US Trustee fees are user fees, not taxes.  See, e.g., Walton v. Jamko, Inc. (In re Jamko, Inc.), 240 F.3d 1312, 1315 (11th Cir. 2001) ("As a revenue-generating mechanism, UST fees are akin to a user tax."); United States Trustee v. Gryphon at the Stone Mansion, 166 F.3d at, 554; In re Kindred Healthcare, Inc., 2003 Bankr. LEXIS 1308, *13 (Bankr. D. Del. 2003) ("The quarterly fees which the UST seeks are user fees, that is, fees associated with the Debtors' use of the bankruptcy judicial system."); In re Danny's Markets, Inc., 239 B.R. 342, 346 (Bankr. E.D. Mich 1999) ("[C]ourts generally have agreed that § 1930(a)(6) represents a user's fee."); In re

Postconfirmation Fees, 224 B.R. 793, 795 (Bankr. E.D. Wash. 1998) ("28 U.S.C. § 1930(a)(6) has a legitimate public purpose which is to make the U.S. Trustee system self-funded and, to the extent possible, to have users of the bankruptcy system rather than the general public absorb the costs of the system."); In re Gates Community Chapel, 212 B.R. 220, 226 (Bankr. W.D.N.Y. 1997) ("I believe that quarterly U.S. Trustee fees are a form of user-fee, not a tax."); Limited Objection of the Acting United States Trustee to Reorganized Debtors' Motion for Entry of Final Decree Closing Case of Expro Holdings US Inc *Nunc Pro Tunc* to Filing Date, *In re Expro Holding US Inc*., et al., Case No. 17-60179 (DRJ), Doc. No. 283, ¶ 20 ("Statutory fees were created by Congress as a user fee . . . ."); Sur-Reply of the United States Trustee to Reorganized Debtors' Omnibus Reply in Support of Reorganized Debtors' Motion for Entry of a Final Decree and Order Closing the Reorganized Debtors' Chapter 11 Cases *Nunc Pro Tunc* to January 23, 2018 and Terminating Certain Claims and Noticing Services, In re Millennium Lab Holdings II, LLC, et al., Case No. 15-12284 (LSS), Doc. No. 531, ¶ 16 (Bankr. D. Del.) (same).

33.     As noted above at paragraph 14, Congress established the US Trustee program to serve broad, overarching public purposes, to "act as bankruptcy watchdogs" of the *entire bankruptcy system*.  Chapter 11 cases have become a relatively small part of that system—Chapter 11 cases represent approximately 1% of total bankruptcy filings.  See *June 2018 Bankruptcy Filings Fall 2.6 Percent*, United States Courts, https://www.uscourts.gov/news/2018/07/24/june-2018-bankruptcy-filings-fal-26-percent (July 24, 2018), annexed hereto as Exhibit E.  Yet, the amended fee structure increases quarterly fees paid by Chapter 11 debtors by up to 1,150%, and Chapter 11 debtors will pay approximately 80/% of the costs of the US Trustee system.  What Congress has done would force Chapter 11 debtors to support the vast majority of the US Trustee program operating budget when this budget supports many US Trustee activities of no benefit to Chapter 11 debtors. Chapter 11 debtors should not and may not be charged for US Trustee

activities properly deemed of no actual or potential benefit and completely unrelated to Chapter 11 debtors, such as the US Trustee's extensive monitoring of cases under other chapters of the Bankruptcy Code.  See Bridgeport & Jefferson Steamboat Co., 567 F.3d at 87.  Unlike a tax, Congress may not charge Chapter 11 debtors fees based on a perceived ability to pay, rather than based on some at least rough relationship to services used or benefit conferred.

34.  In these cases, as noted above assuming the Debtors are able to close their cases by the end of the third quarter of 2019, US Trustee fees under the amended fee schedule would total approximately $560,000, which may be not much less than, if not more than, the attorneys' fees for the Debtors in these sometimes very active cases.  At a blended rate of $350 (assuming 50% of time spent by a trial attorney at $475 per hour, which is the undersigned's rate, and 50% of time spent by an analyst at $225 per hour), that would translate to 1,600 hours.  Given the volume of cases that the US Trustee oversees and the level of activity of the US Trustee in these cases, it is impossible that the US Trustee has spent even fifty percent of that time on these cases.  While the fit between the fee and the benefit conferred or cost of services used need not be perfect, "the discrepancy here exceeds permissible bounds."  See id. at 86.  The fees charged to these Debtors under the amended fee structure are a "forced contribution to general government revenues . . . not reasonably related to the costs of using the courts," Webb's Fabulous Pharmacies, 449 U.S. at 163, an "exaction for public purposes" rather than compensation for private benefit or for services used.

WHEREFORE, the Debtors respectfully request that the Court enter an order determining that US Trustee fees payable by the Debtors in these cases will be calculated based on the pre-amendment 28 U.S.C. § 1930(a)(6) fee schedule, ordering the US Trustee to refund to the Debtors payments made in excess of the fees calculated on the foregoing basis, and granting the Debtors such other and further relief as the Court deems just.

Dated at Bridgeport, Connecticut this 17th day of April, 2019.

> CLINTON NURSERIES, INC.,
> CLINTON NURSERIES OF MARYLAND, INC.,
> CLINTON NURSERIES OF FLORIDA, INC., and
> TRIEM LLC,
>
> */s/ Eric Henzy*
> Eric Henzy (Federal Bar No. ct12849)
> ZEISLER & ZEISLER, P.C.
> 10 Middle Street, 15th Floor
> Bridgeport, CT  06605
> Tel. 203-368-4234
> Fax 203-367-9678
> Email: ehenzy@zeislaw.com
> Their Attorneys