**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| In re: | § | Chapter 11 | |
| | § | | |
| **CLINTON NURSERIES, INC.,** | § | **Case No.** | **17-31897 (JJT)** |
| **CLINTON NURSERIES OF** | § | **Case No.** | **17-31898 (JJT)** |
| **MARYLAND, INC., CLINTON** | § | **Case No.** | **17-31899 (JJT)** |
| **NURSERIES OF FLORIDA, INC.,** | § | **Case No.** | **17-31900 (JJT)** |
| **and TRIEM LLC,** | § | | |
| | § | **Jointly Administered Under** | |
| | § | **Case No. 17-31897 (JJT)** | |
| | § | | |
| **Debtors.** | § | | |

**UNITED STATES TRUSTEE'S OBJECTION TO
DEBTORS' MOTION TO DETERMINE AMOUNT OF
<u>UNITED STATES TRUSTEE FEES PURSUANT TO 28 U.S.C. § 1930(a)(6)</u>**

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
ROBERT J. SCHNEIDER, JR.
Trial Attorney

Department of Justice
Executive Office for United States
  Trustees
441 G Street, N.W., Suite 6150
Washington, DC  20530
Tel:  (202) 307-1399
Fax: (202) 307-2397

WILLIAM K. HARRINGTON
United States Trustee, Region 2
KIM L. McCABE
Assistant United States Trustee
Bar No. ct23661

Department of Justice
Office of the United States Trustee
Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510
Tel:  (203) 773-2210
Fax: (203) 773-2217
Email: Kim.McCabe@usdoj.gov

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES……………………………………………………………..iii

SUMMARY ................................................................................................................... 1

FACTS .......................................................................................................................... 2

I.      The Debtors File Chapter 11 Cases ................................................................. 2

II.     The Debtors Challenge the Quarterly Fees Due Under 28 U.S.C. § 1930(a)(6) ............... 3

III.    Quarterly Fees Incurred to Date.......................................................................... 4

OBJECTION................................................................................................................. 5

I.      Congress Established Chapter 11 Quarterly Fees So That the Cost of the United
        States Trustee Program Is Not Borne by Taxpayers ........................................... 6

        A.  Congress carefully calibrates the amount of quarterly fees and other court fees to
            meet the funding needs of the bankruptcy system ....................................... 6

        B.  The quarterly fees charged in judicial districts in Alabama and North Carolina
            are required by statute to be the same as those charged in the rest of the country ..... 10

        C.  Congress temporarily increased fees in 2017 to avoid a deficit in the United
            States Trustee System Fund and to fund additional judgeships................................. 11

II.     The 2017 Amendment Does Not Violate the Bankruptcy Clause ................................. 15

        A.  The purpose of the Bankruptcy Clause was to empower Congress to pass laws
            providing relief to debtors enforceable in all fifty states and to prevent private
            bankruptcy bills.................................................................................... 15

        B.  Congress's 2017 quarterly fee amendment does not violate the Bankruptcy
            Clause because the law is uniform ............................................................ 17

        C.  An *ultra vires* failure to enforce section 1930 does not violate the Bankruptcy
            Clause.................................................................................................. 20

D.  Alternatively, the 2017 amendment does not violate the Bankruptcy Clause because section 1930(a)(6) is not a law "on the subject of Bankruptcies" ................ 22

E.  *Victoria Farms*, like *Prines*, supports the government's position ............................. 23

1.  *Victoria Farms* enforced the quarterly fee requirement ...................................... 24

2.  Subsequent amendments to section 1930 cured any lack of uniformity identified in *Victoria Farms* ................................................................................ 25

3.  *Victoria Farms*' analysis of the applicability of the Bankruptcy Clause was flawed, and has no bearing on whether a revenue provision like the 2017 amendment is a law "on the subject of Bankruptcies" ......................................... 26

III.  The 2017 Amendment Is Not Otherwise Unconstitutional ............................................. 29

A.  The 2017 amendment does not violate the Due Process Clause ................................ 30

B.  The 2017 amendment does not violate the Takings Clause ....................................... 32

1.  The Supreme Court has held that a user fee is not a taking ................................. 32

2.  The Supreme Court has held that a user fee is not an unconstitutional taking just because it exceeds the benefits received ........................................................ 33

CONCLUSION ...................................................................................................................... 39

EXHIBIT A

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**<u>Cases</u>**    <u>Page</u>

*In re A.H. Robins Co. Inc.*,
219 B.R. 145 (Bankr. E.D. Va. 1998) ........................................................................37

*Alamo Rent-a-Car, Inc. v. Sarasota-Manatee Airport Auth.*,
906 F.2d 516 (11th Cir. 1990) ...................................................................................35

*Ashton v. Cameron Cty. Water Imp. Dist. No. 1*,
298 U.S. 513 (1936)....................................................................................................22

*Blanchette v. Conn. Gen. Ins. Corps.*,
419 U.S. 102 (1974).....................................................................................................15

*Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*,
567 F.3d 79 (2d Cir. 2009).........................................................................................36

*Brown v. Legal Found. of Wash.*,
538 U.S. 216 (2003)....................................................................................................32

*In re Buffets, LLC*,
597 B.R. 588 (Bankr. W.D. Tex. 2019) ..........................................................1, 18, 23

*Commonwealth Edison Co. v. Montana*,
453 U.S. 609 (1981)....................................................................................................36

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
508 U.S. 602 (1993)....................................................................................................33

*Connolly v. Pension Ben. Guar. Corp.*,
475 U.S. 211 (1986)....................................................................................................33

*Eastern Enters. v. Apfel*,
524 U.S. 498 (1998)....................................................................................................30

*Edmonson v. Fremgen*,
590 F. App'x 613 (7th Cir. 2014) ..............................................................................36

*Hanover Nat'l Bank v. Moyses*,
186 U.S. 181 (1902)...............................................................................................22, 27

*Hobbs v. Buffets Holdings, LLC*,
Case No. 5:19-cv-0173-DAE (W.D. Tex.) ............................................................1, 18

*In re Kindred Healthcare, Inc.*,
No. 99-3199 (MFW), 2003 WL 22327933 (Bankr. D. Del. Oct. 9, 2003) ....................................37

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013)............................................................................................................6, 33

*Massachusetts v. United States*,
435 U.S. 444 (1978)............................................................................................................34, 35

*In re Miles*,
330 B.R. 861 (Bankr. M.D. Ga. 2005)........................................................................................19

*Mississippi Publ'g Corp. v. Murphree*,
326 U.S. 438 (1946)..................................................................................................................28

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*,
467 U.S. 717 (1984)..................................................................................................................30

*Peony Park v. O'Malley*,
121 F. Supp. 690 (D. Neb. 1954)................................................................................................20

*In re Prines*,
867 F.2d 478 (8th Cir. 1989) ...............................................................................7, 19, 20, 23

*In re Reese*,
91 F.3d 37 (7th Cir. 1996) .........................................................................................16, 22, 23

*Rosenberg v. United States*,
72 Fed. Cl. 387 (Fed. Cl. 2006) ...............................................................................................20

*Ry. Labor Execs. Ass'n v. Gibbons*,
455 U.S. 457 (1982)...............................................................................................6, 16, 22, 27

*Schultz v. United States*,
529 F.3d 343 (6th Cir. 2008) .............................................................................................16, 20

*Shady Grove Orthopedic Assocs. PA v. Allstate Ins. Co.*,
559 U.S. 393 (2010)..................................................................................................................28

*St. Angelo v. Victoria Farms, Inc.*,
38 F.3d 1525 (9th Cir. 1994) ........................................................18, 23, 24, 25, 26, 27, 28, 29

*Turner Broad. Sys., Inc. v. FCC*,
520 U.S. 180 (1997)..................................................................................................................31

*United States v. Carlton,*
512 U.S. 26 (1994)..................................................................................................30

*United States v. Kras,*
409 U.S. 434 (1973)................................................................................................20

*United States v. Ptasynski,*
462 U.S. 74 (1983)..................................................................................................20

*United States v. Sperry,*
493 U.S. 52 (1989)..................................................................6, 31, 32, 33, 34, 35, 36, 37, 38

*United States v. U.S. Shoe Corp.,*
523 U.S. 360 (1998)................................................................................................36

*Usery v. Turner Elkhorn Mining Co.,*
428 U.S. 1 (1976)....................................................................................................30

*U.S. Trustee v. Gryphon at Stone Mansion, Inc.,*
166 F.3d 552 (3d Cir. 1999)....................................................................................22

*Webb's Fabulous Pharmacies v. Beckwith,*
449 U.S. 155 (1980)................................................................................................36

## Statutes

11 U.S.C. § 330.......................................................................................................38

28 U.S.C. § 589a....................................................................................................7, 8

28 U.S.C. § 1930............................................................................................. *passim*

28 U.S.C. § 1931..................................................................................................7, 17

28 U.S.C. § 2072.....................................................................................................28

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,
Pub. L. No. 109-8 (2005)..........................................................................................9

Bankruptcy Judgeship Act of 2017,
Pub. L. No. 115-72 (2017)................................................................................ *passim*

Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986,
Pub. L. 99-554 (1986)..........................................................................................7, 10

Bankruptcy Reform Act of 1978,
Pub. L. No. 95-598 (1978) .................................................................................6, 7

Consolidated Appropriations Act, 2008,
Pub. L. No. 110-161 (2007) ....................................................................................9

Deficit Reduction Act of 2005,
Pub. L. No. 109-171 (2006) ....................................................................................9

Departments of Commerce, Justice and State, the Judiciary, and Related Agencies
Appropriations Act, 1990, Pub. L. No. 101-162 (1989) ..........................................9

Departments of Commerce, Justice and State, the Judiciary, and Related Agencies
Appropriations Act, 1992, Pub. L. No. 102-140 (1991) ..........................................9

Departments of Commerce, Justice, and State, the Judiciary and Related Agencies
Appropriations Act, 1994, Pub. L. No. 103-121 (1993) ..........................................9

Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and
Tsunami Relief, 2005, Pub. L. No. 109-13 (2005) .................................................9

Federal Courts Improvement Act of 2000,
Pub. L. No. 106-518 (2000) ...............................................................9, 10, 24, 26

Judicial Improvements Act of 1990,
Pub. L. No. 101-650 (1990) ..................................................23, 24, 25, 26, 27, 28, 29

Omnibus Consolidated Appropriations Act, 1997,
Pub. L. No. 104-208 (1996) ....................................................................................9

Temporary Bankruptcy Judgeships Extension Act of 2012,
Pub. L. No. 112-121 (2012) ....................................................................................9

