**EXHIBIT A**
**DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE**
**BANKRUPTCY CODE**

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DRAFT PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### HARTFORD DIVISION

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| CLINTON NURSERIES, INC., | : | Case No. 17-31897(JJT) |
| CLINTON NURSERIES OF MARYLAND, INC., | : | Case No. 17-31898(JJT) |
| CLINTON NURSERIES OF FLORIDA, INC., and | : | Case No. 17-31899(JJT) |
| TRIEM LLC, | : | Case No. 17-31900(JJT) |
|  | : |  |
| Debtors. | : | (Jointly Administered Under |
|  | : | Case No. 17-31897(JJT)) |

### DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Dated: October 28, 2019

ZEISLER & ZEISLER, P.C.
Eric Henzy (Federal Bar No. ct12849)
ehenzy@zeislaw.com
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Tel: (203) 368-4234
Counsel for the Debtors and Debtors in Possession

## TABLE OF CONTENTS

## DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Clinton Nurseries, Inc. ("CNI"), Clinton Nurseries of Maryland, Inc. ("CNM"), Clinton Nurseries of Florida, Inc. ("CNF"), and Triem LLC (together, the "Debtors"), propose this joint plan of reorganization under Chapter 11 of the Bankruptcy Code (the "Plan") for the resolution of outstanding Claims against and Equity Interests in the Debtors.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of, among other things, the Debtors' histories, businesses, properties and operations, projections for those operations, risk factors, a summary and analysis of this Plan, and certain related matters, including, among other things, certain tax matters.

Although the Debtors' Cases have been jointly administered and this is a joint plan, the Debtors and their estates have not been substantively consolidated. Accordingly, the Plan is four distinct plans, one for each of the Debtors. The sections of the Plan generally apply to all of the Debtors, except where otherwise indicated. The Debtors are the proponents of this Plan within the meaning of Bankruptcy Code section 1129.

Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019 and this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan.

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## RULES OF INTERPRETATION AND DEFINED TERMS

*A.    Rules of Interpretation*

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (5) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation

1

hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in Bankruptcy Code section 102 shall apply; and (9) all references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

B.    *Defined Terms*

As used in the Plan, the following terms shall have the following meanings when used in capitalized form (and their plural or singular forms shall have correlative meanings). Any capitalized term used in the Plan that is not defined in this Article I, but is defined in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement shall have the meaning ascribed to such terms in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement, as the case may be.

1.    "Administrative Claim" means any Claim for costs and expenses of administration of the Cases that is Allowed pursuant to Bankruptcy Code section 503(b), including, without limitation, (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fees; and (c) all fees and charges Allowed against the Estates pursuant 28 U.S.C. section 1930.

2.    "Administrative Claims Bar Date" means the first Business Day that is thirty (30) days following the Effective Date or such other date as approved by order of the Bankruptcy Court.

3.    "Affiliate" shall have the meaning set forth in Bankruptcy Code section 101(2).

4.    "Allocable Value" means the values of the Connecticut Property, the Florida Property and the Maryland Property, as set forth in Article III below.

5.    "Allowed" (this term is used both separately and in conjunction with other defined terms in the Plan (*e.g.*, Allowed Priority Tax Claim)) means, except as otherwise provided herein, (a) a Claim or Equity Interest specifically allowed under the terms of the Plan, (b) a Claim or Equity Interest that has been allowed by a Final Order or in a stipulation of amount and nature of the Claim or Equity Interest executed by the Reorganized Debtors on, or after, the Effective Date, (c) an Equity Interest or Claim as reflected by a Proof of Claim, in each case, timely Filed or deemed timely Filed, or (d) if the Proof of Claim has not been timely Filed or deemed timely Filed, the Claim as reflected in the Schedules if therein listed as undisputed, unliquidated and not contingent or the Equity Interest as reflected in the Schedules; provided that in the case of allowance under either subsections (c) or (d), any Claim's allowance is subject to any limitations imposed by Bankruptcy Code section 502; and provided further that allowance under subsections (c) and (d) only is applicable if the Claim or Equity Interest is not timely Disputed; and provided also that allowance under subsections (c) and (d) only apply once either (1) the Debtors or the Reorganized Debtors have determined not to object to the Claim or (2) the last day to timely object to such Claim has passed.

6.    "<u>Avoidance Actions</u>" means any and all actual or potential avoidance, recovery, subordination or other claims, actions or remedies that may be brought by and on behalf of a Debtor or its Estate under Chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law.

7.    "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

8.    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Connecticut, Hartford Division.

9.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Procedure of the Bankruptcy Court, and the Judicial Practices and Procedures of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Cases.

10.    "<u>BOW</u>" means Bank of the West.

11.    "<u>BOW Amended Loan Documents</u>" shall mean the BOW Loan Documents, as amended by and/or superseded pursuant to and consistent with this Plan including, but not limited to, the BOW Credit Agreement, the BOW Personal Property Note and the BOW Real Property Note.

12.    "<u>BOW Credit Agreement</u>" means the new credit agreement and accompanying documentation evidencing the BOW Personal Property Note and the BOW Real Property Note.

13.    "<u>BOW Loan Documents</u>" shall mean the documents entered into prior to the Petition Date by BOW and the Debtors establishing and evidencing the BOW Claims against the Debtors.

14.    "<u>BOW Personal Property Note</u>" means the new term note (and accompanying documentation) in the principal amount of $15,000,000.00, payable to BOW and secured by the Personal Property.  Upon confirmation of the Plan, the BOW Personal Property Note shall be payable, jointly and severally, by CNI, CNF and CNM (but not Triem).

15.    "<u>BOW Real Property Note</u>" means the new term note (and accompanying documentation) in the principal amount of $7,400,000.00, payable to BOW and secured by the Real Property.  Upon confirmation of the Plan, the BOW Real Property Note shall be payable, jointly and severally, by all of the Debtors, but shall be "non-recourse" to the Debtors and subject to other limitations set forth in this Plan.

16.    "<u>BOW SWAP Claim</u>" means the unsecured claim in the approximate amount of $25,000.00, resulting from the termination and breakage of the pre-petition interest rate swaps by and between the Debtors and BOW.

17.    "<u>BOW Unsecured Claim</u>" means BOW's Unsecured Claim in the estimated amount of $8,248,693.36, owed jointly and severally by each of the Debtors.  The BOW Unsecured Claim includes the BOW SWAP Claim.

18.    "<u>Business Day</u>" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

19.    "<u>Cases</u>" means the Debtors' jointly administered voluntary cases under Chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, styled *In re Clinton Nurseries, Inc., et al.*, Case No. 17-31897.

20.    "<u>Cash</u>" means the legal tender of the United States of America or the equivalent thereof.

21.    "<u>Cause of Action</u>" means any action, proceeding, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, reduced to judgment or not reduced to judgment, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

22.    "<u>Claim</u>" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

23.    "<u>Claims Bar Date</u>" means the dates as established by the Claims Bar Date Notice by which Proofs of Claims were required to be Filed with the Bankruptcy Court: April 12, 2018, for all Creditors other than Governmental Units, and within 180 days of the Petition Date for Governmental Units.

24.    "<u>Claims Bar Date Notice</u>" means the Notice of Chapter 11 Bankruptcy Case issued by the Bankruptcy Court on December 19, 2017 (Docket No. 12).

25.    "<u>Class</u>" means a category of holders of Claims or Equity Interests as set forth in ARTICLE III hereof, designated pursuant to Bankruptcy Code sections 1122(a) and 1123(a).

26.    "<u>CN Trust</u>" means the trust established for the benefit of the CN Trust beneficiaries on the Effective Date in accordance with the Plan and the CN Trust Agreement.

27.    "<u>CN Trust Advisory Board</u>" means the board of three members selected to govern the CN Trust, as selected by the Committee.

28.    "<u>CN Trust Agreement</u>" means the CN Trust agreement, as may be amended, supplemented, restated, or otherwise modified from time to time in accordance with the terms thereof, that, among other things, establishes the CN Trust and describes the powers, duties, and

responsibilities of the CN Trustee, and otherwise in form and substance reasonably acceptable to the Debtors and the Committee.

