**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CHAPTER | 11 |
| | ) | | |
| CLINTON NURSERIES, INC.; CLINTON | ) | CASE No. | 17-31897 (JJT) |
| NURSERIES OF MARYLAND, INC.; | ) | CASE No. | 17-31898 (JJT) |
| CLINTON NURSERIES OF FLORIDA, | ) | CASE No. | 17-31899 (JJT) |
| INC.; and TRIEM LLC, | ) | CASE No. | 17-31900 (JJT) |
| DEBTORS. | ) | (Jointly Administered under Case No. | |
| | ) | 17-31897 (JJT)) | |
| | ) | | |
| | ) | RE: ECF Nos. | 1148, 1166 |

**MEMORANDUM OF DECISION ON THE**
**REORGANIZED DEBTORS' MOTION FOR ENTRY OF**
**FINAL DECREE AND ORDER CLOSING THE CHAPTER 11 CASES**

I.    INTRODUCTION

Before the Court is the Motion for Entry of Final Decree and Order Closing the Chapter 11 Cases (the "Motion", ECF No. 1148) of the related Reorganized Debtors, Clinton Nurseries, Inc.; Clinton Nurseries of Maryland, Inc.; Clinton Nurseries of Florida, Inc.; and Triem LLC (collectively, the "Reorganized Debtors"). Therein, pursuant to 11 U.S.C. § 350 and Federal Rule of Bankruptcy Procedure 3022, the Reorganized Debtors proffered that the Plan has been substantially consummated and that any "required distributions have been made in accordance with the Plan and all documents and agreements necessary to implement the Plan were [duly] executed in accordance with the terms thereof" and, therefore, entry of a final decree is appropriate. Motion for Entry of Final Decree, p. 5. Critically, the Reorganized Debtors also assert that, as of "the Effective Date[,] the bankruptcy estates in these cases have no property [to administer] and the Reorganized Debtors have no duties to perform with respect to

the bankruptcy estates . . . [a]ll deposits required by the Plan have been made . . . [and] [a]ny property proposed to be transferred pursuant to the Plan has been transferred." *Id.*, p. 10.

In response, the United State Trustee (the "UST") objects to the entry of a final decree closing the Debtors' Chapter 11 cases because they are not "fully" administered "as evidenced by the unresolved Quarterly UST Fee Appeal and the 29 Active Adversary Proceedings that are currently being prosecuted" by the CN Trust before this Court. United States Trustee's Objection to the Debtor's Application for Entry of a Final Degree Closing the Chapter 11 Cases (the "Objection"), p. 4, ECF No. 1166.

II.   BACKGROUND

After a hearing on January 3, 2020 (the "Confirmation Hearing", ECF No. 1182), this Court confirmed the Reorganized Debtors' Second Amended Chapter 11 Plan (the "Plan", ECF No. 1194) on January 9, 2020. During the Confirmation Hearing, the Court heard lengthy argument as to the contemplated post-confirmation status of numerous pending adversary proceedings and the Debtors' pending appeal regarding the constitutionality of Quarterly UST Fees. In tandem with the Order confirming the Plan, the Court issued a second, supplemental Order (the "Supplemental Order", ECF No. 1095) wherein it approved the creation of a special litigation trust (the "CN Trust") as outlined by the Plan. The CN Trust, which would assume and pursue all outstanding adversary proceedings previously held by the Debtors' estates,[1] was critical to the recoveries and Plan acceptance by unsecured creditors. Through an initial disbursement and subsequent annual funding by the Reorganized Debtors, that would

---

[1] In its Supplemental Order, the Court retained limited jurisdiction post-confirmation for these matters.

2

be supplemented by any recoveries achieved in these adversary proceedings, the unsecured creditors will achieve a modest dividend from the Plan. Under the Plan, the CN Trust is the transferee of all rights, title and interest as to all avoidance actions and would, thereafter, be responsible for any claim objections and/or payments of dividends to unsecured creditors under the Plan, thus, distancing the Reorganized Debtors and the Debtors' estates from any further administrative obligations thereunder.

In addition to matters relating to confirmation, the Court also heard argument on the Debtors' Motion for Stay Pending Appeal (*see* Adv. Pro. No. 19-03014, ECF No. 14, "Motion for Stay"), which addressed whether the Reorganized Debtors' would be required to pay the increased Quarterly UST Fees[2] during the pendency of the appeal as well as the material adverse impact such an obligation (estimated at $300,000 annually) would have on the Plan should the case not be timely closed. On January 9, 2020, this Court issued its Ruling on the Reorganized Debtors' Motion for Stay, whereby it granted the motion for the lesser period of 18 months (subject to extension) or the issuance of a dispositive decision from the Second Circuit Court of Appeals,[3] and required that the Reorganized Debtors escrow the disputed fees by the effective date of their Chapter 11 Plan (*id.*, ECF 28). That escrow agreement was promptly approved by this Court, established by the Debtors and funded as directed by the Court.