## Rules

Bankr. E.D. Va. R. 1006-1(C)(1) .........................................................................28

Bankr. N.D. Tex. R. 1007-1 ................................................................................28

Federal Rule of Bankruptcy Procedure 7001 ..........................................................2

Federal Rule of Bankruptcy Procedure 9014 ..........................................................2

## Other Authorities

Cong. Budget Office Cost Estimate, H.R. 2266, Bankruptcy Judgeship Act of 2017
(May 18, 2017)..................................................................................................................13

Dep't of Justice, U.S. Tr. Program FY 2018 Performance Budget Cong. Submission ...........11, 12

Dep't of Justice, U.S. Tr. Program FY 2019 Performance Budget Cong. Submission .................11

H.R. 1752 ........................................................................................................................25

H.R. 2266 ........................................................................................................................12

H.R. Rep. No. 95-595 (1977)...........................................................................................6, 7

H.R. Rep. No. 99-764 (1986)............................................................................................8

H.R. Rep. No. 115-130 (2017)..............................................................7, 11, 12, 13, 31

Multidistrict, Multiparty, Multiforum Trial Jurisdiction Act of 1999 and Federal
Courts Improvement Act of 1999: Hearing before the Subcomm. on Courts and
Intellectual Property of the H. Comm. on the Judiciary on H.R. 2112 and H.R. 1752,
106 Cong. 26-27 (1999) ................................................................................................25-26

Remarks of Director Cliff White Before the Del. Bankr. Am. Inn of Court
(Dec. 11, 2018) ...............................................................................................................13

Report of the Judicial Conference Committee on the Administration of the Bankruptcy
System (Sept. 2018)..................................................................................................... 18-19

Report of the Proceedings of the Judicial Conference of the United States
(Sept./Oct. 2001)........................................................................................................ *passim*

S.2915 .............................................................................................................................26

U.S. Const. art. 1, § 8, cl. 1 .........................................................................................16, 20

U.S. Const. art. 1, § 8, cl. 3 .........................................................................................35, 36

U.S. Const. art. 1, § 8, cl. 4 ........................................................................................ *passim*

U.S. Const. art. 1, § 9, cl. 5 ................................................................................................36

U.S. Const. art. 1, § 10, cl. 3 ..............................................................................................36

U.S. Const. amend. V................................................................................6, 30, 31, 32, 33, 36

William K. Harrington, the United States Trustee for Region 2, objects to the *Debtors'*

*Motion to Determine Amount of United States Trustee Fees Pursuant to 28 U.S.C. § 1930(a)(6)*

(the "Motion") [Docket No. 672] filed by Clinton Nurseries, Inc. ("CNI"), Clinton Nurseries of

Maryland, Inc. ("CNM"), Clinton Nurseries of Florida, Inc. ("CNF"), and Triem LLC ("Triem,"

and collectively with CNI, CNM, and CNF, the "Debtors"). In support of this objection, the

United States Trustee respectfully states as follows:

## SUMMARY

1.      Under 28 U.S.C. § 1930(a)(6), a quarterly fee must be paid in every chapter 11

case, calculated upon disbursements made in the case during the quarter. In 2017, Congress

amended section 1930(a)(6) by adding a new subsection (B) and an additional uncodified

provision. That 2017 amendment temporarily increased the fees collected in larger chapter 11

cases, those with disbursements of $1 million or more in a quarter. Congress passed the 2017

amendment so the Treasury would collect sufficient fees to fully offset the congressional

appropriations that fund the United States Trustee Program, and fund 18 additional bankruptcy

judgeships. It did that so ordinary taxpayers would not bear the costs of the bankruptcy system.

This temporary fee increase was effective for disbursements made on or after January 1, 2018.

2.      Because of a recent decision from the United States Bankruptcy Court for the

Western District of Texas,[1] the Debtors argue in the Motion that Congress's 2017 amendment is

unconstitutional for two reasons:

- First, they argue that the 2017 amendment violates the Bankruptcy
  Clause of the Constitution, which confers the power on Congress to pass
  "uniform Laws on the subject of Bankruptcies." U.S. Const. art 1, § 8,
  cl. 4; *see* Motion at ¶¶ 21-29. In their view, the temporary fees imposed

---

[1] *In re Buffets, LLC,* 597 B.R. 588 (Bankr. W.D. Tex. 2019), appeal pending *sub nom. Hobbs v.
Buffets Holdings, LLC*, Case No. 5:19-cv-0173-DAE (W.D. Tex.).

1

in this district were unconstitutionally non-uniform because they apply to disbursements in all cases made on or after January 1, 2018, but the increased fees in six judicial districts located in Alabama and North Carolina (the "bankruptcy administrator districts") were not collected in bankruptcy cases filed before October 1, 2018.  Motion at ¶ 19.

- Second, the Debtors argue that the 2017 amendment is an "unconstitutional user fee," without specifying what provision of the Constitution it purportedly violates.  Motion at ¶¶ 30-34.

3.      The Debtors ask this Court to find that: **(i)** the 2017 amendment to section 1930(a)(6) is unconstitutional; **(ii)** the amount of quarterly fees payable by the Debtors should be based on the pre-amendment version of the statute; and **(iii)** the United States Trustee should refund to the Debtors the difference between the fees paid under the 2017 amendment and the fees that would have been due under the pre-amendment statute.[2]   Motion at ¶ 5.

4.      The Motion should be denied because the 2017 amendment is constitutional.

## FACTS

**I.      The Debtors File Chapter 11 Cases.**

5.      The Debtors filed voluntary chapter 11 petitions on December 18, 2017.

6.      This Court subsequently ordered that the Debtors' cases be jointly administered.

7.      This Court also set a deadline of May 31, 2019, for the Debtors to file a disclosure statement and confirmable plan of reorganization, and of August 23, 2019, for the Debtors to obtain confirmation of a plan.  Docket No. 668.

8.      The Debtors filed a disclosure statement and plan of reorganization on June 7, 2019.  Docket Nos. 717 & 718.

---

[2] The United States Trustee is filing a separate objection requesting that this Court deny this Motion because it seeks relief that can only be sought through an adversary complaint brought under Federal Rule of Bankruptcy Procedure 7001, not through a contested matter brought under Federal Rule of Bankruptcy Procedure 9014.

2

## II.     The Debtors Challenge the Quarterly Fees Due Under 28 U.S.C. § 1930(a)(6).

9.      Under 28 U.S.C. § 1930(a)(6), the Debtors must pay a quarterly fee calculated on disbursements in their cases for each quarter, or fraction thereof, in which they are in chapter 11.

10.     A 2017 amendment to section 1930(a)(6) temporarily increased the fees paid in the largest chapter 11 cases—those with quarterly disbursements of $1 million or more—to the lesser of 1% of quarterly disbursements or $250,000.

11.     The 2017 amendment applies to all disbursements made in the Debtors' cases from January 1, 2018, onward.  28 U.S.C. § 1930(a)(6)(B); *see also* Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, § 1004(c), 131 Stat. 1224, 1232 (2017) (uncodified).[3]

12.     On April 17, 2019—after paying quarterly fees for a year in the amount required by the 2017 amendment—the Debtors filed the Motion.

13.     The Debtors request that this Court: **(i)** "find that the Debtors are not required to pay the US Trustee fees based on the amended schedule because, for among other reasons, the fee increase violates the United States Constitution for cases filed prior to October 1, 2018" (Motion at ¶ 5); **(ii)** "order that the Debtors were and are obligated to pay US Trustee fees, from the inception through the conclusion of these cases, under the pre-amendment fee structure" (*id.*); and **(iii)** order "that the US Trustee refund to the Debtors the difference in the fees paid under the post-amendment fee structure and the fees that [the Debtors believe] should have been paid under the pre-amendment fee structure" (*id.*).

---

[3] Section 1004 of the amendment provides in relevant part:

> (c)  APPLICATION OF AMENDMENTS.—The amendments made by this section shall apply to quarterly fees payable under section 1930(a)(6) of title 28, United States Code, as amended by this section, for disbursements made in any calendar quarter that begins on or after the date of enactment of this Act.

3

**III.    Quarterly Fees Incurred to Date.**

14.    The Debtors have each filed separate monthly operating reports covering the fourth quarter of 2017, all four quarters of 2018, and the first quarter of 2019.

15.    Based on their reported disbursement information, the Debtors have made the following total disbursements for each quarter through the quarter ending March 31, 2019:

|           | CNI         | CNM         | CNF         | Triem      |
|-----------|-------------|-------------|-------------|------------|
| 4th Q 2017 | $    175,844 | $    58,852 | $    77,292 | $      0    |
| 1st Q 2018 | $ 1,365,792 | $1,027,438  | $1,169,169  | $ 8,499    |
| 2nd Q 2018 | $ 8,717,014 | $3,388,705  | $2,163,630  | $      0    |
| 3rd Q 2018 | $ 4,025,343 | $2,223,100  | $1,661,106  | $ 8,175    |
| 4th Q 2018 | $ 2,288,378 | $  889,872  | $1,134,222  | $      0    |
| 1st Q 2019 | $ 4,256,469 | $2,394,933  | $  756,260  | $      0    |
| **Total:** | **$20,828,840** | **$9,982,900** | **$6,961,679** | **$16,674** |

16.    As a result, based on the schedule established by Congress in section 1930(a)(6), as amended in 2017, the Debtors owe the following fees for each quarter through the first quarter of 2019 (not including any interest owed for late payment):

|           | CNI      | CNM     | CNF     | Triem  |
|-----------|----------|---------|---------|--------|
| 4th Q 2017 | $    1,625 | $    650 | $    975 | $ 325 |
| 1st Q 2018 | $ 13,658 | $10,274 | $11,692 | $ 325 |
| 2nd Q 2018 | $ 87,170 | $33,887 | $21,636 | $ 325 |
| 3rd Q 2018 | $ 40,253 | $22,231 | $16,611 | $ 325 |
| 4th Q 2018 | $ 22,884 | $ 4,875 | $11,342 | $ 325 |
| 1st Q 2019 | $ 42,565 | $23,949 | $ 4,875 | $ 325 |
| **Total:** | **$208,155** | **$95,866** | **$67,131** | **$1,950** |

17.    The quarterly fees incurred under section 1930(a)(6) since January 1, 2018, have fallen well below the $250,000 quarterly maximum Congress authorized in the 2017 amendment. Instead, for quarters in which disbursements exceeded $1 million, the fee has been 1% of quarterly disbursements.  28 U.S.C. § 1930(a)(6)(B).  The Debtors' aggregate amount of fees for 2018 plus the first quarter of 2019 is $369,527.