29.     "CN Trust Assets" means the Avoidance Actions, the CN Trust Initial Cash and all other Cash distributed to the CN Trust by the Debtors pursuant to the terms of this Plan.

30.     "CN Trust Initial Cash" means $50,000.00 in Cash to be funded by the Debtors on the Effective Date as provided herein.

31.     "CN Trust Interests" means beneficial interests in the CN Trust entitling holders thereof to receive distributions from the CN Trust, as further described in the Plan and the CN Trust Agreement.

32.     "CN Trustee" means the trustee for the CN Trust, as appointed in accordance with the CN Trust Agreement and with the consent of the Committee.

33.     "Committee" means the official committee of unsecured creditors in the Cases appointed by the U.S. Trustee on January 4, 2018, pursuant to Bankruptcy Code section 1102, and comprised of the following members: Container Centralen, Inc.; Nursery Supplies & Summit Plastics Company; and The Conard-Pyle Company, Inc. d/b/a Star Roses and Plants.

34.     "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order on the docket of the Cases.

35.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Cases.

36.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

37.     "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

38.     "Connecticut Property" means the real property, improvements, fixtures and other associated real estate located at 53 Chapman Avenue, Westbrook, Connecticut, and owned by Triem.

39.     "Consummation" means the occurrence of the Effective Date.

40.     "Creditor" means any holder of a Claim against any Debtor(s).

41.     "Debtor(s)" means, individually, Clinton Nurseries, Inc., Clinton Nurseries of Maryland, Inc., Clinton Nurseries of Florida, Inc., and Triem LLC, in each case, in their capacities as debtors in the Cases.

42.     "Disclosure Statement" means that certain Fourth Amended Disclosure Statement Relating To Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125.

43. "Disputed" means, with respect to a Claim, Equity Interest or any portion thereof that is not specifically Allowed under the Plan, that such Claim, Equity Interest or portion thereof: (a) is the subject of an objection or request for estimation filed by any of the Debtors or any other party in interest in accordance with applicable law, which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (b) has not been otherwise Allowed and is scheduled by the Debtors as contingent, unliquidated, or disputed; or (c) is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order.

44. "Effective Date" means the first Business Day after the Confirmation Order becomes a Final Order.

45. "Entity" means and includes Person, estate, trust, Governmental Unit, and United States Trustee.

46. "Equity Interest" means any equity security (as defined in Bankruptcy Code section 101(16)) in any Debtor.

47. "Estates" means the bankruptcy estates of the Debtors created by virtue of Bankruptcy Code section 541 upon the commencement of the Cases.

48. "Exculpated Parties" mean the Debtors and their current directors, officers, shareholders, attorneys, financial advisors and accountants, the Committee and its members (solely in their representative capacity) and the Committee's attorneys. For the avoidance of doubt, Exculpated Parties are limited to Estate fiduciaries who served during the pendency of the Cases, from the Petition Date through the Effective Date.

49. "Executory Contract" means a contract to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code sections 365 or 1123.

50. "File" or "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court in the Cases.

51. "Final Order" means an order or judgment of the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined to be in effect by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the

possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order; provided, further, that the Debtors or the Reorganized Debtors, as applicable, reserve the right to waive any appeal period for an order or judgment to become a Final Order.

52.     "Florida Property" means the real property, improvements, fixtures and other associated real estate located at 737 Salem Road, Havana, Florida, and owned by CNF.

53.     "Governmental Unit" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

54.     "Intercompany Claims" means any Claim or Cause of Action of a Debtor against any other Debtor, whether or not a Proof of Claim is Filed or deemed Filed pursuant to Bankruptcy Code section 501 in any of the Cases.

55.     "Lien" means charge against or interest in property to secure payment of a debt or performance of an obligation.

56.     "Maryland Property" means the real property, improvements, fixtures and other associated real estate located at 613 Hayden Road, Centreville, Maryland, and owned by Triem.

57.     "Non-Tax Priority Claim" means any Claim accorded priority in right of payment under Bankruptcy Code section 507(a), other than a Priority Tax Claim or an Administrative Claim.

58.     "Person" means a "person" as defined in Bankruptcy Code section 101(41).

59.     "Personal Property" means all of the Debtors' respective personal property assets existing on the Petition Date or thereafter acquired by any of the Debtors.

60.     "Petition Date" means December 18, 2017, the date on which the Debtors commenced the Cases.

61.     "Plan" means this Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, including all exhibits, schedules, supplements, and appendices hereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time in accordance with the terms herein.

62.     "Plan Supplement" means the compilation of documents and forms, schedules, and exhibits to be filed on the Plan Supplement Filing Date, as amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules, comprising, without limitation, the CN Trust Agreement and the BOW Amended Loan Documents.

63.     "Plan Supplement Filing Date" means the date that is fourteen days before the Confirmation Hearing.

64.   "<u>Priority Tax Claim</u>" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

65.   "<u>Pro Rata</u>" means the proportion by dollar amount that an Allowed Claim in a particular Class bears to the aggregate dollar amount of Allowed Claims in that Class, or the proportion by dollar amount that an Allowed Claim entitled to share in the same recovery as other Allowed Claims bears to the aggregate dollar amount of Allowed Claims entitled to share in that same recovery under the Plan.

66.   "<u>Professional</u>" means any Person employed in the Cases pursuant to Bankruptcy Code section 327 or 1103 or otherwise.

67.   "<u>Professional Fees</u>" means an Allowed Claim under Bankruptcy Code section 328, 330(a) or 331.

68.   "<u>Proof of Claim</u>" means a proof of Claim or Equity Interest Filed against any Debtor in the Cases.

69.   "<u>Real Property</u>" means the Connecticut Property, the Maryland Property and the Florida Property.

70.   "<u>Released Parties</u>" means each of the Debtors' and the Debtors' Affiliates' respective current officers, directors, principals, members and employees.

71.   "<u>Reorganized Debtors</u>" means each of the Debtors, as reorganized pursuant to this Plan on or after the Effective Date.

72.   "<u>Schedules</u>" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, other schedules and statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521 and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified or supplemented from time to time.

73.   "<u>Secured Claim</u>" means a Claim that is secured by a Lien on property in which any Debtors has an interest or that is subject to a valid right of setoff under Bankruptcy Code section 553, to the extent of the value of the Claim holder's interest in such Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or, in the case of setoff, pursuant to Bankruptcy Code section 553.

74.   "<u>Stamp or Similar Tax</u>" means any stamp tax, document recording tax, personal property tax, conveyance fee, intangibles or similar tax, mortgage tax, mortgage recording tax, real estate transfer tax, sales tax, use tax, Uniform Commercial Code filing or recording fee, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), regulatory filing or recording fee, and other similar taxes or other assessments imposed or assessed by any Governmental Unit.

75.    "Unimpaired" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

76.    "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

77.    "Unsecured Claim" means any prepetition Claim against any Debtor that is not a: (a) Administrative Claim; (b) Priority Tax Claim; (c) Non-Tax Priority Claim; (d) Secured Claim; or (e) Equity Interest; and specifically including the BOW Unsecured Claim.

78.    "Unsecured Claim Annual Payment" means $200,000.00 paid by the Debtors on June 1 of each year following the Effective Date for ten years (June 1, 2020 through June 1, 2029).  The Unsecured Claim annual payment will be divided pro rata among the holders of Allowed Unsecured Claims of each of the Debtors based on the aggregate amount of Unsecured Claims against each of the Debtors.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS
## AND STATUTORY FEES

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article III hereof.

*A.    Administrative Claims*

Except with respect to Administrative Claims that are for Professional Fees and except to the extent that an Administrative Claim has already been paid during the Cases or a holder of an Allowed Administrative Claim and the applicable Debtors agree to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the unpaid portion of its Allowed Administrative Claim on the latest of: (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; provided that Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are for Professional Fees, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtors no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.

B.    *Accrued Professional Fees*

    1.    <u>Final Fee Applications for Professional Fees</u>

All final requests for payment of Professional Fees incurred during the period from the Petition Date through the Effective Date shall be Filed no later than thirty (30) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Court orders, the Allowed amounts of such Professional Fees shall be determined by the Court. The amount of Professional Fees owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors.