On January 24, 2020, in the absence of an appeal, or the filing of any stay or motion relating to the Court's Confirmation Order, the Debtors' filed a Notice of

---

[2] The present Ruling assumes familiarity with the Court's Memorandum of Decision (Adv. Pro. No. 19-03014, ECF No. 2, "Ruling and Order Converting Contested Motion to Adversary Proceeding and Memorandum of Decision Dismissing Adversary Proceeding for Failure to State Claims Upon Which Relief Can Be Granted") that is the basis for the Debtors' appeal.
[3] Or, alternatively, the U.S. District Court, in the event certification of the direct appeal to the Second Circuit Court of Appeals is denied.

Effective Date of Debtors' Plan (ECF 1126). On February 10, 2020, the Reorganized Debtors filed the subject Motion requesting that their cases be closed so that further Quarterly UST Fees might be avoided and Plan feasibility would not be imperiled as heralded by the Debtors' during their Confirmation Hearing. After a hearing on the Motion on February 27, 2020, wherein the parties presented extensive argument on the matter, the Court took the matter under advisement. For the reasons discussed herein, the Reorganized Debtors' Motion for Entry of Final Decree is hereby GRANTED.

### III. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### IV. DISCUSSION

The issue before the Court is whether the Reorganized Debtors' Chapter 11 estates are fully administered pursuant to 11 U.S.C. § 350 and Fed. R. Bankr. P. 3022, despite the existence of the referenced pending adversary proceedings and a pending appeal.

Section 350 provides that, "(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case. (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Federal Rule of Bankruptcy Procedure 3022, which gives effect to § 350, provides that, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

While "fully administered" is not defined in the Code or by the Federal Rules of Bankruptcy Procedure, the 1991 Advisory Committee Note accompanying Rule 3022 provides the following guidance:

> Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed. Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.
>
> The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future. A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code. . . .

Fed. R. Bankr. P. 3022 Advisory Committee Notes.

"Bankruptcy Rule 3022 is intended to allow bankruptcy courts flexibility in determining whether an estate is fully administered." *In re Federated Dep't Stores, Inc.*, 43 Fed. Appx. 820, 822 (6th Cir. 2002) (internal citation omitted). Moreover, "[t]his statutory framework illustrates that determining when a case is 'fully administered' is a decision for the bankruptcy court based on consideration of numerous case-specific, procedural, and practical factors. The bankruptcy court is uniquely positioned to make this determination given that it will have overseen the particular debtor's case from the beginning and will have first hand knowledge of what matters have been, or need to be, completed before closure of the case. Further, the bankruptcy court will be very familiar with the debtor's confirmed plan of reorganization, the requirements for consummation of that plan, as well as the status of any pending motions, contested matters, and adversary proceedings." *In re Union Home & Indus., Inc.*, 375 B.R. 912, 917 (B.A.P. 10th Cir. 2007). Critically, "not all

the factors set forth in the Advisory Committee Note need to be present to establish that a case is fully administered for final decree purposes." *In re Federated Dep't Stores, Inc.*, *supra*, 43 Fed. Appx. 822; *see also In re MBF Inspection Services, Inc.*, 609 B.R. 889, 895 (Bankr. D.N.M. 2019) ("[a] bankruptcy court may try adversary proceedings after entry of a final decree"), *In re Valence Tech., Inc.*, 2014 Bankr. LEXIS 4429, *8 ("[t]he existence of a pending matter, however, does not preclude closing a case"),[4] *In re Provident Fin., Inc.*, 2010 Bankr. LEXIS 5047, *27 (because pending appeal didn't implicate the administration of the debtor's estate, closing debtor's case was proper), *In re McClelland*, 377 B.R. 446, 453 (Bankr. S.D.N.Y. 2007), *aff'd*, 460 B.R. 397 (Bankr. S.D.N.Y. 2011) ("[i]f the estate is otherwise fully administered, the Debtor's adversary proceeding . . . should not delay closing of the case"), *In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (final plan disbursements and pending adversary proceeding didn't warrant keeping debtor's case open).

After reviewing the record, weighing the factors in the Advisory Committee Note and considering the credible and unchallenged representations made by the Debtors' counsel during argument before this Court,[5] the Court makes the following findings:

1. The Debtors have taken all the necessary steps to consummate their Plan and have made all payments that were due by the Effective Date.

---

[4] Similar to the present case, the court in *In re Valence Tech.*, Inc., found that although "one Advisory Committee factor supporting case closure has not been fully met in that all contested matters (which are appeals to the District Court) [had] not been finally resolved . . . the [court's] order confirming the Plan [had] become final; property to be transferred under the Plan [had] commenced . . . the Reorganized Debtor [had] fully paid or commenced paying administrative and priority claims under the Plan, save and except for those administrative expense claims that [were] on appeal . . . and the Reorganized Debtor [had] assumed management and operation of the reorganized business." *In re Valence Tech., Inc.*, 2014 Bankr. LEXIS 4429, *8. Accordingly, the court determined that "the Reorganized Debtor [had] substantially consummated the Plan, and the case [was], for all intents and purposes, fully administered." *Id.*

[5] The extent that representations made by Debtors' counsel are relied upon by the Court, the Court notes that during the hearing on the Motion, Debtors' counsel offered to testify in lieu of making the representations as well as be subjected to cross examination by the UST. The UST declined counsel's and the Court's offer to do so.