4

**OBJECTION**

18.    This Court should deny the Motion for the following reasons.

19.    First, the 2017 amendment does not violate the Bankruptcy Clause.  The Bankruptcy Clause requires only uniform laws, not uniform implementation.  Section 1930, as amended, is uniform because section 1930(a)(7) allows bankruptcy administrator districts to charge only the same fees as those charged in the other districts under section 1930(a)(6); they may not charge a different fee, or charge the fee differently.  Indeed, under section 1930(a)(7) and a controlling directive of the Judicial Conference of the United States issued in 2001 (the "2001 Directive")—which remained in full force and effect on January 1, 2018—fees in bankruptcy administrator districts automatically go up when Congress increases fees under section 1930(a)(6).[4]  Thus, by operation of the 2001 Directive the fees in Alabama and North Carolina increased as to all chapter 11 cases, whether then pending or subsequently filed, on January 1, 2018, just as they did in the other 48 states.  There is no explanation for why the Executive Committee of the Judicial Conference decided over eight months later in September 2018 to permit bankruptcy administrator districts to disregard the 2001 Directive and sections 1930(a)(6) and (a)(7) by beginning to charge the increased fees only in cases filed on or after October 1, 2018.  The bankruptcy administrators' failure on and after January 1, 2018, to follow both the 2001 Directive and section 1930(a)(7) was error, not the absence of a uniform law.

20.    Alternatively, the 2017 amendment does not violate the Bankruptcy Clause because section 1930(a)(6) is not a bankruptcy law subject to the Bankruptcy Clause.  The Supreme Court has explained that the Bankruptcy Clause only encompasses laws that regulate the

---

[4] *See* Report of the Proceedings of the Judicial Conference of the United States 46 (Sept./Oct. 2001), http://www.uscourts.gov/sites/default/files/2001-09_0.pdf (attached as Exhibit A).

adjustment of a debtor's obligations to creditors. *Ry. Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 466 (1982). Section 1930(a)(6) does not do that; rather, it is a revenue measure that allocates the costs of certain government functions so that they fall on users rather than taxpayers.

21.    Second, the 2017 amendment is not an "unconstitutional" user fee. The Debtors fail to mention what constitutional provision the 2017 amendment allegedly violates. Nevertheless, the Supreme Court has rejected the argument that a user fee violates the Due Process Clause where—like here—it "is justified by a rational legislative purpose." *See United States v. Sperry*, 493 U.S. 52, 64 (1989). That is a low standard fully satisfied here.

22.    The Supreme Court has also soundly rejected the notion that a government-imposed fee can ever constitute a taking. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 615 (2013).

23.    And, the Supreme Court "has never held that the amount of a user fee must be precisely calibrated to the use that a party makes of Government services." *Sperry*, 493 U.S. at 63. The 2017 amendment passes constitutional muster because it is a rational measure designed to ensure that bankruptcy system users, and not taxpayers, shoulder the costs of the system.

I.    **Congress Established Chapter 11 Quarterly Fees So That the Cost of the United States Trustee Program Is Not Borne by Taxpayers.**

A.    **Congress carefully calibrates the amount of quarterly fees and other court fees to meet the funding needs of the bankruptcy system.**

24.    In passing the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978), Congress overhauled a bankruptcy system that had been in place since 1898 because, under the prior statute, bankruptcy courts were burdened with duties to supervise and administer bankruptcy cases in addition to their judicial duties. H.R. Rep. No. 95-595, at 3 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5965. Congress's solution to this problem was to transfer

6

the supervisory and administrative duties to a "new system of United States trustees" in the Justice Department.[5]  *Id.* at 4, 100.  *See also In re Prines*, 867 F.2d 478, 480 (8th Cir. 1989) ("Congress established the United States Trustee Pilot Program in 1978 to separate—on a trial basis—the administrative and judicial functions previously performed solely by the bankruptcy courts.").  United States Trustees "were given responsibility for many administrative functions, such as appointing private trustees and monitoring their performance, and monitoring cases for signs of fraud or abuse." *Id.*  Thus, as envisioned by Congress, the United States Trustee Program was integral to the new bankruptcy system.  H.R. Rep. No. 95-595, at 88-109.

25.     To assist in funding the Program, Congress created a variety of "bankruptcy fees," including the quarterly fee required by 28 U.S.C. § 1930(a)(6).  Quarterly fees under section 1930(a)(6) and a portion of the filing fees collected by the clerk of the bankruptcy court under other provisions of section 1930[6] are deposited into the United States Trustee System Fund established in the U.S. Treasury (the "Fund"), and are used to offset congressional appropriations made to directly fund the Program.[7]  *See* 28 U.S.C. § 589a(a) & (b); H.R. Rep. No. 115-130, at 7 (2017), *reprinted in* 2017 U.S.C.C.A.N. 154, 159-60.

---

[5] The United States Trustee Program was established as a pilot program in 1978 and was made national in 1986.  *See* Bankruptcy Reform Act of 1978, Pub. L. 95-598, 92 Stat. 2549 (1978); Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. 99-554, 100 Stat. 3088 (1986).  All jurisdictions participate in the United States Trustee Program except those within Alabama and North Carolina.  *See ¶¶* 31, 81 *infra.*

[6] The filing fees paid to the clerk of the bankruptcy court under section 1930(a)(1) through (a)(5) are shared by the United States Trustee Program and the judiciary, among others.  28 U.S.C. § 589a(b); 28 U.S.C. § 1931 (text and notes).

[7] Prior to the 2017 amendment, 100% of quarterly fees collected was deposited into the Fund. The 2017 amendment temporarily reduced the amount of quarterly fees deposited into the Fund to 98%, with the remaining 2% to be deposited in the general fund of the Treasury for use in funding 18 additional judgeships.  *See* Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, div. B, § 1004(b), 131 Stat. 1224, 1232 (2017); H.R. Rep. No. 115-130, at 7-9.

7

26.    That helps ensure the Program's cost is borne "by the users of the bankruptcy system—at no cost to the taxpayer."  *See* H.R. Rep. No. 99-764, at 25 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5238; *see also id*. at 22.

27.    Before settling on quarterly fees based on disbursements as part of the way to fund the Program, Congress "considered many different possible mechanisms . . . including fees based on a debtor's assets, fees based on a debtor's liabilities, and a flat fee for all debtors." H.R. Rep. No. 99-764, at 26.

28.    Congress decided to charge graduated quarterly fees based on the size of a chapter 11 case's disbursements because it determined that "[s]maller chapter 11 debtors should pay smaller additional fees than larger debtors; [and] the funding mechanism [in section 1930(a)(6)] ensures that this will be the case."  *Id*.

29.    This regime allows Congress to easily increase or reduce the fees paid under section 1930, so that the amount collected for deposit in the Fund will never be unacceptably small or unreasonably large.  The Attorney General is required to report to Congress every year on the amounts deposited in the Fund and expenditures made from it to offset the United States Trustee Program's appropriations.  *See* 28 U.S.C. § 589a(d).  If the amounts collected exceed the appropriations by Congress for a particular year, the excess remains in the Fund to offset appropriations in subsequent years.  *See* 28 U.S.C. § 589a(c).  Conversely, if the costs of operating the Program in a particular year exceed the amounts available in the Fund, monies collected from taxpayers might be required to fund part of the appropriation to the Program.  *See* 28 U.S.C. § 589a(e).

30.    On no fewer than ten occasions, Congress has amended section 1930(a) or section 589a of title 28 to adjust the amount or allocation, or both, of filing fees and quarterly fees to be

deposited into the Fund:

- Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act, 1990, Pub. L. No. 101-162, tit. II, § 406, 103 Stat. 988, 1016 (1989) (increasing filing fee);

- Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act, 1992, Pub. L. No. 102-140, tit. I, § 111, 105 Stat. 782, 795 (1991) (increasing filing fee and quarterly fees, and directing deposit of a percentage of fees into Fund);

- Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act, 1994, Pub. L. No. 103-121, tit. I, § 111, 107 Stat. 1153, 1164-65 (1993) (increasing filing fees, changing percentage of fees allocated to Fund, and requiring Judicial Conference to report on bankruptcy fee system and possible impact of using graduated fee system based on assets, liabilities, or both, of debtor);

- Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, tit. I, § 109, 110 Stat. 3009, 3009-18-3009-19 (1996) (increasing quarterly fees and clarifying that quarterly fees requirement applies regardless of confirmation status of debtor's reorganization plan);

- Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, § 103, 114 Stat. 2411 (2000) (increasing filing fee and conversion fee, and providing for fees under subsection (a)(7));

- Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, tit. III, § 325, 119 Stat. 23, 98-99 (2005), as amended by Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub. L. No. 109-13, § 6058, 119 Stat. 297 (2005) (increasing filing fees and changing percentage of fees allocated to Fund);

- Deficit Reduction Act of 2005, Pub. L. No. 109-171, tit. X, § 10101, 120 Stat. 4, 184 (2006) (increasing filing fees);

- Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. B, tit. II, §§ 212, 213, 121 Stat. 1844, 1914 (2007) (adjusting quarterly fees and directing deposit of fines into Fund);

- Temporary Bankruptcy Judgeships Extension Act of 2012, Pub. L. No. 112-121, § 3, 126 Stat. 346, 348-349 (2012) (increasing filing fee and decreasing allocation of fees into Fund); and

9

- Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, div. B, § 1004, 131 Stat. 1224, 1232 (2017) (increasing quarterly fees for largest chapter 11 debtors).

**B.      The quarterly fees charged in judicial districts in Alabama and North Carolina are required by statute to be the same as those charged in the rest of the country.**

31.      All jurisdictions participate in the United States Trustee Program except the Alabama and North Carolina bankruptcy administrator districts.  *See* Pub. L. No. 99-554 (1986); Pub. L. No. 106-518, § 501 (2000).  In those two states, Judicial Branch employees known as bankruptcy administrators oversee chapter 11 cases.

32.      Although bankruptcy administrators initially could not charge quarterly fees, Congress fixed that in 2001 by enacting section 1930(a)(7) of title 28.  *See* Federal Courts Improvements Act of 2000, Pub. L. No. 106-518, § 105, 114 Stat. 2410 (2000).

33.      Section 1930(a)(7) provides that in the bankruptcy administrator districts "the Judicial Conference of the United States may require the debtor in a case under chapter 11 of title 11 to pay fees *equal to* those imposed by paragraph (6) of this subsection."  28 U.S.C. § 1930(a)(7) (emphasis added).  It does not permit them to charge fees that differ from those set by section 1930(a)(6).  *Id.*

34.      Promptly upon section 1930(a)(7)'s enactment, the Judicial Conference issued its 2001 Directive approving the imposition of quarterly fees in bankruptcy administrator districts "in the amounts specified in 28 U.S.C. § 1930, *as those amounts may be amended from time to time*."  *See* Report of the Proceedings of the Judicial Conference of the United States 45-46 (Sept./Oct. 2001), http://www.uscourts.gov/sites/default/files/2001-09_0.pdf (attached as Exhibit A) (emphasis added).  Thus, the 2001 Directive automatically approved future changes to the quarterly fees charged in bankruptcy administrator districts so that they immediately mirror any

10

amendment to section 1930(a)(6).

**C.    Congress temporarily increased fees in 2017 to avoid a deficit in the United States Trustee System Fund and to fund additional judgeships.**

35.    In October 2017, Congress amended section 1930(a)(6) to increase temporarily the quarterly fees when the disbursements in a case equal or exceed $1 million during a quarter and the Fund balance is below $200 million in the most recent fiscal year.  *See* H.R. Rep. No. 115-130, at 7-8.  The new subparagraph (B) provides:

> (B) During each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000.

28 U.S.C. § 1930(a)(6)(B).

36.    The 2017 amendment provides that it "shall apply to quarterly fees payable under section 1930(a)(6) . . . for disbursements made in any calendar quarter that begins on or after the date of enactment" of the amendment.  Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, § 1004(c) (uncodified).  The first such quarter began on January 1, 2018.

37.    Congress passed the 2017 amendment following an unprecedented seven-year decline in bankruptcy filings.  *See* Dep't of Justice, U.S. Tr. Program FY 2018 Performance Budget Cong. Submission at 9, https://www.justice.gov/file/968761/download (last visited June 14, 2019) ("UST FY 2018 Submission") (showing a consistent decrease in quarterly fee and filing fee collections over the past several years).  The resulting decrease in fees collected under section 1930(a) exhausted the Fund's unrestricted balance during fiscal year 2017.  *See* Dep't of Justice, U.S. Tr. Program FY 2019 Performance Budget Cong. Submission at 9, https://www.justice.gov/jmd/page/file/1034391/download (last visited June 14, 2019).  Without the amendment, the Fund was predicted to have a zero balance in fiscal year 2018.  *See* UST FY

11

2018 Submission at 9.  Any remaining balance and fee collections were projected to fall $92 million short of offsetting the funds appropriated for the Program in fiscal year 2017.  *Id*.

38.     Because the Program's appropriations are offset from the Fund, *id*. at 8, any shortfall in offsetting the appropriations results in taxpayers bearing the burden of those operational costs.  Without the Fund surplus from prior years, the Fund would not have been able to fully offset appropriations to the United States Trustee Program prior to fiscal year 2017.  *Id*. at 9 ("In FY 2016, offsetting collections covered approximately 66 percent of the Program's appropriation, with the remainder being drawn from the Fund.").

39.     A May 17, 2017 House Report stated that the bill that led to the 2017 amendment additionally sought to convert 14 temporary bankruptcy judgeships to permanent judgeships and add four new bankruptcy judgeships.[8]  H.R. Rep. No. 115-130, at 7-8.  The House Report explained that the increase in the quarterly fees for large chapter 11 cases was intended to cover the costs of the judgeships and to provide needed funds for the operations of the United States Trustee Program.[9]

40.     The House Report stated that the Judiciary Committee expected, "based on informal estimates by [the Congressional Budget Office]," that the increased quarterly fees would increase revenues "by an amount sufficient to fully offset the increases in direct spending caused by the bill."  *Id*. at 9.  The day after the House Report was issued, the Congressional

---

[8] H.R. 2266 was later amended to extend the temporary judgeships rather than converting them to permanent judgeships.

[9] *See* H.R. Rep. No. 115-130, at 8 ("The funds generated by the fee increase will cover both the costs of this bill and separately needed funds for the operation of the U.S. Trustee Program."); *id*. at 7 (noting "inclusion of an increase in the quarterly U.S. Trustee fees for large chapter 11 cases to serve as a funding offset for the cost of the judgeships").  The House Report noted that Congress had previously introduced a similar bill that did not include funding for the judgeships, which was not enacted.  *Id*.

12

Budget Office issued a Cost Estimate, which explained that the increases were necessary to fund the additional judgeships proposed by the bill. *See* Cong. Budget Office Cost Estimate, H.R. 2266, Bankruptcy Judgeship Act of 2017, at 3 (May 18, 2017), https://www.cbo.gov/system/files/2018-07/52739-hr2266.pdf (last visited June 14, 2019).

41.     Congress exercised its legislative judgment in designing the temporary fee increase. The 2017 amendment affected only those chapter 11 cases in which disbursements during a quarter equal or exceed $1 million. 28 U.S.C. § 1930(a)(6)(B). Quarterly fees in those cases were set to the lesser of 1% of their quarterly disbursements or $250,000. *Id*.

42.     Based on historical fee and disbursement patterns, the government estimates that only about 10% of chapter 11 debtors have disbursements exceeding $1 million, and only about 1% of chapter 11 debtors would be assessed the maximum fee. *See* Remarks of Director Cliff White Before the Del. Bankr. Am. Inn of Court (Dec. 11, 2018), https://www.justice.gov/ust/speech/remarks-director-cliff-white-delaware-bankruptcy-american-inn-court (last visited June 14, 2019). The 2017 amendment provides for the fees to revert to their previous levels when the Fund equals or surpasses $200 million at the end of a fiscal year. 28 U.S.C. § 1930(a)(6)(B); *see also* H.R. Rep. No. 115-130, at 8. Regardless, the increase terminates at the end of fiscal year 2022. *Id*.

43.     Notably, the 2017 amendment made the percentage charged in the largest chapter 11 cases more consistent with the percentages charged in smaller cases. The following chart shows the relative pre-amendment percentages (rounded to the nearest hundredth):

13

| Section 1930(a)(6)(2017) | Disbursements | Fee | Percentage Range |
|---|---|---|---|
| Tier 1 | $        - | $       325.00 | 32500% |
|  | $    14,999.00 | $       325.00 | 2.17% |
| Tier 2 | $    15,000.00 | $       650.00 | 4.33% |
|  | $    74,999.00 | $       650.00 | 0.87% |
| Tier 3 | $    75,000.00 | $       975.00 | 1.30% |
|  | $   149,999.00 | $       975.00 | 0.65% |
| Tier 4 | $   150,000.00 | $     1,625.00 | 1.08% |
|  | $   224,999.00 | $     1,625.00 | 0.72% |
| Tier 5 | $   250,000.00 | $     1,950.00 | 0.78% |
|  | $   299,999.00 | $     1,950.00 | 0.65% |
| Tier 6 | $   300,000.00 | $     4,875.00 | 1.63% |
|  | $   999,999.00 | $     4,875.00 | 0.49% |
| Tier 7 | $ 1,000,000.00 | $     6,500.00 | 0.65% |
|  | $ 1,999,999.00 | $     6,500.00 | 0.33% |
| Tier 8 | $ 2,000,000.00 | $     9,750.00 | 0.49% |
|  | $ 2,999,999.00 | $     9,750.00 | 0.33% |
| Tier 9 | $ 3,000,000.00 | $    10,400.00 | 0.35% |
|  | $ 4,999,999.00 | $    10,400.00 | 0.21% |
| Tier 10 | $ 5,000,000.00 | $    13,000.00 | 0.26% |
|  | $14,999,999.00 | $    13,000.00 | 0.09% |
| Tier 11 | $15,000,000.00 | $    20,000.00 | 0.13% |
|  | $29,000,000.00 | $    20,000.00 | 0.07% |
| Tier 12 | $30,000,000.00 | $    30,000.00 | 0.10% |

44.     After the 2017 amendment, the percentages for fees in cases with over $1 million in quarterly disbursements are as follows:

| Tier 7 | $  1,000,000.00 | $    10,000.00 | 1.00% |
|---|---|---|---|
| 28 USC 1930(a)(6)(A) | $ 25,000,000.00 | $   250,000.00 | 1.00% |
|  | $ 30,000,000.00 | $   250,000.00 | 0.83% |

45.     Thus, both before and after the 2017 amendment, in cases with disbursements of less than $1 million the fees range from 0.49% to 4.33% of quarterly disbursements.  By contrast, before the 2017 amendment cases with disbursements of $1 million or more paid a fee ranging from 0.07% to 0.65% of quarterly disbursements, but never *more* than 0.65%—while the fees were never *less* than 0.65% in cases with less than $300,000 in disbursements.  Even after the 2017 amendment, high-disbursement cases still never pay a fee of more than 1%.

14

## II.     The 2017 Amendment Does Not Violate the Bankruptcy Clause.

46.     Congress did not violate the Bankruptcy Clause when it amended section 1930(a)(6).  The Constitution provides that Congress "shall have the power . . . [t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."  U.S. Const. art. 1, § 8, cl. 4.

47.     Three things must be true for the Bankruptcy Clause to be violated: there must be a lack of uniformity; the lack of uniformity must result from a "Law"; and the law must be "on the subject of Bankruptcies."

48.     None is true here.  First, the statute at issue is uniform because it requires that any fees charged in the bankruptcy administrator districts under section 1930(a)(7) must be "equal" to those imposed under section 1930(a)(6).  Second, the alleged lack of uniformity—the failure to collect the section 1930(a)(6) fees in bankruptcy administrator districts—resulted not from a law, but from error in allowing fees under section 1930(a)(7) to differ rather than "equal" those under section 1930(a)(6)'s 2017 amendment.  And third, the 2017 amendment is not "on the subject of Bankruptcies" under Supreme Court precedent because it does not alter any debtor or creditor rights or remedies under the Bankruptcy Code.

### A.     The purpose of the Bankruptcy Clause was to empower Congress to pass laws providing relief to debtors enforceable in all fifty states and to prevent private bankruptcy bills.

49.     The Bankruptcy Clause authorizes Congress to enact "uniform" laws.  U.S. Const. art. 1, § 8, cl. 4.  But there is "flexibility inherent" in the Bankruptcy Clause that tolerates significant differences in application of bankruptcy laws.  *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 158 (1974) (rejecting uniformity challenge to statute that applied only in a single statutorily defined region because "it overlooks the flexibility inherent in the constitutional

15

provision").

50.     The two principal purposes of the Bankruptcy Clause were: **(i)** to enable Congress to pass nationwide bankruptcy laws enforceable among the states, because, "[g]iven the sovereign status of the States, questions were raised as to whether one State had to recognize the relief given to a debtor by another State"; and **(ii)** to prohibit Congress from enacting private bankruptcy laws. *See Ry. Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 472 (1982); *see also In re Reese*, 91 F.3d 37, 39 (7th Cir. 1996) ("The limited legislative history of the uniformity clause, plus the decisions by the Supreme Court interpreting it . . . establish that the clause forbids only two things. The first is arbitrary regional differences in the provisions of the Bankruptcy Code. The second is private bankruptcy bills—that is, bankruptcy laws limited to a single debtor—or the equivalent.").

51.     Given the history and purpose of the Bankruptcy Clause, and given the difference in its language as compared to the tax uniformity clause, U.S. Const. art. 1, § 8, cl. 1,[10] the Sixth Circuit has explained that "the term 'uniform' was intended to grant an additional power at the expense of the fifty states, rather than to limit the scope of Congress's delegated powers." *See Schultz v. United States*, 529 F.3d 343, 356 (6th Cir. 2008).

52.     Only once in the nation's history has the Supreme Court held that a statute violated the Bankruptcy Clause. It did so because the challenged act, by its terms, applied to only one regional bankrupt railroad; therefore, the statute was "nothing more than a private bill," which the Framers sought to prevent by adopting the Bankruptcy Clause. *Gibbons*, 455 U.S. at

---

[10] That clause provides: "The Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States; *but all duties, imposts and excises shall be uniform throughout the United States*." U.S. Const. art.1, § 8, cl. 1 (emphasis added).

16

470-71; *see id.* at 472.

**B.** **Congress's 2017 quarterly fee amendment does not violate the Bankruptcy Clause because the law is uniform.**

53.     Section 1930, including the 2017 amendment, applies uniformly on its face.  The statute sets a graduated amount of fees for all cases under chapter 11, and the amendment governs fees in all chapter 11 cases with quarterly disbursements equal to or exceeding $1 million.

54.     The Debtors argue that the 2017 amendment, despite its facial uniformity, is not uniform because the Judicial Conference did not immediately adopt the fee increase in bankruptcy administrator districts as of January 1, 2018, but instead only authorized the increase to begin in October 2018.  Motion at ¶¶ 25-26.

55.     However, nothing in the 2017 amendment purports to exclude chapter 11 cases in Alabama and North Carolina from the fee increases.  Neither of those states is even mentioned in the amendment in connection with quarterly fees.

56.     Nor is there any lack of uniformity simply because the fees in Alabama and North Carolina are governed by a different subparagraph of section 1930(a).  Section 1930(a)(7) provides that in the bankruptcy administrator districts "the Judicial Conference of the United States may require the debtor in a case under chapter 11 of title 11 to pay fees *equal to* those imposed by paragraph (6) of this subsection."  28 U.S.C. § 1930(a)(7) (emphasis added).[11]

57.     In other words, subparagraph (a)(7) mandates that any fees charged in bankruptcy administrator districts must be the same as—"equal to"—those prescribed in subparagraph

---

[11] Similar to the quarterly fees paid under section 1930(a)(6), quarterly fees collected in the bankruptcy administrator districts are collected and deposited into a special fund to offset congressional appropriations for federal courts.  *See* 28 U.S.C. §§ 1930(a)(7) & 1931.

(a)(6).  The law is thus uniform in its prescription of the amount of fees due in chapter 11 cases.

58.    As a result, the statute itself refutes the *Buffets* court's statement that the 2017 amendment "increased quarterly fees only in the UST program." *In re Buffets, LLC,* 597 B.R. 588, 595 (Bankr. W.D. Tex. 2019), appeal pending *sub nom. Hobbs v. Buffets Holdings, LLC*, Case No. 5:19-cv-0173-DAE (W.D. Tex.) (cited in Motion at ¶¶ 25, 27 & 28).[12]

59.    Because section 1930(a)(7) authorizes the Judicial Conference only to charge fees "equal to those imposed by [section 1930(a)(6)]"—and not to charge different fees—the 2017 amendment applies equally to bankruptcy administrator districts and non-bankruptcy administrator districts.  As a result, there is no lack of uniformity.

60.    The Judicial Conference's decision to enact its 2001 Directive underscores this. The 2001 Directive requires that fees in bankruptcy administrator districts be charged in the amount specified in section 1930(a)(6), as it is amended from time to time.[13]  The 2001 Directive was still in full force and effect on January 1, 2018, when the 2017 amendment became effective. *See* Report of the Judicial Conference Committee on the Administration of the Bankruptcy

---

[12] On April 9, 2019, the United States Trustee asked the district court to issue an order certifying the appeal for direct review by the Fifth Circuit.  *Hobbs v. Buffets Holdings, LLC*, Case No. 5:19-cv-0173-DAE (W.D. Tex.), Dkt. No. 6.  That motion is pending.

[13] Section 1930(a)(7) and the 2001 Directive were the direct result of the Ninth Circuit's decision in *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994), *as amended by* 46 F.3d 969 (1995).  *See infra* ¶¶ 89-91.  In that case, the Ninth Circuit found that the absence of a quarterly fee requirement in bankruptcy administrator districts violated the Bankruptcy Clause.  *Id*. at 1532.  That is why section 1930(a)(7) provides for fees "equal to" those imposed by section 1930(a)(6), and the 2001 Directive directs fees in bankruptcy administrator districts to track those imposed by section 1930(a)(6) "as those amounts may be amended from time to time." *See* 28 U.S.C. § 1930(a)(7); Report of the Proceedings of the Judicial Conference of the United States 45-46 (Sept./Oct. 2001), http://www.uscourts.gov/sites/default/files/2001-09_0.pdf (attached as Exhibit A).

System, at 19 (Sept. 2018) ("2018 Judicial Conference Committee Report") (Debtors' Motion, Exhibit B) (referring to 2001 Directive).

61.     As of January 1, 2018, then, the 2001 Directive and section 1930(a)(7) commanded bankruptcy administrators to charge the same fees as charged in the rest of the country: those set forth in section 1930(a)(6), as amended in 2017.

62.     And, as the Eighth Circuit has explained, even if there were a statutory difference between fees charged in United States Trustee Program districts and those in bankruptcy administrator districts, which there is not, such a difference would not violate the Bankruptcy Clause.  *See In re Prines*, 867 F.2d 478 (8th Cir. 1989).  When Congress first implemented the United States Trustee Program in 1978, it did so initially as a pilot program.  *Id.* at 480.  In 1986, Congress expanded the Program nationwide.  *Id*.  The law that expanded the Program had different effective dates for districts that participated in the pilot program than for those that did not.  *Id*. at 482-83.

63.     The Eighth Circuit held that the different fees charged in those various districts did not violate the uniformity requirement of the Bankruptcy Clause.  *Id*. at 484-85.

64.     The Eighth Circuit noted that "[a]rguably, debtors are being treated equally by the statutory scheme, since pending cases are subject to the quarterly fee assessment only if the trustee has authority over them."  *Id*. at 485.  *See also In re Miles*, 330 B.R. 861, 863 (Bankr. M.D. Ga. 2005) (holding debtors failed to show cases are administered any differently between bankruptcy administrator and United States Trustee districts and "law could be construed as uniform if the programs operate the same").

65.     The same is true here because the only alleged lack of uniformity is between districts over which United States Trustees have authority and those over which they do not.

66.     The Eighth Circuit went on to hold that, even if this application was not uniform, that non-uniformity was not a constitutional violation because "the Supreme Court has held . . . the appropriate standard for measuring the propriety of classifications in bankruptcy legislation to be 'that of rational justification.'"  *Prines*, 867 F.2d at 485 (quoting *United States v. Kras*, 409 U.S. 434, 446 (1973)).[14]  The Eighth Circuit thus found that, even "[a]ssuming unequal treatment, . . . this statutory scheme is rationally related to the legitimate governmental interest of establishing a nationwide self-supporting trustee system."  *Id.*

67.     Here, too, the 2017 amendment easily passes rational basis review.  *See infra* at ¶¶ 103-111.

**C.     An *ultra vires* failure to enforce section 1930 does not violate the Bankruptcy Clause.**

68.     The Bankruptcy Clause also does not apply to the difference in fees about which the Debtors complain because that difference does not result from a law.  The Bankruptcy Clause, by its terms, applies only to "Laws," *i.e.*, acts of Congress.  U.S. Const. art. 1, § 8, cl. 4.

69.     Accordingly, an *ultra vires* failure to enforce a law does not render that law unconstitutionally non-uniform.  *Cf. Rosenberg v. United States*, 72 Fed. Cl. 387, 395-96 (Fed. Cl. 2006) (holding that complaint alleging that IRS engaged in "*ultra vires* and nonuniform collection" of a tax did not allege a violation of the tax uniformity clause, U.S. Const. art. I, § 8, cl. 1, because "[t]he Uniformity Clause . . . is a limitation on legislative, not executive, action"); *Peony Park v. O'Malley*, 121 F. Supp. 690 (D. Neb. 1954) (rejecting tax uniformity challenge

---

[14] *Cf. United States v. Ptasynski*, 462 U.S. 74, 86 (1983) (upholding geographically defined class against tax uniformity challenge, because "[w]here, as here, Congress has exercised its considered judgment with respect to an enormously complex problem," courts should be "reluctant to disturb its determination"); *but see Schultz*, 529 F.3d at 355 (finding that a lower level of scrutiny should apply to the uniformity requirement of the Bankruptcy Clause than applied in *Ptasynski* to the tax uniformity clause).

where statute was uniform but enforcement was not), *aff'd*, 223 F.2d 668 (8th Cir. 1955).

70.    Section 1930(a)(7) authorizes the Judicial Conference only to charge fees "*equal to* those imposed by paragraph [1930(a)](6) . . . ." 28 U.S.C. § 1930(a)(7) (emphasis added). The statute does not authorize charging fees in amounts that are inconsistent with section 1930(a)(6).

71.    In the 2001 Directive, the Judicial Conference instructed the bankruptcy courts in Alabama and North Carolina to charge quarterly fees in the same amount they are charged in United States Trustee Program districts.  For the next 16 years, quarterly fees imposed in every district throughout the nation were consistent, including when Congress increased fees from time to time.

72.    Nothing in either the 2017 amendment or the 2001 Directive—which was still in effect when the 2017 amendment became effective—permitted charging fees in bankruptcy administrator districts between January 1, 2018 and September 30, 2018 in any way other than the way they were charged in United States Trustee Program districts during that period.

73.    The Debtors' grievance, therefore, is not that the 2017 amendment is not uniform. The Bankruptcy Clause requires only uniform laws, not uniform implementation.  Congress enacted a uniform law.  The bankruptcy administrators' failure to comply with the Judicial Conference's 2001 Directive and with section 1930(a)(6) and (a)(7) when implementing the law is not a problem of constitutional dimension, and cannot justify striking down a congressional enactment.[15]

---

[15] The Debtors have not challenged the bankruptcy administrators' implementation of the amendment and lack standing to do so.

**D.   Alternatively, the 2017 amendment does not violate the Bankruptcy Clause because section 1930(a)(6) is not a law "on the subject of Bankruptcies."**

74.     To be subject to the Bankruptcy Clause, a law must be one "on the subject of Bankruptcies." U.S. Const. art. 1, § 8, cl. 4. The Supreme Court has defined "bankruptcy" as the "'subject of the relations between [a] . . . debtor and his creditors, extending to his and their relief.'" *Gibbons,* 455 U.S. at 466 (quoting *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 186 (1902)); *see also Ashton v. Cameron Cty. Water Imp. Dist. No. 1*, 298 U.S. 513, 536-37 (1936) (stating that the Court's consistent reading of the Bankruptcy Clause is that it says, in substance: "Congress shall have power to establish uniform laws on the subject of any person's general inability to pay his debts throughout the United States.") (Cardozo, J., dissenting) (internal quotation marks omitted).

75.     In other words, "Congress' power under the Bankruptcy Clause 'contemplate[s] an adjustment of a failing debtor's obligations.'" *Gibbons,* 455 U.S. at 466 (quoting *Hanover Nat'l Bank*, 186 U.S. at 186).

76.     Section 1930(a)(6), as amended in 2017, does not violate the Bankruptcy Clause because it is not a law "on the subject of Bankruptcies" to which the Bankruptcy Clause applies. The quarterly fee is merely a funding mechanism for the efficient administration of bankruptcy matters, including paying for additional bankruptcy judgeships; it does not alter substantive bankruptcy law. The 2017 amendment does not govern the relations between creditor and debtor. *See Gibbons,* 455 U.S. at 466; *Reese*, 91 F.3d at 39-40; *cf. U.S. Trustee v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552, 557 (3d Cir. 1999) ("Congress's mandate requiring payment of post-confirmation quarterly fees is not an effort to alter the terms of pre-existing debts; rather, it creates a new expense that did not exist before the plan was confirmed.") (internal quotations omitted). Indeed, the Bankruptcy Code itself remains unchanged by the 2017 amendment. *See*

22

*Reese*, 91 F.3d at 39 (holding Bankruptcy Clause forbids "arbitrary regional differences in the provisions of the Bankruptcy Code"). A change to the fees charged is a matter of judicial administration and appropriations, not the substantive law of bankruptcy.

      **E.**      **Victoria Farms, like Prines, supports the government's position.**

77.      Like the *Buffets* court, the Debtors rely heavily on the Ninth Circuit's decision in *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994), *as amended by* 46 F.3d 969 (1995). *See also Buffets*, 597 B.R. at 594-95. And, like the *Buffets* court, the Debtors ignore the Eighth Circuit's directly relevant *Prines* decision, which upheld section 1930(a)(6) against a uniformity challenge. *See* 867 F.2d at 484-85; *see also supra* at ¶¶ 62-66 (discussing *Prines*).

78.      The Debtors' reliance on *Victoria Farms* is misplaced. The Debtors, like the *Buffets* court before them, fail to recognize that *Victoria Farms* addressed the constitutional validity not of section 1930(a)(6), but of a different statute: section 317(a) of the Judicial Improvements Act of 1990, which extended the time for Alabama and North Carolina to implement the United States Trustee Program.

79.      Reliance on *Victoria Farms* to invalidate the 2017 amendment is inappropriate for three additional reasons. First, the result in *Victoria Farms* supports the government's position, as the Ninth Circuit did *not* invalidate section 1930(a)(6) and did *not* permit the debtor to evade its statutorily-mandated quarterly fees despite what the court perceived to be a lack of uniformity in the implementation of the United States Trustee Program. Second, unlike at the time of the *Victoria Farms* decision, there is no longer any statutory difference in the amount of quarterly fees permitted to be charged in bankruptcy administrator districts. And third, *Victoria Farms* does not support invalidating the 2017 amendment because its uniformity decision was incorrect even on the different ground it addressed.

### 1.    *Victoria Farms* **enforced the quarterly fee requirement.**

80.     In *Victoria Farms*, the Ninth Circuit addressed a challenge to the uniform application of section 1930(a)(6) at a time when there was no provision for quarterly fees in the bankruptcy administrator districts.

81.     When Congress decided to expand the United States Trustee Program in 1986, Alabama and North Carolina initially were not required to implement the Program until 1992. *Victoria Farms*, 38 F.3d at 1529.  Then, through section 317(a) of the Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 317(a) (1990), Congress extended the deadline for Alabama and North Carolina to implement the Program until 2002.[16]  *Id.*

82.     The Ninth Circuit in *Victoria Farms* did not address whether charging quarterly fees under section 1930(a)(6)—a revenue provision—violated the Bankruptcy Clause; instead, it addressed "the question of whether section 317(a) of the Judicial Improvements Act of 1990"—a non-revenue provision—violated the Bankruptcy Clause.  38 F.3d at 1531.

83.     In a divided opinion, the *Victoria Farms* majority held that the bifurcated system under which United States Trustees administered bankruptcy cases and charged quarterly fees in 48 states, but bankruptcy administrators administered bankruptcy cases and did not charge quarterly fees in the other two states, violated the Bankruptcy Clause.  *Id.* at 1532.[17]  The Ninth Circuit did not, however, hold that section 1930(a)(6) violated the Bankruptcy Clause.

---

[16] Congress later removed the deadline for Alabama and North Carolina to adopt the United States Trustee system.  *See* Pub. L. No. 106-518, § 501, 114 Stat. 2410, 2421 (2000).

[17] The Debtors challenge only the differential in fees; they do not allege that excepting the bankruptcy administrator districts from the United States Trustee Program violates the Constitution.  Nor could they.  As discussed *supra* at ¶¶ 74-76, laws governing the administration of the court system are not laws "on the subject of Bankruptcies" because they do not alter the rights or remedies available to debtors or creditors.

24

84.     Notably, despite finding that section 317(a) of the Judicial Improvements Act of 1990 violated the Bankruptcy Clause because it extended the time for Alabama and North Carolina to opt out of the United States Trustee system (thereby allowing chapter 11 debtors in bankruptcy administrator districts to avoid paying section 1930(a)(6) quarterly fees), the Ninth Circuit "adher[ed] to the principle of judicial restraint" and only struck down section 317(a). *Id*. at 1533.

85.     The Ninth Circuit did not strike down the quarterly fee provision. *Id*.

86.     Rather, the Ninth Circuit specifically "decline[d] to invalidate all of section 1930 or any other part of the statutory scheme governing the U.S. Trustee system," stating that by doing so it "le[ft] in place a uniform law governing bankruptcy throughout the nation." *Id*.

87.     After curing the perceived uniformity problem, the Ninth Circuit ordered the debtor to pay all of the quarterly fees owed under "a plain language reading of" section 1930(a)(6). *Id.* at 1534. That the system was not, in the eyes of the Ninth Circuit, uniform during the quarters at issue had no bearing on the debtor's duty to pay the quarterly fees in the amount established by Congress.

> **2.     Subsequent amendments to section 1930 cured any lack of uniformity identified in *Victoria Farms*.**

88.     As noted above, at the time of the *Victoria Farms* decision, section 1930 did not provide for quarterly fees in chapter 11 cases pending in bankruptcy administrator districts.

89.     In response to *Victoria Farms*, Congress heard testimony by the Judicial Conference recommending that Congress authorize the collection of quarterly fees in bankruptcy administrator districts. *See* Multidistrict, Multiparty, Multiforum Trial Jurisdiction Act of 1999 and Federal Courts Improvement Act of 1999: Hearing before the Subcomm. on Courts and

25

Intellectual Property of the H. Comm. on the Judiciary on H.R. 2112 and H.R. 1752,[18] 106 Cong. 26-27 (1999).  That testimony explained that "[a]t its March 1996 proceeding, the Judicial Conference determined that implementing the establishment of chapter 11 quarterly fees in the bankruptcy administrator districts would eliminate any *Victoria Farms* problem." *Id*. at 26.

90.     In 2001, Congress granted the Judicial Conference's request and amended section 1930 to add section 1930(a)(7).  *See* Federal Courts Improvements Act of 2000, Pub. L. No. 106-518, § 105, 114 Stat. 2410 (2000).[19]  As discussed *supra* at ¶¶ 56-61 and ¶¶ 70-73, this amendment allows only fees "equal to" those set forth in section 1930(a)(6)—it does not permit imposition of a different amount of fees.  28 U.S.C. § 1930(a)(7).

91.     The Debtors do not dispute that the addition of section 1930(a)(7) was designed to, and did, cure any possible lack of uniformity identified in *Victoria Farms*.  Rather, they complain of the failure to timely implement the 2017 amendment in the bankruptcy administrator districts.  But that failure in implementation is not a result of the statute enacted by Congress, and so provides no basis for finding that the statute is constitutionally infirm.  *See supra* at ¶¶ 70-73.

### 3.     *Victoria Farms*' analysis of the applicability of the Bankruptcy Clause was flawed, and has no bearing on whether a revenue provision like the 2017 amendment is a law "on the subject of Bankruptcies."

92.     In *Victoria Farms*, the panel majority concluded that section 317(a) of the Judicial Improvements Act of 1990, which simply extended the time for districts in Alabama and North Carolina to implement the United States Trustee Program, was a non-uniform law "on the

---

[18] H.R. 1752 is the House of Representative's companion bill to the enacted Senate bill, S.2915, which became Pub. L. No. 106-518.

[19] In that same legislation, Congress removed the deadline for Alabama and North Carolina to adopt the United States Trustee system.  S*ee* Pub. L. No. 106-518, § 501, 114 Stat. 2410, 2421 (2000).

subject of Bankruptcies." 38 F.3d at 1530-31.  But the majority's analysis was erroneous, and even if it was not erroneous as to a non-revenue statute like section 317(a) of the Judicial Improvements Act of 1990, its analysis would not support holding that a revenue statute like the 2017 amendment is such a law.

93.    The *Victoria Farms* majority erroneously focused on a statute's "effect" to determine whether it was subject to the Bankruptcy Clause.  *See Victoria Farms*, 38 F.3d at 1530-31 (reasoning that the statute establishing the United States Trustee system is a law on the subject of bankruptcies because it has a "direct effect" upon debtors and creditors and because higher fees have "a concrete effect" on the relief available to creditors).  Under Supreme Court precedent, however, the relevant question instead is whether a statute "contemplate[s] an adjustment of a failing debtor's obligations.'"  *Gibbons*, 455 U.S. at 466 (quoting *Hanover Nat'l Bank*, 186 U.S. at 186).

94.    The fact that a law has some effect on a bankruptcy right or remedy cannot mean that, without more, the law is one "on the subject of Bankruptcies" within the scope of the Bankruptcy Clause.  Any statute imposing or increasing a financial obligation—such as a property tax, a license fee, or a domestic support obligation—likewise could "reduce[] the amount of funds that the debtor can ultimately pay to his creditors."  *Victoria Farms*, 38 F.3d at 1531.  Yet the Supreme Court has never even intimated that such a law would be one "on the subject of Bankruptcies."

95.    Likewise, no one contends that local rules of bankruptcy procedure violate the Bankruptcy Clause's uniformity provision, although there are geographical differences in such rules and they have a direct effect on debtors' and creditors' rights.  Local rules impact parties, for example, by providing for dismissal of cases for violations of certain rules.  *See, e.g.*, Bankr.

27

N.D. Tex. R. 1007-1 (providing that failure to file mailing list is "cause for summary dismissal"); Bankr. E.D. Va. R. 1006-1(C)(1) (providing for dismissal if filing fee is not paid within three-day cure period and no hearing is requested).[20]

96.      The Supreme Court's decision in *Shady Grove Orthopedic Assocs. PA v. Allstate Ins. Co.* helps explain why such local rules, as well as fee provisions, are not laws on the subject of bankruptcies.  559 U.S. 393, 407 (2010) (plurality opinion).  In that case, the Court explained the difference between rules that are merely procedural and those that alter substantive rights and are thus prohibited by the Rules Enabling Act, 28 U.S.C. § 2072.  *Id.*  The Court noted that "[t]he test is not whether the rule affects a litigant's substantive rights; most procedural rules do."  *Id.*  Rather, the Court explained, a rule modifies a substantive right only "if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,'" and is merely an authorized procedural rule if it "governs only 'the manner and the means' by which the litigants' rights are 'enforced.'"  *Id.* (alterations in original, quoting *Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946)).

97.      Statutes establishing case fees are akin to such procedural rules; while they may have a practical effect on the parties, they do not alter the rules of decision by which courts will adjudicate debtors' or creditors' rights.  *See Shady Grove*, 559 U.S. at 407; *see also id.* at 435 (categorizing filing fees as procedural) (Stevens, J., concurring in part and concurring in the judgment).

98.      In any event, even if the Ninth Circuit in *Victoria Farms* was correct in finding that section 317(a) of the Judicial Improvements Act of 1990 was subject to the Bankruptcy

---

[20] True, local rules are not statutes.  But neither is a decision of the Judicial Conference establishing different fees for bankruptcy administrator districts—a decision that was contrary to section 1930(a)(7).

Clause, that would not mean that the 2017 amendment is subject to the Bankruptcy Clause.

99.     Unlike section 317(a) of the Judicial Improvements Act of 1990, the 2017 amendment is a revenue provision—it recoups funds for the U.S. Treasury to offset congressional appropriations to the Justice Department for the United States Trustee Program. Without question, many federal laws affect the financial status of debtors, but neither Congress nor the Supreme Court has ever characterized such revenue provisions as laws "on the subject of Bankruptcies."  To do so would expand the Bankruptcy Clause far beyond its historic role and the courts' understanding of it.

100.    *Victoria Farms* did not hold that revenue provisions such as section 1930(a)(6) and the 2017 amendment are laws on the subject of bankruptcies within the scope of the Bankruptcy Clause.  *See* 38 F.3d at 1530-31 (discussing whether the United States Trustee Program, and the extension of time for Alabama and North Carolina to implement it, is such a law).  The same is true for the later-enacted section 1930(a)(7), which is a revenue statute funding the courts, and the rest of the filing fees in section 1930.

101.    Because the 2017 amendment is a revenue statute and does not modify any rights or remedies of creditors or debtors, it is not a law "on the subject of Bankruptcies" subject to the Bankruptcy Clause.  The Ninth Circuit's erroneous analysis in *Victoria Farms* does not make the 2017 amendment subject to, much less in violation of, the Bankruptcy Clause.

**III.    The 2017 Amendment Is Not Otherwise Unconstitutional.**

102.    The Debtors allege the 2017 amendment imposes an "unconstitutional user fee" (Motion at ¶¶ 30-34), but they fail to identify what provision of the Constitution the 2017 amendment purportedly violates—because there is no such provision.

29

A.      **The 2017 amendment does not violate the Due Process Clause.**

103.    The Debtors argue that the quarterly fees imposed by the 2017 amendment

"would force Chapter 11 debtors to support the vast majority of the US Trustee program

operating budget when this budget supports many US Trustee activities of no benefit to

Chapter 11 debtors," and that "Chapter 11 debtors should not and may not be charged for US

Trustee activities properly deemed of no actual or potential benefit and completely unrelated to

Chapter 11 debtors, such as the US Trustee's extensive monitoring of cases under other chapters

of the Bankruptcy Code."  Motion at ¶ 33.

104.    As this argument essentially questions the rationality of Congress's decision to

impose higher quarterly fees on chapter 11 debtors that disburse $1 million or more per quarter,

it could be viewed as an argument that the 2017 amendment is unconstitutional because it

deprives the Debtors of property without due process of law in violation of the Due Process

Clause of the Fifth Amendment.  U.S. Const. amend. V.

105.    But, "[s]tatutes may be invalidated on due process grounds only under the most

egregious of circumstances."  *Eastern Enters. v. Apfel*, 524 U.S. 498, 550 (1998) (Kennedy, J.

concurring in part and dissenting in part).  And, because "legislative Acts adjusting the burdens

and benefits of economic life" are presumed to be constitutional, "the burden is on one

complaining of a due process violation to establish that the legislature has acted in an arbitrary

and irrational way."  *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976).  Thus, as long

as there is a "legitimate legislative purpose furthered by rational means," economic legislation

meets the test of due process.  *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717,

729 (1984); *see also United States v. Carlton*, 512 U.S. 26, 32 (1994) (upholding amendment to

estate tax deduction with retroactive effect that was enacted to cure "a significant and

30

unanticipated revenue loss").

106.   The Supreme Court has held that a statute imposing a user fee complies with the Due Process Clause as long as it "is justified by a rational legislative purpose." *Sperry*, 493 U.S. at 64.

107.   "Courts must accord substantial deference to the predictive judgments of Congress." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) (internal quotation marks omitted).  This deference stems from the different institutional competencies and roles of the courts and Congress.  Congress as an institution is best equipped to amass and evaluate data bearing on legislative questions.  *Id*.

108.   Congress exercised this legislative expertise in determining that the additional quarterly fees it voted to impose on the largest chapter 11 debtors through the 2017 amendment were needed to fund the cost of providing the bankruptcy system to all debtors.  Although the Debtors may disagree with that decision, it was not arbitrary or irrational.

109.   As explained *supra* at ¶¶ 37-40*,* the purpose of the 2017 amendment was to collect sufficient funds to fully offset appropriations for the United States Trustee Program and the costs of 18 bankruptcy judgeships so that ordinary taxpayers would not have to bear those costs of the bankruptcy system.  H.R. Rep. No. 115-130 at 8.  Applying the increased fees— temporarily—to the largest chapter 11 cases, which derive the most benefit from using the bankruptcy system, is a logical way to do that.

110.   In addition, the 2017 amendment provides three eminently reasonable safety valves.  First, it caps fees at $250,000, no matter how much beyond $25 million is disbursed in a case during a quarter.  Second, if the balance in the United States Trustee System Fund at the end of the prior fiscal year equals or exceeds $200 million, the fees during the current year revert to

31

their former levels.  And third, the 2017 amendment expires in fiscal year 2022.  These were the methods Congress chose to protect chapter 11 debtors that disburse $1 million or more per quarter; there is no legitimate ground upon which this Court should substitute its judgment for that of Congress, and give the Debtors greater protection than Congress did.

111.    When Congress amended section 1930(a)(6) in 2017, it did so thoughtfully and rationally.  Nothing more is required to comply with the Due Process Clause.  Congress set caps on fees.  It ensured that the temporary increase in fees would not be charged if the Fund balance reaches a certain level.  It provided for the temporary increase to expire.  And, as with its prior nine amendments to section 1930(a)(6), Congress ensured that the cost of the bankruptcy system will be paid by debtors rather than taxpayers.  This is a far cry from the sort of arbitrary or irrational action that could violate the Due Process Clause.

**B.      The 2017 amendment does not violate the Takings Clause.**

**1.      The Supreme Court has held that a user fee is not a taking.**

112.    In the Motion at ¶ 31, the Debtors appear to argue that the quarterly fees imposed by the 2017 amendment violate the Takings Clause of the Fifth Amendment, pursuant to which "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.

113.    But, as the Supreme Court reaffirmed in 2013 in *Koontz v. St. Johns River Water Management District*, "[i]t is beyond dispute that '[t]axes and user fees . . . are not "takings."'" 570 U.S. 595, 615 (2013) (quoting *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 243, n.2 (2003) (Scalia, J. dissenting)) (ellipses in original).

114.    Assessing a statutory fee for governmental services is simply not akin to the exercise of eminent domain.  *See Sperry*, 493 U.S. at 62 n.9 (rejecting notion that "any fee for

services" might constitute a "physical occupation requiring just compensation"); *cf. Koontz*, 570 U.S. at 617 ("[T]he power of taxation should not be confused with the power of eminent domain[.]") (internal quotation omitted).

115.    Moreover, the Supreme Court has expressed doubt that any statute that survived a due process challenge could violate the Takings Clause.  *See Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 641 (1993) ("Given that [the] due process arguments are unavailing, 'it would be surprising indeed to discover' the challenged statute nonetheless violating the Takings Clause") (quoting *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 223 (1986)).  As discussed *supra* at ¶¶ 103-111, the 2017 amendment does not offend the Due Process Clause because it easily passes rational basis review.

### 2.    The Supreme Court has held that a user fee is not an unconstitutional taking just because it exceeds the benefits received.

116.    The Debtors argue that the 2017 amendment is unconstitutional because the level of disbursements may not correspond to the level of benefits the Debtors expect to receive in these cases.  Motion at ¶¶ 33-34.  However, in *United States v. Sperry*, the Supreme Court specifically rejected such a challenge to a user fee, under both the Takings and Due Process Clauses, where there allegedly was an insufficiently close correlation between the specific services provided and the fees and costs charged.  *Sperry*, 493 U.S. at 60-66 (upholding user fee against taking and due process challenges).

117.    The statutory fee in question in *Sperry* was 1.5% of the first $5 million, and 1% of any amount over $5 million, awarded to United States-based claimants on certain arbitral awards and settlements before the Iran-United States Tribunal.[21]  Sperry, who had been granted an

---

[21] By contrast, the temporary quarterly fee at issue here is for the lesser of 1% or $250,000.  28 U.S.C. § 1930(a)(6)(B).

award by the Tribunal, contended that the deducted charge could not be upheld as a user fee—and thus must constitute a taking or violate due process—because "there [was] no showing that the amount of the deduction approximates the cost of the Tribunal to the United States or bears any relationship to Sperry's use of the Tribunal or the value of the Tribunal's services to Sperry." 493 U.S. at 60.

118.    The Supreme Court disagreed.  It noted that "'[a] governmental body has an obvious interest in making those who specifically benefit from its services pay the cost.'"  *Id.* at 63 (quoting *Massachusetts v. United States*, 435 U.S. 444, 462 (1978)).  The Supreme Court held that Sperry had benefited directly from the Tribunal, even though its settlement was reached through private negotiations.  *Id.*  It upheld the government's ability to require Sperry "to pay a charge for the availability of the Tribunal even if it never actually used the Tribunal; Sperry received the 'benefit from [the Tribunal] in the sense that the services are available for [its] use.'"  *Id.* (quoting *Massachusetts*, 435 U.S. at 468) (edits in original).

119.    The Court further noted that it "has never held that the amount of a user fee must be precisely calibrated to the use that a party makes of Government services.  Nor does the Government need to record invoices and billable hours to justify the cost of its services."  *Id.* at 61.  The Court elaborated that "when the Federal Government applies user charges to a large number of parties, it probably will charge a user more or less than it would under a perfect user-fee system."  *Id.* (citing *Massachusetts*, 435 U.S. at 468).

120.    The *Sperry* Court declined to identify what percentage of a Tribunal award might be too great for the government to assess as a user fee, but it did hold that "1½% does not qualify as a 'taking' by any standard of excessiveness."  *Id.* at 62.  The Court concluded that the 1.5% user fee "was obviously the judgment of Congress and we abide by it."  *Id.*

34

121.   *Sperry* demonstrates that the Constitution does not require a case-by-case correlation between a user fee and either the costs or benefits of the government's services.  *Id.* at 60-61.  Rather, whether the fee represents a "fair approximation" of the costs of government benefits is determined on an aggregate basis without any reference to what use was made in any particular case.  *Id.* at 60; *cf. Alamo Rent-a-Car, Inc. v. Sarasota-Manatee Airport Auth.*, 906 F.2d 516 (11th Cir. 1990) (upholding airport usage fee against a challenge under the Commerce Clause (U.S. Const., art. 1, § 8, cl. 3), despite the "imprecise" nature of approximating airport use by measuring car rental company's gross receipts from customers at airport, when approximation was "not irrational," and rejecting argument that fee should correspond exactly to the percentage of company's airport use).

122.   Significantly, under *Sperry* a "fair approximation" is gauged by the cost of making the government's services available, not "the services used or benefits conferred" as the Debtors allege in the Motion at ¶ 33.  493 U.S. at 60, 63.

123.   Were it otherwise, courts could strike down practically all revenue measures as unconstitutional.  Instead of quarterly fees based on disbursements, debtors could insist that only fees based on the actual number of hours spent by government personnel working on the debtor's case are a "fair approximation" of the cost of services provided.  Drivers required to register by a state or locality could challenge any fee that does not precisely reflect the actual amount they drive within the state.  State park passes could be held to be unconstitutional because they charge all families the same amount for a family pass without regard to the size of the family or time each member spends in the parks.

124.   The administrative costs associated with attempting to impose and collect precisely calibrated user fees would be astronomical.  *See Massachusetts,* 435 U.S. at 463 ("If

the National Government were required more precisely to calibrate the amount of the fee to the extent of the actual use of the airways, administrative costs would increase and so would the amount of revenue needed to operate the system").

125.    This, of course, is not the law.  As the cases cited above show, it is the role of Congress to consider efficiency, equity, revenue adequacy, and administrative burden when it designs federal regulatory fees.  Congress has done that with quarterly fees.

126.    The cases relied on by the Debtors in support of their "takings" argument, on the other hand, are inapposite:

- In *United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998), the Supreme Court distinguished *Sperry* because "the Takings Clause [at issue in *Sperry*] is less restrictive than the Export Clause [U.S. Const. art. 1, § 9, cl. 5, at issue in *U.S. Shoe*]."  523 U.S. at 368-69.

- In *Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155 (1980), the 1% statutory fee imposed on private funds held in the court registry "for services rendered" by the government was not at issue; instead, it was the government's additional retention of over $100,000 in interest earned while the private funds were held in the court registry that was found to be an unconstitutional "taking."  449 U.S. at 158, 162-64.

-  In *Commonwealth Edison Co. v. Montana*, 453 U.S. 609 (1981), the Supreme Court was not presented with a user fee at all, and so in conducting its analysis "put to one side" cases that dealt with user fees. 453 U.S. at 621.

- In *Edmonson v. Fremgen*, 590 F. App'x 613 (7th Cir. 2014), the Seventh Circuit relied on *Sperry* in finding that freezing a prisoner's account for failing to pay court fees was not a "taking."  590 F. App'x at 615.

- And, in *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Authority*, 567 F.3d 79 (2d Cir. 2009), the Second Circuit specified that the Commerce Clause (U.S. Const. art. 1, § 8, cl. 3) and Tonnage Clause (U.S. Const. art. 1, § 10, cl. 3) were at issue—both of which require different analyses than do the Takings Clause and Due Process Clause addressed in *Sperry* and implicated by the Motion.

127.    As shown by the chart below, comparing the fee of 1.5% charged in *Sperry* and

36

the fees of 1% or less challenged here demonstrates that the quarterly fee regime is even more

favorable to the payee than the fees upheld in *Sperry*:

| Factor | *U.S. v. Sperry* | Section 1930(a)(6) as amended in 2017 |
|---|---|---|
| Statutory Percentage | **1.5%** on first $5 million, 1% thereafter | **Up to 1%** |
| Dollar cap on payments? | **No** | **Yes** ($250,000) |
| Voluntary use of the service? | **No** (use was involuntary because party did not want to use tribunal) | **Yes** (debtor chose to use the bankruptcy system) |
| Sunset? | **No** | **Yes** |
| Retroactive statute? | **Yes** (expressly retroactive) | **No** (didn't apply until the quarter after enactment) |
| Upheld statute? | **Yes**. S. Ct. upheld | |

128.    Following the Supreme Court's guidance in *Sperry*, Judge Walrath expressly

upheld the constitutionality of section 1930(a)(6) against the same takings challenge asserted by

the Debtors—that the quarterly fees imposed exceeded the benefits provided. *In re Kindred

Healthcare, Inc.*, No. 99-3199 (MFW), 2003 WL 22327933, at *3-5 (Bankr. D. Del. Oct. 9,

2003). As held in *Kindred Healthcare*, fees assessed under section 1930(a)(6) are "fees

associated with the Debtors' use of the bankruptcy judicial system." *Id.* at *4.

129.    The Debtors do not, and could not, dispute that they have received—and continue

to receive—the benefits of the bankruptcy system. *See*, *e.g.*, *In re A.H. Robins Co. Inc.*, 219

B.R. 145, 148 n.8 (Bankr. E.D. Va. 1998) (noting that while the United States Trustee had done

little in the case post-confirmation, the debtor "benefitted from the Court's continued

involvement in this still-open case").

130.    Indeed, as a percentage of disbursements, the pre-amendment fees in cases with

over $1 million in quarterly disbursements were disproportionately low as compared to the fees

paid in smaller cases. *See* 28 U.S.C. § 1930(a)(6); *see also supra* at ¶¶ 43-45. The 2017

amendment merely brought the percentage charged in those largest cases in line with the

37

percentages charged in the smaller cases. Even under the 2017 amendment, the fees in these largest of chapter 11 cases are still never more than 1%.

131.    In addition, the Debtors' comparison of the quarterly fees they anticipate paying under section 1930(a)(6) during their cases and the professional compensation they anticipate may be awarded under 11 U.S.C. § 330(a) is a false equivalence. *See* Motion at ¶ 34. As a user fee, section 1930(a)(6) quarterly fees need not be "precisely calibrated to the use [the Debtors] make[ ] of Government services[, n]or does the Government need to record invoices and billable hours to justify the cost of its services." *Sperry*, 493 U.S. at 63. Professional compensation awards, on the other hand, require the applicant to show that its services were "actual" and "necessary," and that its requested compensation is "reasonable" based on factors such as the "value," "time spent," and likelihood that they would "benefit the debtor's estate." *See* 11 U.S.C. § 330(a). Depending on a chapter 11 debtor's quarterly disbursements, its quarterly fees may be more than, less than, or comparable to the compensation received by professionals in the case. But one has no relevance to the legitimacy of the other.

132.    In light of the foregoing, there is no basis for this Court to overrule Congress's determination that the amount of the quarterly fees it voted to impose is a fair approximation of the cost of providing the bankruptcy system to debtors, and a fair distribution of those costs among those who use the bankruptcy system. *See Sperry*, 493 U.S. at 60, 63.

**CONCLUSION**

For these reasons, the United States Trustee respectfully asks this Court to deny the

Motion, and grant any further relief that the Court deems proper.

DATED: June 17, 2019

                                       Respectfully submitted,

                                       WILLIAM K. HARRINGTON
                                       UNITED STATES TRUSTEE FOR REGION 2

By:    /s/ *Kim L. McCabe*
           Kim L. McCabe
           Assistant United States Trustee
           Bar No. ct23661

RAMONA D. ELLIOTT           WILLIAM K. HARRINGTON
Deputy Director/General Counsel    United States Trustee, Region 2
P. MATTHEW SUTKO           KIM L. McCABE
Associate General Counsel        Assistant United States Trustee
ROBERT J. SCHNEIDER, JR.
Trial Attorney                  Department of Justice
                               Office of the United States Trustee
Department of Justice          Giaimo Federal Building
Executive Office for United States  150 Court Street, Room 302
  Trustees                   New Haven, CT 06510
441 G Street, N.W., Suite 6150     Tel:  (203) 773-2210
Washington, DC  20530        Fax: (203) 773-2217
Tel:  (202) 307-1399          Email: Kim.McCabe@usdoj.gov
Fax: (202) 307-2397