    2.    <u>Estimation of Fees and Expenses</u>

To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Debtors' and the Committee's Professionals shall estimate their Professional Fees before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than ten (10) days prior to the Confirmation Date (it being understood that it shall not be a condition precedent to the occurrence of Confirmation that such estimates have been provided); provided, however, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional, and such Professionals are not bound to any extent by the estimates. If any of the Debtors' or the Committee's Professionals fail to provide an estimate or does not provide a timely estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtors to determine the Administrative Claims as of the Effective Date.

    3.    <u>Post-Confirmation Date Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

C.    *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, at the election of the Debtors or the Reorganized Debtors each holder of an Allowed Priority Tax Claim will receive on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim or (2) regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five years after the Petition Date.

D.    *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors when due and payable. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's Case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

On April 17, 2019, the Debtors filed their Motion To Determine Amount Of United States Trustee Fees Pursuant To 28 U.S.C. § 1930(a)(6), Doc. No. 672, seeking an order that the Debtors US Trustee fee obligation should be paid at the lower pre-October 27, 2017 schedule. The US Trustee objected to the Debtors' motion, and as part of the pre-trial order governing such motion the US Trustee agreed that US Trustee fees did not have to be paid pending resolution of the motion. The Debtors' motion was denied by the Bankruptcy Court on August 28, 2019, and the Debtors timely filed an appeal of that denial. The US Trustee's position is that the Debtors owe $297,022.83 in US Trustee fees as of the end of the third quarter of 2019. Unless the Debtors have obtained a stay pending appeal, the Debtors shall be required to pay any outstanding US Trustee fees on the Effective Date. The Debtors believe that this will not impact the feasibility of the Plan. If the Debtors file a motion for a stay pending appeal, they will be required to demonstrate, among other things, that they have a likelihood of success on their appeal and that they will be irreparably harmed if a stay is not granted.

## ARTICLE III
## DESIGNATION AND SPECIFICATION OF IMPAIRMENT AND TREATMENT OF CLASSES OF CLAIMS AND CLASSES OF EQUITY INTERESTS AND RELATED MATTERS

*A.    Designation and Specification of Impairment and Treatment of Classes of Claims and Classes of Equity Interests*

All Claims and Equity Interests, other than Administrative Claims (including Professional Fees) and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to this Plan and pursuant to Bankruptcy Code sections 1122(a) and 1123(a)(1). A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Except as provided below, each Class of Claims against or Equity Interests in the Debtors shall be deemed to constitute separate sub-Classes of Claims against and Equity Interests in each of the Debtors, as applicable, and each such sub-Class shall vote as a single separate Class for each of the Debtors, as applicable.

    1.    <u>Class 1—Allowed Priority Non-Tax Claims</u>

a.      *Classification*:  Class 1 consists of any unpaid Allowed Priority Non-Tax Claims against the Debtors.

b.      *Impairment and Voting*:  This Class is not impaired under the Plan and this Class and each holder of a Claim in this Class are conclusively presumed to have accepted the Plan, and the Debtors are not required to solicit acceptances from any holders of Claims in this Class.

c.      *Treatment*: On the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, each Entity holding an Allowed Priority Non-Tax Claim will receive on account of such Claim Cash equal to the Allowed amount of such Priority Non-Tax Claim, except to the extent that such holder of an Allowed Priority Non-Tax Claim has been paid by the Debtors prior to the Effective Date and except to the extent that such holder agrees to less favorable treatment.

2.      <u>Class 2—BOW Secured Claims</u>

a.      *Classification*: Class 2 consists of the Secured Claims of BOW against the Debtors.

b.      *Claim Amount*: On April 9, 2018, BOW filed a proof of claim stating that as of April 2018 the outstanding principal balance of the BOW Claims, plus fees and costs, was approximately $29,418,576.39, together with accrued and unpaid interest, costs of collection and attorneys' fees and costs.  Pursuant to cash collateral orders entered in the Cases, (i) the Claims of BOW constitute Allowed Claims against the Debtors and are not subject to any contest, objection, recoupment, counterclaim, defense, offset, subordination, recharacterization, avoidance, or other claim, challenge, or cause of action under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise and BOW's Liens have been deemed legal, valid, binding, enforceable, duly perfected, not subject to any objection, counterclaim, setoff, offset of any kind, subordination, or defense, and such liens are otherwise unavoidable; and (ii) BOW is not be subject to any other or further claims, counterclaims, causes of action or lawsuits by any representative of the estate with respect to acts or omissions occurring prior to the Petition Date.

c.      *Impairment and Voting*: This Class is impaired under and BOW is entitled to vote to accept or reject the Plan.

d.      *Treatment*: In full, complete and final satisfaction and release of the BOW Secured Claims, pursuant to the BOW Personal Property Note and the BOW Real Property Note and the other BOW Amended Loan Documents BOW shall:

i.      Retain its Liens on the Debtors' Personal Property as security for the BOW Personal Property Note and the Real Property as security for the BOW Real Property Note, in the same priority as they currently exist, subject to the release provisions set forth below.

ii.      Receive from the Debtors on account of its Secured Claims:

(A) The BOW Personal Property Note, payable as follows:

(1)     On the first day of each month from the Effective Date through and including April 1, 2023, equal monthly principal and interest payments based on a ten (10) year amortization schedule and a seven and one-half percent (7.5%) annual rate of interest.

(2)     In addition to the monthly principal and interest payments, to the extent the Debtors have cash in excess of $2,500,000.00 on February 28 in any calendar year through and including February 28, 2023, the Debtors shall pay to BOW fifty percent (50%) of such excess, to be applied by BOW in reverse order of maturity on the BOW Personal Property Note (i.e., applied to the "back-end" principal balance owing on the BOW Personal Property Secured Claim so as not to delay any regularly scheduled monthly P & I payments); provided, however that upon receipt of any excess cash, all payments on the BOW Personal Property Note will remain the same, but as the principal balance reduces, a larger percentage of each monthly payment will be for principal, and less to interest.

(3)     The maturity date of the BOW Personal Property Note will be April 1, 2023, unless the Debtors produce a reasonably satisfactory letter of intent/commitment letter from a lender sufficient to close a refinance of the BOW Personal Property Note and the BOW Real Property Note, in full, by no later than April 30, 2023, in which case April 30, 2023 will become the new maturity date of the BOW Personal Property Note and the BOW Real Property Note.

(4)     The Debtors shall have the option to pre-pay the BOW Personal Property Note with no penalty.

(5)     If the Debtors default on their obligations to BOW under the Plan, BOW will have all state law and other applicable remedies to enforce the BOW Amended Loan Documents, including the ability to seek the appointment of a receiver to liquidate the Personal Property.

(6)     The BOW Personal Property Note will be evidenced by the BOW Credit Agreement, security agreements and other BOW Amended Loan Documents satisfactory to the Debtors and BOW.

(7)     The BOW Credit Agreement shall contain mutually-acceptable reporting requirements, and BOW will have mutually-acceptable inspection rights (similar to what the parties have operated under over the past few years).

(8)     The BOW Credit Agreement shall contain mutually-satisfactory financial covenants to be agreed-upon by BOW and the Debtors.

(B) The BOW Real Property Note, payable as follows:

(1)     On the first day of each month from the Effective Date through and including April 1, 2023, equal monthly principal and interest payments based on a thirty (30) year amortization schedule and a four and one-quarter percent (4.25%) annual rate of interest.

(2)     The maturity date of the BOW Real Property Note will be April 1, 2023, unless the Debtors produce a reasonably satisfactory letter of intent/commitment letter from a lender sufficient to close a refinance of the BOW Real Property Note and the BOW Personal

Property Note, in full, by no later than April 30, 2023, in which case April 30, 2023 will become the new maturity date of the BOW Real Property Note and the BOW Personal Property Note.

(3)     The Debtors shall have the option to pre-pay the BOW Real Property Note with no penalty.

(4)     If the Debtors default on their obligations to BOW under the amended Plan, BOW will have all state law and other applicable remedies to enforce the BOW Amended Loan Documents, including the ability to seek the appointment of a receiver to liquidate the Real Property.

(5)     The BOW Real Property Note will be evidenced by the BOW Credit Agreement, the other BOW Amended Loan Documents, as well as amendments to the existing mortgages on all Real Property to reflect that each mortgage jointly & severally secures the BOW Real Property Note.

(6) The BOW Real Property Note will be "non-recourse" to any of the Debtors. Accordingly, the total amount payable by the Debtors to BOW under the BOW Real Property Note will be the lesser of: (i) $7,400,000.00 (plus any interest previously paid); (ii) the aggregate net proceeds realized from disposition of the Real Estate securing the BOW Real Property Note; or (iii) as applicable, the Allocable Values.  In any case, BOW will have no further recourse to the Debtors beyond the funds received upon disposition of the Real Estate.

(a) The Debtors shall apply net proceeds from the sale of all Real Property to reduce the BOW Real Property Note.  BOW agrees to release its Liens on the Real Property in connection with a closing of a sale of Real Property so long as BOW receives all net proceeds from the sale of said Real Property; provided, however, that if BOW, in its sole and absolute discretion, believes that the proposed sale price of any of the Real Property securing the BOW Real Property Note is not acceptable to BOW, then the Debtors shall immediately take all reasonable steps to deed, transfer and assign all legal, beneficial and equitable interest in said Real Property to BOW (or BOW's designee), and BOW agrees that the outstanding balance of the BOW Real Property Note shall be reduced by the Allocable Value of said Real Property.

(b) For purpose of the Plan, the Debtors and BOW agree to the following Allocable Values of the Real Property, which Allocable Values shall be binding for all purposes upon the Debtors and BOW following the Effective Date of the Plan.  Debtors and BOW further agree that upon a sale of any Real Property, the principal amount of the BOW Real Property Note will be reduced by the greater of: (i) the actual net proceeds received by BOW for said Real Property; or (ii) the Allocable Value of said Real Property, as set forth immediately below:

| Real Property | Allocable Value |
|---|---|
| • Connecticut Property: | $  873,292.00 |
| • Florida Property: | $3,125,466.00 |
| • Maryland Property: | $3,401,242.00 |

14

e.    *BOW Unsecured Claim*. The BOW Unsecured Claim, which is equal to $22,400,000.00 minus the total amount of the BOW Claim, will be treated as a Class 8, 9 and 10 Unsecured Claim.

3.    Class 3—Allowed Secured Claim of Varilease Finance, Inc. Against CNI and CNM

a.    *Classification*:   Class 3 consists of the Allowed Secured Claim of Varilease Finance, Inc., against CNI and CNM

b.    *Impairment and Voting*:  This Class is impaired under and Varilease Finance is entitled to vote to accept or reject the Plan.

c.    *Treatment*: On the Effective Date, in full satisfaction of Varlilease Finance's Allowed Secured Claim, CNI and CNM shall abandon to Varilease Finance any property on which Varilease Finance has a valid, perfected, first priority Lien securing Varilease Finance's Allowed Secured Claim.

4.    Class 4—Allowed Secured Claim of Ford Motor Credit Company Against CNI

a.    *Classification*:   Class 4 consists of the Allowed Secured Claims of Ford Motor Credit Company against CNI and CNF.

b.    *Impairment and Voting*:  This Class is not impaired under and is conclusively presumed to have accepted the Plan, and CNI is not required to solicit acceptance from the holder of the Claim in this Class.

c.    *Treatment*: On the Effective Date, (i) CNI shall cure any default on the Class 4 Allowed Secured Claim of Ford Motor Credit Company that occurred before or after the commencement of the Cases, other than a default of a kind specified in Bankruptcy Code section 365(b)(2) or of a kind that Bankruptcy Code section 365(b)(2) expressly does not require to be cured; (ii) the maturity of such claim shall be reinstated as such maturity existed before any such default; (iii) CNI shall compensate Ford Motor Credit Company for any damages incurred as a result of any reasonable reliance by Ford Motor Credit Company on any contractual provision or applicable law that entitled Ford Motor Credit Company to demand or receive accelerated payment of such claim after the occurrence of any default; (iv) if such claim arose from any failure to perform a nonmonetary obligation, CNI shall compensate Ford Motor Credit Company for any actual pecuniary loss incurred as a result of such failure; and (v) the legal, equitable, or contractual rights to which such claim entitles Ford Motor Credit Company shall not otherwise be altered.

5.    Class 5—Allowed Secured Claim of Ally Against CNI

a.    *Classification*:  Class 5 consists of the Allowed Secured Claim of Ally against CNI.

b.    *Impairment and Voting*:  This Class is not impaired under and is conclusively presumed to have accepted the Plan, and CNI is not required to solicit acceptance from the holder of the Claim in this Class.

c.    *Treatment*: On the Effective Date, (i) CNI shall cure any default on the Class 5 Allowed Secured Claim of Ally that occurred before or after the commencement of the Cases, other than a default of a kind specified in Bankruptcy Code section 365(b)(2) or of a kind that Bankruptcy Code section 365(b)(2) expressly does not require to be cured; (ii) the maturity of such claim shall be reinstated as such maturity existed before any such default; (iii) CNI shall compensate Ally for any damages incurred as a result of any reasonable reliance by Ally on any contractual provision or applicable law that entitled Ally to demand or receive accelerated payment of such claim after the occurrence of any default; (iv) if such claim arose from any failure to perform a nonmonetary obligation, CNI shall compensate Ally for any actual pecuniary loss incurred as a result of such failure; and (v) the legal, equitable, or contractual rights to which such claim entitles Ally shall not otherwise be altered.

6.    Class 6—Allowed Secured Claim of Caterpillar Financial Services Corp. Against CNM

a.    *Classification*: Class 6 consists of the Allowed Secured Claim of Caterpillar Financial Services Corp. against CNM.

b.    *Impairment and Voting*:  This Class is not impaired under and is conclusively presumed to have accepted the Plan, and CNM is not required to solicit acceptance from the holder of the Claim in this Class.

c.    *Treatment*: On the Effective Date, (i) CNM shall cure any default on the Class 6 Allowed Secured Claim of Caterpillar Financial Services Corp. that occurred before or after the commencement of the Cases, other than a default of a kind specified in Bankruptcy Code section 365(b)(2) or of a kind that Bankruptcy Code section 365(b)(2) expressly does not require to be cured; (ii) the maturity of such claim shall be reinstated as such maturity existed before any such default; (iii) CNM shall compensate Caterpillar Financial Services Corp. for any damages incurred as a result of any reasonable reliance by Caterpillar Financial Services Corp. on any contractual provision or applicable law that entitled Caterpillar Financial Services Corp. to demand or receive accelerated payment of such claim after the occurrence of any default; (iv) if such claim arose from any failure to perform a nonmonetary obligation, CNM shall compensate Caterpillar Financial Services Corp. for any actual pecuniary loss incurred as a result of such failure; and (v) the legal, equitable, or contractual rights to which such claim entitles Caterpillar Financial Services Corp. shall not otherwise be altered.

7.    Class 7—Allowed Unsecured Claims Against CNI

a.    *Classification*:  Class 7 consists of Allowed Unsecured Claims against CNI.

b.    *Impairment and Voting*:  This Class is impaired under and holders of Allowed Claims in this Class are entitled to vote to accept or reject the Plan.

c.    *Treatment*: Holders of Class 7 Claims will receive, in full, complete and final satisfaction and release of their Allowed Unsecured Claims, their Pro Rata share of:

i.    the CNI portion of the Unsecured Claim Annual Payment; and

16

ii.     net proceeds from any Avoidance Actions of a Debtor against which such holder has a Claim.

For as long as the CN Trust is in existence, the Debtors will make the Unsecured Claim Annual Payment to the CN Trust on June 1 of the applicable year.  The CN Trustee shall make a distribution to Class 7 Allowed Unsecured Claims at least annually and within thirty days of receiving the foregoing payments from the Debtors.  Upon dissolution of the CN Trust, the Debtors shall make any remaining distributions to Class 7 Creditors directly on or before July 1 of the applicable year.

Until the Debtors have made all such payments, the CN Trustee shall have the right to review the books and records of the Reorganized Debtors on an annual basis.

8.     <u>Class 8—Allowed Unsecured Claims Against CNM</u>

a.     *Classification*:  Class 8 consists of Allowed Unsecured Claims against CNM.

b.     *Impairment and Voting*:  This Class is impaired under and holders of Allowed Claims in this Class are entitled to vote to accept or reject the Plan.

c.     *Treatment*: Holders of Class 8 Claims will receive, in full, complete and final satisfaction and release of their Allowed Unsecured Claims, their Pro Rata share of:

i.     the CNM portion of the Unsecured Claim Annual Payment; and

ii.     net proceeds from any Avoidance Actions of a Debtor against which such holder has a Claim.

For as long as the CN Trust is in existence, the Debtors will make the Unsecured Claim Annual Payment to the CN Trust on June 1 of the applicable year.  The CN Trustee shall make a distribution to Class 8 Allowed Unsecured Claims at least annually and within thirty days of receiving the foregoing payments from the Debtors.  Upon dissolution of the CN Trust, the Debtors shall make any remaining distributions to Class 8 Creditors directly on or before July 1 of the applicable year.

9.     <u>Class 9—Allowed Unsecured Claims Against CNF</u>

a.     *Classification*:  Class 9 consists of Allowed Unsecured Claims against CNF.

b.     *Impairment and Voting*:  This Class is impaired under and holders of Allowed Claims in this Class are entitled to vote to accept or reject the Plan.

c.     *Treatment*: Holders of Class 9 Claims will receive, in full, complete and final satisfaction and release of their Allowed Unsecured Claims, their Pro Rata share of:

i.     the CNF portion of the Unsecured Claim Annual Payment; and

ii.      net proceeds from any Avoidance Actions of a Debtor against which such holder has a Claim.

For as long as the CN Trust is in existence, the Debtors will make the Unsecured Claim Annual Payment to the CN Trust on June 1 of the applicable year. The CN Trustee shall make a distribution to Class 9 Allowed Unsecured Claims at least annually and within thirty days of receiving the foregoing payments from the Debtors. Upon dissolution of the CN Trust, the Debtors shall make any remaining distributions to Class 9 Creditors directly on or before July 1 of the applicable year.

10.      Class 10--Convenience Claims Against Triem

Class 10 consists of two Unsecured Claims against Triem totaling $172.94. This Class is not impaired under and is conclusively presumed to have accepted the Plan, and Triem is not required to solicit acceptance from the holder of the Claim in this Class. These Claims will receive Cash equal to the Allowed amount of such Claims on the Effective Date.

11.      Class 11—Intercompany Claims

a.      *Classification*: Class 11 consists of Intercompany Claims.

b.      *Impairment and Voting*: This Class is impaired under and holders of Claims in this Class are entitled to vote to accept or reject the Plan.

c.      *Treatment*: After Classes 1 through 10 are paid pursuant to the terms of the Plan, each holder of an Intercompany Claim shall be entitled to receive payment from the applicable Debtor pursuant to terms to be mutually agreed upon between the applicable Debtor and such holder, in full and complete satisfaction of and in exchange for such Intercompany Claim.

12.      Class 12—Equity Interests

a.      *Classification*: Class 12 consists of Equity Interests in the Debtors.

b.      *Impairment and Voting*: This Class is not impaired under and is conclusively presumed to have accepted the Plan, and the Debtors are not required to solicit acceptance from the holders of Equity Interests.

c.      *Treatment*: The holders of Equity Interests in each of the Debtors shall retain their Equity Interests, as modified by the terms of the Plan. Holders of Equity Interests shall not be entitled to receive any payment or distribution from the Debtors on account of such Equity Interests until all payments under the Plan to Classes 1 through 12 have been made.

B.      *No Substantive Consolidation*

Although the Plan is presented as a joint plan of reorganization, this Plan does not provide for the substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Nothing in this Plan

or the Disclosure Statement shall constitute or be deemed to constitute an admission that any one or all of the Debtors is subject to or liable for any Claims against any other Debtor.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

D.    *Confirmation Pursuant to Bankruptcy Code Section 1129(b)*

The Debtors shall seek Confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) with respect to Class 2 or 3 if they vote to reject the Plan.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to Bankruptcy Code section 1129(b) requires modification.

E.    *Elimination of Vacant Classes*

Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

## ARTICLE IV
## MEANS FOR THE PLAN'S IMPLEMENTATION

A.    *Debtors' Actions*

On the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Court in all respects, and the Reorganized Debtors shall be authorized and directed to take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

B.    *Sources of Consideration for Plan Distributions*

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be obtained from the Reorganized Debtors' Cash balances, including Cash from operations, from financing or other capital investment to be obtained by the Debtors, and from net proceeds from the sale of any assets of the Reorganized Debtors.  Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors, with the exception of payments to be made by the CN Trustee as provided herein.

C.    *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, each Debtor shall continue to exist after the Effective Date as a separate legal entity, with all the powers of a corporation or limited liability company, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

D.     *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each of the Debtors' estates shall vest with the applicable Debtor, free and clear of all Liens, Claims, charges, or other encumbrances except as otherwise provided herein.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.     *Entry Into Agreements and Other Corporate Actions By the Debtors*

On the Effective Date, the Debtors shall enter into the CN Trust Agreement, the BOW Amended Loan Documents and all other agreements necessary to effectuate the Plan.  Each of the officers of the Debtors is authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

F.     *Directors and Officers of the Reorganized Debtors*

On the Effective Date, all managers, directors, and other members of the existing boards or governance bodies of the Debtors, as applicable, shall remain in place.

G.     *Exemption from Certain Taxes and Fees*

Pursuant to Bankruptcy Code section 1146(a), any transfers of property pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. Such exemption under Bankruptcy Code section 1146(a) specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien, or other security interest; (2) the making or assignment of any lease or sublease; (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation,

restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any transfer occurring under the Plan.

### H.    Preservation of Causes of Action

Except as otherwise provided herein, and with the exception of the Avoidance Actions which are being transferred to the CN Trust and preserved for the benefit of Class 7, 8 and 9 Creditors, in accordance with Bankruptcy Code section 1123(b) and as otherwise may be set forth in the Plan, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation of the Plan.  Except as otherwise provided herein, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.  For the avoidance of doubt, the Debtors may not pursue any Cause of Action against BOW that has been released or otherwise extinguished pursuant to the cash collateral orders entered in the Cases, any other order entered by the Court in the Cases, any agreement between the Debtors and BOW, or applicable law.

### I.    Cancellation of Agreements

On the Effective Date, except as otherwise specifically provided for in the Plan, and with the exception of the BOW Loan Documents, the obligations under any document, note, bond, indenture, warrant or other instrument directly or indirectly evidencing or creating any indebtedness or obligation of the Debtors shall be cancelled and the Debtors shall not have any continuing obligations thereunder.

### J.    Assumption and Rejection of Executory Contracts and Unexpired Leases

The Debtors shall file and seek to have heard contemporaneously with the Confirmation Hearing a motion or motions seeking the Bankruptcy Court's approval to assume or reject any Executory Contracts and Unexpired Leases to which Debtors are parties.

The Debtors need not seek to assume any Executory Contracts entered into since the Petition Date, and the Debtors intend to continue to perform under such Executory Contracts in the ordinary course of their businesses.

## ARTICLE V
## THE CN TRUST

A.  *Creation and Governance of the CN Trust*

On the Effective Date, the CN Trustee shall execute the CN Trust Agreement and take all steps necessary to establish the CN Trust in accordance with the Plan and the CN Trust Agreement. The Debtors shall be deemed to have transferred to the CN Trust all of their rights, title and interest in and to all of the Avoidance Actions, and the Debtors shall transfer to the CN Trust the CN Trust Initial Cash.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  The CN Trust shall be governed by the CN Trust Agreement and administered by the CN Trustee.  In the event of any conflict between the terms of the Plan and the terms of the CN Trust Agreement, the terms of the CN Trust Agreement shall govern.

B.  *Purpose of the CN Trust*

The CN Trust shall be established for the purpose of liquidating the CN Trust Assets, distributing such assets, and reconciling and objecting to, if necessary, Disputed Unsecured Claims, and is intended to qualify as a liquidation trust pursuant to Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary and consistent with, the purpose of the CN Trust.

C.  *CN Trust Agreement and Funding the CN Trust*

The CN Trust Agreement generally will provide for, among other things: (a) the payment of the CN Trust expenses; (b) the payment of other reasonable expenses of the CN Trust, including the cost of pursuing the Avoidance Actions; (c) the retention of counsel, accountants, financial advisors or other Professionals and the payment of their reasonable compensation; (d) the investment of Cash by the CN Trustee within certain limitations, including those specified in the Plan; (e) the orderly liquidation of the CN Trust Assets; and (f) litigation of the Avoidance Actions, which may include the prosecution, settlement, abandonment or dismissal of any such Avoidance Actions.

The CN Trust shall be funded from the CN Initial Cash and proceeds of the other CN Trust Assets.  For the avoidance of doubt, the CN Trust costs and expenses shall be paid from the CN Trust Assets in accordance with the Plan and CN Trust Agreement, and the Debtors shall have no obligation for the costs or expenses of the CN Trust.

D.  *CN Trustee*

The CN Trustee shall be selected by the Committee and shall be appointed on the Effective Date.  The CN Trustee shall be compensated on terms acceptable to the Committee.  The CN

Trustee shall not have voting rights with respect to the governance of the CN Trust and shall retain professionals approved by consent of the CN Trust Advisory Board.

The CN Trustee shall be the exclusive trustee of the assets of the CN Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(4). The powers, rights and responsibilities of the CN Trustee shall be specified in the CN Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this Article V. The CN Trustee shall hold and distribute the CN Trust Assets in accordance with the provisions of the Plan and the CN Trust Agreement.

E.     *CN Trust Advisory Board*

The CN Trust shall be governed by the CN Trust Advisory Board as set forth in the CN Trust Agreement. The members of the CN Trust Advisory Board shall not be entitled to compensation for service on the CN Trust Advisory Board.

F.     *CN Trust Interests*

CN Trust Interests shall be passive and shall not have voting, consent or other shareholder-like control rights with respect to the CN Trust. CN Trust Interests may be structured not to be securities and may or may not be transferable, in each case subject to applicable law and as otherwise determined by the CN Trust Advisory Board as provided in the CN Trust Agreement.

G.     *Cooperation of the Reorganized Debtors*

To effectively investigate, prosecute, compromise, and/or settle the Avoidance Actions on behalf of the CN Trust, the CN Trustee and its counsel may require reasonable access to the Debtors' and Reorganized Debtors' documents, information and work product relating to the CN Trust Assets, and, in such event, must be able to exchange such information with the Reorganized Debtors on a confidential basis and as protected by the common interest privilege without being restricted by or waiving any applicable work product, attorney-client, or other privilege. Accordingly, the CN Trust Agreement shall provide for the CN Trustee to have reasonable access to copies of the Debtors' and Reorganized Debtors' records and information relating to the CN Trust Assets, including, electronic records, documents or work product related to the Avoidance Actions, to the extent consistent with applicable law, but shall further provide that any records or information so shared shall continue to be protected by the attorney-client, work product, or common interest privilege and the CN Trustee's access thereto shall not waive any of the Debtors' or the Reorganized Debtors' privileges or similar protections referenced in this paragraph. The CN Trust Agreement shall also provide that the CN Trustee may not waive any privileges referenced in this paragraph belonging to or shared with the Debtors or the Reorganized Debtors in respect of such records and documents, and that the Debtors and the Reorganized Debtors shall be provided with reasonable notice and an opportunity to protect their rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure.

The Reorganized Debtors shall preserve all records, documents or work product (including all electronic records, documents or work product) related to the Avoidance Actions until the earlier of (1) such time as the CN Trustee notifies the Reorganized Debtors in writing that such

records are no longer required to be preserved, or (2) the termination of the CN Trust. The Reorganized Debtors shall reasonably cooperate with the CN Trustee with reasonable requests for interviews of current and former officers, directors, employees, and professionals of the Debtors in order to facilitate prosecution of the Avoidance Actions; provided, however, that the Reorganized Debtors shall be reimbursed for any reasonable and documented out-of-pocket expenses in connection with such cooperation.

*H.*     *Fiduciary Duties*

The CN Trustee and each member of the CN Trust Advisory Board shall owe fiduciary duties to the holders of CN Trust Interests of the type that an official committee of unsecured creditors would owe to unsecured creditors, and shall have in place under the CN Trust Agreement applicable indemnity and waiver provisions to protect the CN Trustee and each member of the CN Trust Advisory Board from being personally liable for any claims or causes of action asserted by the holders of CN Trust Interests, except for any clams of fraud, gross negligence, or willful misconduct.

*I.*     *United States Federal Income Tax Treatment of the CN Trust*

For all U.S. federal income tax purposes, the CN Trustee, the CN Trust beneficiaries and all other parties shall treat the transfer of the CN Trust Assets to the CN Trust for the benefit of the CN Trust beneficiaries, whether their Claims are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the CN Trust (but only at such time as actually transferred) as (i) a transfer of the CN Trust Assets (subject to any obligations relating to such CN Trust Assets) directly to the CN Trust beneficiaries and, to the extent the CN Trust Assets are allocable to Disputed Claims that are the responsibility of the CN Trust to resolve, to any Disputed Claims reserve established by the CN Trustee, followed by (ii) the transfer by the CN Trust beneficiaries to the CN Trust of the CN Trust Assets (other than the CN Trust Assets allocable to any the Disputed Claims reserve) in exchange for CN Trust Interests. Accordingly, the CN Trust beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the CN Trust Assets (other than such CN Trust Assets as are allocable to any disputed Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

Subject to contrary definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the receipt by the CN Trustee of a private letter ruling if the CN Trustee so requests, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the CN Trustee), the CN Trustee may (1) timely elect to treat any Disputed Claims reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and (2) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. The CN Trust, the CN Trustee, and the CN Trust beneficiaries shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

*K.*     *Distributions from the CN Trust; Withholding*

The CN Trust Advisory Board in the exercise of its business judgment may elect to withhold proceeds from the prosecution or settlement of Avoidance Actions to pay reasonable projected costs and expenses of the CN Trust.

The CN Trustee may deduct and withhold and pay to the appropriate taxing authority all amounts required to be deducted or withheld pursuant to the Tax Code or any provision of any state, local or non-U.S. tax law with respect to any payment or distribution to the CN Trust beneficiaries. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental authority, including income, withholding and other tax obligations, on account of such distribution. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such CN Trust beneficiaries for all purposes of this Agreement. The CN Trustee shall be authorized to collect such tax information from the CN Trust beneficiaries (including social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and the CN Trust Agreement. As a condition to receive distributions under the Plan, all CN Trust beneficiaries will need to identify themselves to the CN Trustee and provide tax information and the specifics of their holdings, to the extent the CN Trustee deems appropriate, including an IRS Form W-9 or, in the case of CN Trust beneficiaries that are not United States persons for federal income tax purposes, certification of foreign status on an applicable IRS Form W-8. This identification requirement may, in certain cases, extend to holders who hold their securities in street name. The CN Trustee may refuse to make a distribution to any CN Trust beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a CN Trust beneficiary, the CN Trustee shall make such distribution to which the CN Trust beneficiary is entitled, without interest; and, provided, further, that, if the CN Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the CN Trustee is later held liable for the amount of such withholding, such holder shall reimburse the CN Trustee for such liability. If the holder fails to comply with such a request for tax information within 180 days, the CN Trustee shall file a document with the Bankruptcy Court that will provide twenty-one (21) days' notice before such distribution shall be deemed an unclaimed distribution and treated in accordance with Article VII.

## L.    *Dissolution of the CN Trust*

The CN Trustee and the CN Trust shall be discharged or dissolved, as the case may be, at such time as (1) the CN Trustee determines that the pursuit of additional Avoidance Actions is not likely to yield sufficient additional proceeds to justify further pursuit of such claims and (2) all distributions of CN Trust Assets required to be made by the CN Trustee have been made, but in no event shall the CN Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two (2) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the CN Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the CN Trust Assets. Upon dissolution of the CN Trust, the CN Trustee shall turn over to the

Debtors any then existing CN Trust Assets and all information necessary to make distributions to Class 6 Unsecured Creditors and the Debtors shall make any remaining distributions to Class 6 Unsecured Creditors

## M.     *Tax Reporting*

The CN Trustee shall file tax returns for the CN Trust treating the CN Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The CN Trustee also will annually send to each CN Trust beneficiary a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit (including the receipts and expenditures of the CN Trust) as relevant for U.S. federal income tax purposes and will instruct all such CN Trust beneficiaries to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such CN Trust beneficiary's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The CN Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the CN Trust that is required by any Governmental Unit. The CN Trustee shall be responsible for payment, out of the CN Trust Assets, of any Taxes imposed on the CN Trust or the CN Trust Assets, including any disputed Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in any disputed Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such Taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the CN Trustee as a result of the resolution of such Disputed Claims. The CN Trustee may request an expedited determination of Taxes of the CN Trust, including any Disputed Claims reserve, under Bankruptcy Code section 505(b), for all tax returns filed for, or on behalf of, the CN Trust for all taxable periods through the dissolution of the CN Trust.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.     *Distributions – Generally*

Reorganized Debtors or, in the case of Class 7, 8 and 9 Unsecured Claims, the CN Trustee shall make all distributions required by the Plan.

## B.     *Distributions of Cash*

Any payment of Cash made by Reorganized Debtors or the CN Trustee pursuant to the Plan may be made at the option of such party either by check drawn on a domestic bank or by wire transfer from a domestic bank.

## C.     *Distributions Free and Clear*

Except as otherwise provided herein, any distributions or transfers by or on behalf of the Debtors under the Plan, including, but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any liens, claims, and encumbrances, and no other Entity shall have any interest — legal, beneficial, or otherwise — in assets transferred pursuant to the Plan.

D.      *Timing of Distributions*

Unless otherwise provided herein, any distribution to be made by the Reorganized Debtors or the CN Trustee shall be made at the time provided in Article II or Article III of this Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

E.      *Delivery of Distributions*

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents. The holder must notify the Reorganized Debtors in writing of a change of address or, in the case of holders of transferred Claims only, by the filing of a proof of claim or statement pursuant to Bankruptcy Rule 3001(e) by such holder or transferee that contains an address for such holder different than the address of such holder as set forth in the Schedules. The Reorganized Debtors and the CN Trustee shall not be liable for any distribution sent to the address of record of a holder in the absence of the written change thereof as provided herein.

F.      *Undeliverable and Unclaimed Distributions*

If any Claim holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the holder notifies the Reorganized Debtors or the CN Trustee, as appropriate, in writing of such holder's then-current address, at which time all missed distributions shall, subject to the final sentence of this paragraph, be made as soon as is practicable to such holder, without interest. Checks issued by the Reorganized Debtors or the CN Trustee in respect of Allowed Claims shall be null and void if not negotiated within one hundred and sixty (60) days after the date of issuance thereof. After such date, all such distributions shall be deemed unclaimed property under Bankruptcy Code section 347(b) and shall become unencumbered Cash of the Reorganized Debtors or the CN Trust.

G.      *Setoffs*

To the extent permitted under applicable law, the Reorganized Debtors or the CN Trustee may set off against or recoup from any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the claims, rights and causes of action of any nature that one of the Debtors or the CN Trustee has asserted in writing against the holder of such Allowed Claim, including, without limitation, any rights under Bankruptcy Code section 502(d), and in the absence of a written objection by such holder of an Allowed Claim within thirty (30) days of the delivery of such a writing from such Debtor, it will be conclusively presumed that the requirements for disallowance of a Claim under Bankruptcy Code section 502(d) or setoff or recoupment under applicable law have been satisfied. Neither the failure to affect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by a Debtor or the CN Trustee of any such claims, rights and causes of action that such Debtor may possess against such holder.

H.     *Application of Distributions*

Distributions to any holder of an Allowed Claim shall be applied first to the satisfaction of the principal portion (as determined for federal income tax purposes) of any such Claim and thereafter to the remaining portion of such Allowed Claim, if any.

I.     *Withholding and Reporting Requirements*

In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtors or the CN Trustee, as applicable, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit on account of such distribution, including withholding tax obligations in respect of in-kind (non-Cash) distributions.

J.     *No Post-Petition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim for purposes of distributions under this Plan.

K.     *Distributions after Allowance*

Notwithstanding any other provision herein, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on any portion of that Claim unless and until and only to the extent such Claim becomes Allowed.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Debtors or the CN Trustee, as applicable, Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.  On the Effective Date, the Debtors and the CN Trustee, as applicable, may establish one or more reserves for any such Claims that have not yet been Allowed.

## ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED AND DISPUTED CLAIMS

A.     *Allowance of Claims and Equity Interests*

After the Effective Date, the Reorganized Debtors and, in the case of Class 7, 8 and 9 Unsecured Claims, the CN Trustee, shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan.  Except as expressly provided

in the Plan or in any order entered in the Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Cases allowing such Claim.  All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B.      *Prosecution of Objections Claims*

Reorganized Debtors or, in the case of Class 7, 8 and 9 Unsecured Claims, the CN Trustee shall have the right to make, file and prosecute objections to Claims.  A copy of each objection shall be served upon the holder of the Claim to which the objection is made as soon as practicable (unless such Claim was already the subject of a valid objection by the Debtors), but in no event shall the service of such an objection be later than one (1) year after the Effective Date, unless such date is extended by order of the Bankruptcy Court.  All objections shall be litigated to a Final Order except to the extent such objection is withdrawn, or such objection is compromised, settled or otherwise resolved.

C.      *Estimation of Claims and Equity Interests*

The Debtors or, in the case of Class 7, 8 and 9 Unsecured Claims, the CN Trustee may, at any time, request the Bankruptcy Court to estimate any Claim pursuant to Bankruptcy Code section 502(c) for any reason, regardless of whether the Debtors or any other party previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim, at any time, including during litigation concerning any objection to such Claim.  In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on the Allowed amount of such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Allowed amount of such Claim, a Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

D.      *Adjustment to Claims Register without Objection*

Any Claim or Equity Interest that has been paid or satisfied, or any Claim or Equity Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtors or CN Trustee, as applicable, without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.      *Disallowance of Certain Claims*

Any Claims held by Entities from which property is recoverable under Bankruptcy Code section 542, 543, 550 or 553 or that is a transferee of a transfer avoidable under Bankruptcy Code section 544, 545, 547, 548 or 549, shall be deemed disallowed pursuant to Bankruptcy Code section 502(d), and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the

Debtors by that Entity have been turned over or paid to the Reorganized Debtors or CN Trustee, as applicable.  Except as provided herein, in an order of the Bankruptcy Court or otherwise agreed, any and all proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless at or prior to the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.

*F.      Amendments to Claims*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Reorganized Debtors or, in the case of Class 6 Unsecured Claims, the CN Trustee.  Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

*G.      Single Satisfaction Rule*

In no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed one hundred percent (100%) of the underlying Allowed Claim plus applicable interest, if any.

## VIII
## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

*A.      Conditions Precedent to Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or occur in conjunction with the occurrence of the Effective Date (or shall be waived pursuant to Article VIII.B):

1.      The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors.

2.      All actions, documents, certificates and agreements necessary to implement this Plan have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

3.      All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions provided for in this Plan have been obtained, are not subject to unfulfilled conditions, and are in full force and effect, and all applicable waiting periods have expired without any action having been taken by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

4.      All statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full.

5.    The CN Trust shall have been established.

6.    The BOW Amended Loan Documents shall have been signed and, as necessary, recorded.

## B.    *Waiver of Conditions*

The conditions to Consummation of the Plan set forth in this Article, other than the condition that the Bankruptcy Court has entered the Confirmation Order, may be waived, in whole or in part, by the Debtors, in each case without further notice, leave, hearing or order of the Bankruptcy Court or any formal action and, thereupon, Consummation may occur, subject to the terms of the Bankruptcy Code and the Bankruptcy Rules.

## C.    *Substantial Consummation*

"Substantial consummation" of the Plan, as defined by Bankruptcy Code section 1102(2), shall be deemed to occur on the Effective Date.

## D.    *Effect of Non-Occurrence of Conditions to Consummation*

If the Effective Date does not occur, nothing contained in this Plan shall: (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, or Causes of Action; (2) prejudice in any manner the rights of the Debtors or any other Entity; or (3) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

**ARTICLE IX**
**SETTLMENT, RELEASES,**
**INJUNCTION AND RELATED PROVISIONS**

## A.    *Discharge of Claims and Termination of Interests*

Pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors) and Equity Interests of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or Equity Interests relate to services performed by employees or other service providers of the Debtors prior to the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant

to Bankruptcy Code section 501; (b) a Claim or Equity Interest based upon such debt, right, or Interest is allowed pursuant to Bankruptcy Code section 502; or (c) the holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors with respect to any Claim or Equity Interest that existed immediately before or on account of the Filing of the Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan.  Subject to the terms and conditions of the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the occurrence of the Effective Date.

B.    *Debtor Release*

**EFFECTIVE AS OF THE EFFECTIVE DATE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, PURSUANT TO BANKRUPTCY CODE SECTION 1123(B), ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THEIR ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER (INCLUDING ANY AVOIDANCE ACTIONS), WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISITNG OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS, THAT THE DEBTORS, THE REORGANIZED DEBTORS OR THEIR ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR EQUITY INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART: (I) THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS, AND THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, ENTRY INTO, OR FILING OF THE PLAN; (II) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT OR THE PLAN; (III) THE CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; OR (IV) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A CRIMINAL ACT TO THE EXTENT SUCH ACT OR OMISSION IS DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR A CRIMINAL ACT.**

C.    *Exculpation*

**EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW AND WITHOUT AFFECTING OR LIMITING THE DEBTOR RELEASE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CASES, THE DISCLOSURE STATEMENT, THE PLAN, OR ANY TRANSACTION, CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT OR THE PLAN, THE FILING OF THE CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR PROFESSIONAL MALPRACTICE, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF, AND DISTRIBUTION OF, CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING OR IN THE PLAN, OTHER THAN WITH RESPECT TO THE REORGANIZED DEBTORS THEMSELVES, THE EXCULPATION SET FORTH ABOVE SHALL NOT RELEASE OR BE AN EXCULPATION WITH RESPECT TO ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

D.   *Injunction*

**EFFECTIVE AS OF THE EFFECTIVE DATE, PURSUANT TO BANKRUPTCY CODE SECTION 524(A), TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE**

**DEBTORS, THE REORGANIZED DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING OR IN THE PLAN, THE INJUNCTION SET FORTH ABOVE SHALL NOT ENJOIN ANY LITIGATION CLAIMS AS PROVIDED IN THE PLAN.**

**ARTICLE X**
**MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN**

*A.    Modification and Amendments*

Subject to the limitations contained herein, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their right to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B.    Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan made prior to Confirmation are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts or Unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Equity Interests; (ii) prejudice in any manner the rights of the Debtors, creditors, or any other Entity, including the holders of Claims or Equity Interests; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Pursuant to Bankruptcy Code sections 105(c) and 1142 and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Cases and all Entities with respect to all matters related to the Cases, the Debtors and this Plan to the fullest extent legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests; provided that, for the avoidance of doubt, the Bankruptcy Court's retention of jurisdiction with respect to such matters shall not preclude the Debtors or the Reorganized Debtors, as applicable, from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3.    resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure costs pursuant to Bankruptcy Code section 365, or any other matter related to such Executory Contract or Unexpired Lease; and (b) any dispute regarding whether a contract or lease is or was executory or expired;

4.      adjudicate controversies, if any, with respect to distributions to holders of Allowed Claims;

5.      hear, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, provided that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

6.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

7.      issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

8.      resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification and other provisions contained in ARTICLE X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

9.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

10.     determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, or the Confirmation Order;

11.     hear and determine the Avoidance Actions;

12.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.     hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

14.     hear any other matter not inconsistent with the Bankruptcy Code and the jurisdiction of the Bankruptcy Court; and

15.     enter an order concluding or closing the Cases.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

*A.      Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, and any and all holders of Claims or Equity Interests (regardless of whether such Claims or Equity Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan and each Entity acquiring property under the Plan or the Confirmation Order and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

B.     *Severability*

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

C.     *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan

D.     *Entire Agreement*

Except as otherwise described herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and the Confirmation Order.

E.     *Successors and Assigns*

This Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, including, without limitation, the Reorganized Debtors.  The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

F.    *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the holders of Claims or Equity Interests or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan, nor anything contained in this Plan, will constitute an admission by the Debtors that any such contract or lease is or is not an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtors or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, Avoidance Actions, or other rights of the Debtors or the Reorganized Debtors under any executory or non-executory contract or unexpired or expired lease.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

G.    *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; provided, however, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

H.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Connecticut, without giving effect to the principles of conflict of laws that would require or permit the application of the law of another jurisdiction, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, that that corporate governance matters relating to CNF shall be governed by the laws of the State of Florida.

I.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

J.      *Dissolution of the Committee*

On the Effective Date, the Committee shall dissolve automatically, provided, however, that following the Effective Date, the Committee shall continue to have standing and a right to be heard with respect to (i) Claims and/or applications for compensation by Professionals and (ii) any appeals of the Confirmation Order that remain pending as of the Effective Date to which the Committee is a party. Upon dissolution of the Committee, all current and former members of the Committee and their respective officers, employees, counsel, advisors, and agents, shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Cases, and the retention or employment of the Committee's attorneys, accountants, and other agents shall terminate, except as otherwise provided in this Plan. The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the members of the Committee or advisors to the Committee after the Effective Date, except for the limited purposes identified above.

K.      *Closing of Cases*

The Reorganized Debtors shall, promptly after the full administration of the Cases, file with the Bankruptcy Court all documents required under Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Cases.

L.      *Plan Exhibits and Schedules*

All exhibits and schedules to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

M.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or Reorganized Debtors, BOW, and the Committee shall be served on:


DEBTORS:            CLINTON NURSERIES, INC.; CLINTON NURSERIES OF FLORIDA, INC.; CLINTON NURSERIES OF MARYLAND, INC.; TRIEM LLC
                   c/o Clinton Nurseries, Inc.
                   517 Pond Meadow Road
                   Westbrook, Connecticut  06498
                   Attn: David Richards, President

With a copy to:    Eric Henzy, Esq.
                   Zeisler & Zeisler, P.C.
                   10 Middle St, 15th Floor
                   Bridgeport, CT 06604

BOW:                          BANK OF THE WEST
                              James Salisbury
                              Vice President
                              Bank of the West SAD
                              500 Capitol Mall, Suite 1200
                              Sacramento, CA 95814

With a copy to:               Dennis Boesen
                              Senior Vice President
                              Managed Assets
                              Bank of the West
                              13220 California Street
                              Omaha, NE 68154

With a copy to:               William B. Freeman, Esq.
                              Katten Muchin Rosenman, LLP
                              515 S. Flower St.  Suite 1000
                              Los Angeles, CA.  90071-2212

With a copy to:               Irve J. Goldman, Esq.
                              Pullman & Comley LLC
                              850 Main Street   P.O. Box 7006
                              Bridgeport, CT   06601-7006

COMMITTEE:                    Kenneth Hebert, Chair
                              c/o Nursery Supplies, Inc.
                              1415 Orchard Drive
                              Chambersburg, PA  17701

With a copy to:               Jeffrey M. Sklarz, Esq.
                              Green & Sklarz LLC
                              700 State Street, Suite 100
                              New Haven, CT 06511

Dated: October 28, 2019

                                   Respectfully submitted,

                                   CLINTON NURSERIES, INC.

                                   By:     /s/ David Richards
                                   Its:    President

                                   CLINTON NURSERIES OF MARYLAND, INC.

By:    /s/ David Richards
Its:    President

CLINTON NURSERIES OF FLORIDA, INC.

By:    /s/ David Richards
Its:    President

TRIEM LLC

By:    /s/ David Richards
Its:    Managing Member