2. All property of the Debtors' estates either re-vested in the Reorganized Debtors or was transferred to the CN Trust upon the Effective Date, thus, leaving the Debtors' estates with no property to administer thereafter.

3. The CN Trust, and not the Debtors' estates, is now solely responsible for any future claims objections, adversary proceedings and/or distributions to unsecured creditors under the Plan.

4. Pursuant to the Plan, any proceeds recovered from pending adversary proceedings will not pass through or in any way involve the Reorganized Debtors or the Debtors' estates, but rather will be handled entirely by the CN Trust.[6]

5. The Reorganized Debtors made the initial disbursement, thereby funding the CN Trust.

6. The Reorganized Debtors have signed and closed upon the amended loan documents with their principal lender, Bank of the West.

7. The Debtors established and fully funded an escrow account pursuant to this Court's Order addressing the payment of disputed Quarterly UST Fees during the pendency of their appeal.

8. Proceeds, if any, recovered from that appeal will go directly to the Reorganized Debtors. If they prevail, and will not pass through the Debtors' estates, nor will they impact creditor dividends. If they do not prevail, the escrowed funds will promptly be paid over to the US Trustee's Office.

---

[6] While these cases are pending in this Court, full settlement authority, without Court approval, has been accorded to the CN Trustee over these matters.

9. The totality of the circumstances herein justifies and supports a determination that the Debtors' estates are fully, substantively, and sufficiently administered in accordance with the Plan.

The Court, therefore, finds that the first five factors listed in the Advisory Committee Note accompanying Rule 3022 have been unequivocally satisfied. With respect to the sixth factor, i.e., whether all motions, contested matters, and adversary proceedings have been finally resolved, the Court concludes that, at least as it relates to the *Debtors' estates*, the presence of trailing adversary proceedings to be prosecuted by the CN Trust is not determinative of whether the Debtors' estates can be considered fully administered. *See In re MBF Inspection Services, Inc.*, *supra*, 609 B.R. 895 ("[a] bankruptcy court may try adversary proceedings after entry of a final decree").[7] Moreover, any material involvement by the *Debtors' estates* in the adversary proceedings ended upon the Effective Date when those matters were transferred to the CN Trust, thus, severing any rights, duties or obligations that the Debtors' estates might have had under the Plan.[8] Accordingly, the Court finds that the presence of the pending CN Trust adversary proceedings is not so material that it outweighs the overwhelming significance of all the other factors that weigh in favor of finding administrative closure herein.

Turning to the Debtors' pending appeal, this Court squarely addressed the administrative issues thereto in its Supplemental Order (ECF No. 1095) when it ordered the Debtors to escrow the disputed funds while the appeal remained pending.[9] And while it is conceivable that the decision therein might be remanded to this Court for further

---

[7] *See* footnote 4 of this Memorandum of Decision; *see also In re Menk*, 241 B.R. 896, 917 (B.A.P. 9th Cir. 1999) (the court was not required to reopen the case to adjudicate a nondischargeability proceeding).
[8] In the unlikely event that a subsequent matter arises that directly impacts the Debtors' estates, 11 U.S.C. § 350 (b) provides the appropriate procedural vehicle to address such a situation.
[9] *See* Fed. R. Bankr. P. 3022 Advisory Committee Notes ("[e]ntry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed").

proceedings, 11 U.S.C. § 350 (b) expressly provides the proper procedure for just such an occasion, namely, to reopen the case for cause. Such an eventuality should not prevent the closure of a case when a plan of reorganization has been substantially consummated and what remains is an otherwise fully administered estate. *See* Fed. R. Bankr. P. 3022 Advisory Committee Notes ("[t]he court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future"). Such would be particularly unfair where the timing of this appeal and its disposition is entirely outside of the Debtors' control. Likewise, a refusal of this Court to enter a final decree while there is a bona fide appeal pending on an issue which does not impact the Plan or the Debtors' estates would be absurdly punitive and needlessly dilatory rather than rehabilitative.

Because of the totality of the circumstances surrounding the Debtors' appeal, the particular effects of closure in this case and the reasons already stated herein, this Court is satisfied that the Debtor's estates have been fully administered and that the Motion should be GRANTED.

A separate FINAL DECREE AND ORDER CLOSING CHAPTER 11 CASES shall promptly be docketed by the Clerk of Court consistent with this Memorandum of Decision. IT IS SO ORDERED at Hartford, Connecticut this 4th day of March 2020.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut